IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>TASER INTERNATIONAL, INC., a Delaware corporation.<br><br>Defendant. | Case No. _____<br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Digital Ally, Inc. ("Digital Ally" or "Digital") alleges and states its claims for relief against Defendant TASER International, Inc. ("TASER") as follows:

### PARTIES AND JURISDICTION

1. Digital Ally is a Nevada corporation having its principal place of business at 9705 Loiret Blvd., Lenexa, Johnson County, Kansas 66219.

2. TASER is a Delaware corporation having its principal place of business at 17800 North 85th Street, Scottsdale, Arizona 85255.

3. This Court has subject matter jurisdiction because this is a patent infringement case arising under the patent laws of the United States Code, Title 35. This Court has exclusive subject matter jurisdiction over this case under 28 U.S.C. §1331 and §1338(a).

4. This Court has personal jurisdiction over TASER. TASER currently is making, using, offering for sale, and selling the infringing product—the AXON cameras with Signal technology. TASER's own website states the "Axon Signal is available and in use by agencies today." Ex. A (Taser's website). TASER's most recent sale appears to have been made in

November 2015 and included an order for 2,200 Axon Flex body cameras "equipped with Axon Signal" by the San Antonio Police Department. Ex. B (Taser Press Release). Other sales efforts of the infringing products by TASER currently are underway, including sales in the State of Kansas. In fact, TASER has regularly conducted and does regularly conduct business within the State of Kansas. For example, TASER hosted a "Tech Talk" on May 20, 2015 in Overland Park, KS. Ex. C. According to Ex. C, the event included a panel discussion with Kansas-based law enforcement officers sharing the experience of their agencies using TASER's AXON body cameras. *Id*. (indicating that the Johnson County Sheriff's Office and Topeka Police Department have deployed TASER AXON technology). On information and belief, TASER has additionally sold, offered for sale, and/or used the accused AXON camera with Signal technology in the State of Kansas. For example, as of July 7, 2015, TASER sold and/or offered to sell the Wichita police department AXON cameras with Signal technology. *See, e.g.,* Ex. D (indicating that Wichita's contract with TASER included "free technology upgrades . . . [t]hat could include 'auto on' functions.").

5. On information and belief, TASER also is subject to this Court's specific and general personal jurisdiction, pursuant to due process and/or the Kansas Long Arm Statute, due at least to its substantial ongoing business activities in this forum, including regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to persons or entities in Kansas and this District. On information and belief, TASER maintains and operates websites on the Internet, including http://www.taser.com and http://www.axon.io, which are operational twenty-four (24) hours a day, seven days a week, are accessible to and regularly accessed by residents of this District and other persons throughout the United States, and through which TASER promotes and advertises

its infringing products and directs consumers to purchase its infringing products. On information and belief, TASER also has sales representatives responsible for conducting business and making sales in Kansas and in this District. On information and believe, TASER, through its websites and/or sales representatives, has repeatedly transacted business with customers throughout the United States, including customers within Kansas and this District, and has advertised, promoted, sold, and shipped infringing products into this District without Digital Ally's authorization or permission. Further, on information and belief, TASER has derived substantial revenue from interstate commerce and has interjected itself into this District by its operation of a nationwide business through commercial websites and sales representatives whereby TASER has sold, offered for sale, continued to sell, and continued to offer for sale infringing products. Thus, this Court's exercise of jurisdiction over TASER will not offend traditional notions of fair play and substantial justice.

6. Venue is proper in the District of Kansas under 28 U.S.C. §§ 1391(b)-(c) and 1400(b). Upon information and belief, TASER has transacted business in this district and has committed, and continues to commit, acts of patent infringement in this district.

## ALLEGATIONS COMMON TO ALL COUNTS

**A.    Digital Ally**

7. Digital Ally was established in 2004 with a single goal—develop and manufacture cutting-edge technology that provides law enforcement officers with the ultimate event recording capabilities, coupled with convenience and ease of use. The founders of Digital Ally knew that providing better event recording systems would protect both the public and the law enforcement officers.

8. Headquartered in Lenexa, Kansas, Digital Ally revolutionized mobile video by introducing a complete video system integrated into a rear-view mirror that provided an event

3

recording system that was both user-friendly and reliable. This system was an immediate success and has been adopted across the country.

9. Since its inception, Digital Ally has expanded its business into the body worn camera industry. While the body-worn camera industry for law enforcement was in its infancy, Digital Ally recognized a severe limitation in the marketplace—the existing devices required manual activation and manual management of multiple devices. Requiring officers to manually manage their entire ecosystem of recording devices was distracting and particularly undesirable in dangerous situations. Additionally, it was often impractical for an officer to manually activate multiple event-recording devices when engaging emergency scenarios, which significantly decreased the usefulness of existing multiple recording device systems. Even in situations where an officer was able to manually activate multiple devices, these devices were not synchronized in any meaningful way and the recordings differed in their start times, all of which made forensically corroborating multiple recordings difficult and time consuming.

10. Digital Ally's solution solved all these problems and has resulted in a series of patent applications filed with the United States Patent Office. After thorough examinations, the Patent Office agreed that Digital Ally's solutions represented pioneering inventions in this field and patents have been granted that cover, in various forms, an automated system that links and automatically manages all recording devices in an event-capture ecosystem, including body-worn, in-car, and weapon-integrated cameras, and many other recording devices. These patents include U.S. Patent Nos. 8,781,292 ("the '292 patent"), and U.S. Patent Application No. 13/967,151 ("the '151 application," which has been granted but is awaiting administrative action for issuance by the Patent Office).

11. The technology described in these patents is embodied in Digital Ally's VuLink products. The VuLink product was pioneering because it fully integrated the event-capture ecosystem for an officer's multiple recording devices. With Digital Ally's patented VuLink technology, all recording devices may be automatically and simultaneously activated through a wireless network based on a triggering event (e.g., activating a police cruiser's light bar or siren, manually activating a single recording device, removing a shotgun from the holding rack, activating a smart weapon, a vehicle crash, etc.). Moreover, these multiple recordings may be digitally synchronized, which allows officers and prosecuting attorneys to accurately recreate crime scenes in a way that aids admissibility at trial. This technology has been a resounding success and it is on track to be a standard feature requested by nearly all law enforcement departments across the country.

**B.  Taser**

12. TASER is best known in commerce for its non-lethal, "conducted electrical weapons" or "CEWS".  Over time, however, TASER has attempted to diversify its portfolio by entering the body-worn camera market, including body-worn cameras sold under the AXON brand.

13. TASER's AXON line of cameras originally included the BODY, a body-worn camera, and the FLEX, a point of view or glasses-mounted camera. Upon release, these cameras were not part of an overall recording system ecosystem and were "dumb" devices that required manual activation.

14. TASER recognized the shortcomings of these manual activation cameras and knew it needed something more to capitalize on the rapidly growing body-worn camera industry. Indeed, TASER itself noted that "[a]nybody can make a camera. That's not the trick. The trick is: Can you make an ecosystem … to get police into that 21st century mindset?" (Quote from Steve

5

Tuttle, TASER Spokesman: https://www.washingtonpost.com/news/wonk/wp/2014/12/03/the-body-camera-industry-is-feeling-phenomenal-after-ferguson/) (also attached at Ex. E).

15. On information and believe, TASER was unable or unwilling to develop its own ecosystem and, therefore, it copied Digital Ally's patented technology, claiming it as its own. TASER refers to the resulting product as the "Axon Signal," which will work with the Axon BODY 2, the Axon FLEET, Axon FLEX, and the TASER smart weapon to "automatically activate[] your Axon cameras to ensure that vital footage is recorded. Linked to many common triggers, Axon Signal lets you capture important footage without lifting a finger." (http://www.axon.io/products/signal) (also attached at Ex. A).

16. TASER's own statements, press releases, and website blog make clear that it used Digital Ally's pioneering patented technology as the basis for its Axon Signal product. For example, TASER recently admitted that its system "built upon the old technology described in the Digital Ally patent." Ex. F (copy of TASER's blog on November 13, 2015).

17. TASER later deleted this admission that its own Axon system is built on Digital Ally's patented technology and replaced it with another statement. Ex. G (copy of TASER's blog, reissued shortly after the original, showing the removal of the language admitting it used Digital Ally's patent as a building block for the Axon Signal).

18. TASER is now using Digital Ally's patented technology to unfairly and improperly compete against Digital Ally in the marketplace. Presumably in recognition of its willful infringement, TASER challenged the validity of Digital Ally's '292 patent through a reexamination proceeding at the United States Patent Office. Through this proceeding, TASER submitted its best arguments that the '292 patent is invalid and exhausted the best prior art available. TASER placed significant importance in this reexamination and, on a number of

occasions, prematurely informed the market that its reexamination was successful. Ex. H (TASER's premature press release with inaccuracies on the status of the '292 patent); Ex. I (Digital Ally's clarifying press release).

19. Ultimately, TASER's arguments failed and the '292 patent issued with a certification from the United State Patent Office that the reexamined claims are valid.

20. On November 10, 2015, the Patent Office reaffirmed that Digital Ally is entitled to patent protection for its groundbreaking technology described and claimed in the '292 patent and the reexamination certificate issued on January 14, 2016. The substantive proceedings before the Patent Office are now concluded and they cannot be appealed. TASER must now answer for infringing Digital Ally's patent rights.

21. The current lawsuit involves TASER's infringement of both the '292 patent and the patent that will issue from the '151 application, though that patent is not currently asserted. The Patent Office has issued a Notice of Allowance for the '151 application and examination of that patent has concluded. All that remains is an administrative matter of issuing the formal patent. Once that patent issues, Digital Ally will immediately amend its Complaint to add the patent issuing from the '151 application to this lawsuit.

<u>**COUNT I**</u>
**(INFRINGEMENT OF U.S. PATENT NO. 8,781,292)**

22. Digital Ally incorporates by reference paragraphs 1 through 21 herein.

23. This cause of action arises under the patent laws of the United States of America and, in particular, 35 U.S.C. §§ 271 *et seq*.

24. Digital Ally is the owner by assignment of United States Patent No. 8,781,292, entitled "Computer Program, Method, and System for Managing Multiple Data Recording Devices" ("the '292 Patent"), with ownership of all substantial rights therein, including the right

to exclude others and to sue and recover damages for the past and future infringement thereof. A true and correct copy of the '292 Patent is attached as Ex. J.

25. The '292 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code. The '292 patent was reexamined and found valid and enforceable with over 59 claims issuing from that reexamination. The reexamination certificate is attached as Ex. K.

26. TASER has directly infringed and continues to directly infringe at least Claims 1, 8, 12, 18, 20, 21, 26, 28, 32, 36, 38, 39, 42, 47, 48, 50, 51, 54, and 59 of the '292 Patent by, among other things, using, offering for sale and/or selling its Signal Performance Power Magazine in combination with one or more of Axon Flex, Axon Body, and Axon Fleet cameras. TASER is thereby liable for infringement of the '292 Patent pursuant to 35 U.S.C. § 271(a).

27. Digital Ally expects that Taser's customers have used and will use the Signal Performance Power Magazine in combination with one or more of Axon Flex, Axon Body, and Axon Fleet cameras, and Digital Ally intends to conduct early discovery into the same. When evidence of such customer use is obtained, Digital Ally intends to amend this Complaint to allege that Taser is also liable for indirect infringement under at least 35 U.S.C. 271(b) and/or (c).

28. Digital Ally has been harmed by this infringement and is entitled to an injunction and compensation in an amount no less than a reasonable royalty as well as its lost profits for TASER's infringement. Digital Ally also will seek a permanent injunction barring TASER from selling its infringing Axon products with Signal technology.

**PRAYER FOR RELIEF**

WHEREFORE, Digital Ally prays for:

A. Judgment in favor of Digital Ally that TASER has infringed the '292 Patent;

B. A permanent injunction enjoining TASER, its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert or privity therewith from infringing the '292 Patent pursuant to 35 U.S.C. § 283;

C. Judgment in favor of Digital Ally for all TASER damages suffered by Digital Ally and that TASER be ordered to account for and pay to Digital Ally the damages resulting from TASER's infringement of the '292 Patent, including lost profits, costs and expenses, together with pre-judgment and post-judgment interest thereon, and all other damages permitted pursuant to 35 U.S.C. § 284, including enhanced damages up to three times the amount of damages found or measured and costs, and in any event an amount no less than a reasonable royalty

D. Judgment and a determination to the effect that this case is exceptional pursuant to 35 U.S.C. § 285;

E. A judgment and order awarding Digital Ally its attorneys' fees and costs incurred herein pursuant to 35 U.S.C. § 287; and

F. Such other relief as this Court or a jury may deem proper and just under the circumstances.

## JURY DEMAND

Digital Ally demands a trial by jury on all issues so triable.

## DESIGNATION OF PLACE OF TRIAL

Digital Ally hereby designates Kansas City, Kansas as place of trial pursuant to Local Rule 40.2.

Dated:  January 14, 2016

Respectfully submitted,
ERISE IP, P.A.

*/s/ Adam P. Seitz*
Adam P. Seitz, KS Bar #21059
Erise IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, KS 66211
(913) 777-5600 telephone
(913) 777-5601 fax
Adam.Seitz@eriseIP.com

Paul R. Hart, *Pro Hac Vice* to be filed
Erise IP, P.A.
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
(913) 777-5600 telephone
(913) 777-5601 fax
Paul.Hart@eriseIP.com


ATTORNEYS FOR PLAINTIFF
DIGITAL ALLY, INC.