UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-2032-CM-TJJ |
| ) | |
| TASER INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

The parties in this patent infringement case agree there is a need for a protective order and have filed a Joint Motion for Entry of a Protective Order (ECF No. 37). They have submitted, however, different proposed protective orders, with briefs in support of their respective versions. Specifically, the parties agree the protective order should include a prosecution bar provision, but disagree on (1) whether a *firm*-wide prosecution bar is warranted, and (2) whether the prosecution bar should prevent Plaintiff's litigation counsel from participating in post-issuance review proceedings for the asserted patents. As explained below, the Court finds Defendant has failed to show there is an unacceptable risk of inadvertent disclosure or competitive use of confidential information sufficient to justify a *firm*-wide prosecution bar. The Court further finds the protective order should include Plaintiff's proposed carve-out provision allowing Plaintiff's litigation counsel to participate in post-issuance review proceedings for the asserted patents. The Court will enter the protective order submitted by Plaintiff.

**I.      DISPUTE REGARDING WHETHER THE PROSECUTION BAR SHOULD BE FIRM-WIDE**

In Section 8 of its protective order, Plaintiff proposes a prosecution bar that extends only to an "individual" representing or associated with a party who receives access to confidential information. In contrast, Defendant proposes a prosecution bar that would extend to any "firm" representing or associated with a party who receives access to confidential information, i.e., a firm-wide prosecution bar as to all attorneys in the firms representing Plaintiff and Defendant in this case.

The firm-wide prosecution bar proposed by Defendant is a major bone of contention because Plaintiff uses the same law firm, Erise IP ("Erise"), for its patent prosecution work as it is using to litigate this case. Defendant, on the other hand, does not. Thus, Defendant's proposed firm-wide prosecution bar would preclude Plaintiff from utilizing its chosen prosecution counsel (for two years) without similarly impacting Defendant's choice of prosecution counsel.

**A.      The Parties' Arguments**

Defendant argues the broader firm-wide prosecution bar is necessary because Plaintiff's decision to use Erise as both its prosecution counsel and litigation counsel poses an unacceptably high risk of inadvertent disclosure of Defendant's highly confidential information. Defendant asserts the risk is unacceptably high because Erise is the same firm that prosecuted the patents at issue in this case and Erise continues to prosecute related patent applications before the U.S. Patent Office ("USPTO"). Defendant asserts that Erise is a small law firm with most of its legal staff occupying a single suite on one floor of an office building, where its lawyers share the same support personnel, office network, printers and copier. Defendant points out that Plaintiff competes with Defendant and is using this lawsuit to try to remove Defendant's body camera

products from the market. According to Defendant, Plaintiff does not have in-house patent counsel, rather Plaintiff relies upon Erise to make patent-related competitive decisions.

Defendant argues it would pose an unacceptably high risk of inadvertent disclosure of its highly confidential information if, as Plaintiff suggests, some Erise employees are allowed to have access to Defendant's highly confidential information in this litigation, while others are still permitted to prosecute Plaintiff's patent applications aimed at Defendant's products. Therefore, Defendant argues, the prosecution bar included in the protective order should apply to the entire Erise firm, not just the specific individuals appearing as counsel of record in this case. Defendant contends it would be fair to impose a firm-wide prosecution bar because the bar would also apply to Defendant's own litigation counsel (Shook, Hardy & Bacon LLP). Additionally, the hardship to Plaintiff would be minimal, because it has previously used multiple litigation and prosecution counsel, including a different patent prosecution firm prior to 2014.

Plaintiff disputes much of Defendant's factual characterization of Erise and provides sworn Declarations from six Erise representatives refuting many of Defendant's assertions regarding Erise. Adam Seitz, who is a shareholder and founding member of Erise, states in his Declaration that Erise has two distinct practice groups—a patent prosecution group and an intellectual property litigation group—each with separate electronic databases and separate support staff.[1] Specifically, the Erise network has at all relevant times been partitioned by practice group, with the files for prosecution and litigation maintained on two separate systems and networks, each protected by its own login and password. Erise has two certified paralegals, both of whom support the prosecution group, do not work on litigation matters, and do not have access to the litigation group's files.  Mr. Seitz further states that no members of the litigation

---

[1] Seitz Decl. ¶ 3, ECF No. 42-1.

practice group at Erise are currently involved or will ever be involved in prosecution activity for Plaintiff.[2] Likewise, the Erise patent prosecutors are not currently litigating and will not litigate in the future, nor do they have access to litigation materials. The patent prosecution lawyers have intentionally and carefully been insulated from all aspects of the pending litigation. Further, they have been instructed and are fully aware of their duty not to receive, review, or utilize in any way litigation information, confidential or otherwise.[3]

### B.   Applicable Law

The determination of whether and to what extent a patent prosecution bar should be included in a protective order is governed by Federal Circuit Law.[4] Although there are conflicting authorities on the topic, the Court concludes that when, as in this case, the parties agree that a protective order with a prosecution bar should be adopted, but they disagree regarding the scope of the protective order, the burden of proof is on the party seeking to expand the scope of the prosecution bar.[5]

The analysis the Court must consider in deciding the scope of the prosecution bar in this case was recently summarized succinctly and accurately, as follows:

> In adjudicating disputes over what kind of prosecution bar should be entered, a court must first consider whether there is an "unacceptable" risk of inadvertent disclosure or competitive use of confidential information, determined by the

---

[2] Seitz Decl. ¶ 6. This statement is further supported by the sworn Declarations of Chalynda Renz and Stephanie Emert (Erise paralegals), ECF Nos. 42-4 and 42-7, respectively.

[3] Seitz Decl. ¶ 4. The two concluding sentences of this paragraph are further supported by the sworn Declaration of Jennifer C. Bailey, the Erise shareholder who oversees the firm's patent prosecution practice group. Bailey Decl. ¶¶ 4–5, ECF No. 42-2.

[4] *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010).

[5] *See Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.,* No. CV 15-691-LPS-CJB, 2016 WL 447794, at *1 n.1 (D. Del. Feb. 4, 2016) (placing burden on the party seeking the additional restrictions of a patent prosecution bar in a protective order).

extent to which affected counsel is involved in "competitive decisionmaking" with its client. The court must then balance that risk against the potential harm the party affected by the portion of the bar at issue would face, were it to be denied its counsel of its choice if that portion of the bar were adopted. In evaluating the potential for harm that is key to the second prong of the analysis, a court should consider factors such as the extent and duration of counsel's past history in representing the client before the [USPTO], the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the [USPTO].[6]

It is well-established that whether an unacceptable opportunity for inadvertent disclosure exists must be determined based upon the facts on a "counsel-by-counsel" basis.[7] Denying access to a party's outside counsel because they also prosecute patents for that party, without consideration of the surrounding facts, is the type of generalization counseled against in *U.S. Steel,* which dictates that "each case should be decided based on the specific facts involved therein."[8]

### C. Defendant's Proposed Firm-Wide Prosecution Bar is Not Warranted in This Case

The Court first considers whether Defendant has shown there is an unacceptable risk of inadvertent disclosure or competitive use of confidential information absent a firm-wide prosecution bar in this case. Similar to *Deutsche Bank*, the Court finds in this case that denying Plaintiff access to its outside counsel solely on the ground that some of its lawyers prosecute patents for Plaintiff would be an improper generalization. Instead, the Court must look closely at the specific facts of this particular case.

---

[6] *Id.* at *1 (citing *In re Deutsche Bank*, 605 F.3d at 1377–81) (internal quotations and citations omitted).

[7] *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984).

[8] *In re Deutsche Bank*, 605 F.3d at 1379 (quoting *In re Sibia Neurosciences, Inc.,* 132 F.3d 50, 1997 WL 688174, at *3 (Fed. Cir. Oct. 22, 1997)).

Many of the concerns Defendant referenced in its initial brief were necessarily based upon "what it [could] glean from publicly available information early in the case." But, based upon the record now before the Court, those concerns either are not supported by the facts[9] or have otherwise been rebutted by Plaintiff. In its responsive brief, Defendant again relies upon unsubstantiated assertions that are rebutted by Plaintiff with sworn Declarations from Erise attorneys. For example, Defendant reiterates its argument, which is based simply upon a vague reference to a one-page listing of Erise "Attorney/Agents" for Plaintiff purportedly of record at the USPTO, that "almost every attorney at Erise, including every Erise attorney of record in this case, is prosecution counsel for [Plaintiff]." The Court rejects Defendant's supposition on this point. Plaintiff offers a more thorough explanation of this one-page listing in the sworn Declaration of Ms. Bailey, which explains that this customer number listing for Erise includes "all practitioners in [the] firm who are licensed to practice before the UPSTO," but "in no way indicates any role or responsibility in prosecution on behalf of that client."[10] Moreover, the Court notes that Plaintiff has also provided the sworn Declaration of Mr. Seitz, indicating that Erise is separated into distinct litigation and patent prosecution groups that are isolated from one another.

Indeed, Plaintiff has addressed each of the asserted bases for Defendant's contention that there is an unacceptably high risk of inadvertent disclosure of highly confidential information in this case. While Erise is the same firm that prosecuted the patents at issue in this case and it may

---

[9] For example, Defendant states in its brief (ECF No. 38) that Erise's website identifies only one paralegal whose "duties, on information and belief, substantially overlap in both litigation and prosecution activities." However, the sworn Declaration of Erise's shareholder and founding member, Adam Seitz, states that "Erise has two certified paralegals, both of whom support the prosecution group and do not work on litigation matters." Seitz Decl. ¶ 5, ECF No. 42-1.

[10] Bailey Decl. ¶ 2, ECF No. 42-2.

continue to prosecute related patent applications before the USPTO, Plaintiff has provided sworn Declarations indicating that the Erise lawyers who have in the past or may in the future prosecute patents for Erise are isolated from the Erise lawyers representing Plaintiff in this case. The fact that Erise is a small firm with most of its legal staff occupying a single suite on one floor of an office building does not justify a firm-wide prosecution bar, given the protections implemented by Erise to keep its patent prosecution group separate from its litigation group.  The sworn Declarations provided by Plaintiff rebut Defendant's assertion that Erise lawyers in the two practice groups share the same support personnel, office network, and printers.  The fact that the two groups do share a copier does not in and of itself warrant a firm-wide prosecution bar in light of the safeguards Erise has put in place. Likewise, the fact that Plaintiff and Defendant are competitors, that Plaintiff has no in-house patent counsel, and that Plaintiff may be attempting to use this lawsuit to try to remove Defendant's products from the market pale in significance, given the protections put in place by Erise and isolation of the two practice groups from one another.

      The Court simply finds no support in this record for Defendant's assertion that "almost every attorney at Erise, including every Erise attorney of record in this case, is prosecution counsel for [Plaintiff]." The sworn Declarations provided by Plaintiff indicate the contrary; that is, there is no indication that Erise's litigation counsel also handle patent prosecution matters. Hence, there is nothing to support a conclusion that Plaintiff's litigation counsel in this case are involved in "competitive decisionmaking" with Plaintiff.

Defendant cites two cases to support its argument that the prosecution bar should extend to competitive decision-makers at Erise, even if they do not participate in litigation.[11] Defendant argues that, in *Round Rock*, the court found the owner of the company plaintiff and sole partner of the firm representing plaintiff in that case (Mr. Desmarais) to be a competitive decisionmaker and subject to the protective order in that case, even though he was not acting as or appearing as counsel for plaintiff and would not have access to confidential information designated by the plaintiff in that case. However, the Court disagrees with Defendant's assertion that Erise is similarly situated here, where its attorneys act as competitive decision-makers. To the contrary, there is no indication the attorneys to whom Defendant seeks to extend the prosecution bar in this case have an ownership interest in Plaintiff or a degree of interest or personal involvement with Plaintiff even remotely similar to that Mr. Desmarais shared with plaintiff Round Rock Research, LLC. In *Round Rock*, Mr. Desmarais was also the sole officer (president) and managing member of plaintiff, "an undisputed competitive decisionmaker for [plaintiff]," sole signatory on all agreements forming the financial structure of plaintiff, and retained his law firm as outside trial counsel in more than a dozen cases plaintiff had brought, including two pending cases against the defendant in that case.[12] *Round Rock* does not support Defendant's request for a firm-wide prosecution bar given the significantly different facts in this case.

Similarly, relying upon *Vishay*, Defendant argues that "prosecution attorneys not permitted to view confidential information in litigation can be subject to a prosecution bar." Defendant notes that the court in *Vishay* subjected multiple outside patent counsel, who were not

---

[11] *Round Rock Research, LLC v. Dell Inc.,* No. 4:11-CV-332, 2012 WL 1848672, at *1, 3 (E.D. Tex. Apr. 11, 2012) and *Vishay Dale Elecs., Inc. v. Cyntec Co.*, No. 8:07CV191, 2008 WL 4372765, at *5 (D. Neb. Sept. 22, 2008).

[12] *Round Rock*, 2012 WL 1848672, at *1.

attorneys of record in litigation, to a prosecution bar because they were competitive decision-makers, with a key advisory relationship with the patentee Vishay and influence on patents.[13] But, Defendant fails to mention that Vishay's outside patent counsel, though not appearing in the litigation, had "overall responsibility for advising the plaintiff [Vishay] on patent prosecution matters *and patent litigation, including [the Vishay] case.*"[14] The italicized language is significant and distinguishes *Vishay* from this case, in which Plaintiff has provided a sworn Declaration in support of its assertion that Plaintiff's counsel, Erise, is divided into two distinct practice groups – litigation and patent prosecution – which are isolated from each other.[15] The Declaration states: "Erise litigators *do not prosecute* [Plaintiff's] patents and *will not do so.*"[16]

The Court, therefore, finds that *Round Rock* and *Vishay* do not support Defendant's request for a firm-wide prosecution bar in this case. Defendant has not cited a single case in which a court entered a protective order imposing a firm-wide prosecution bar under facts similar to the facts in this case, namely where the firm against which the bar was to be imposed represented its client in both patent litigation and patent prosecution, but isolated the two practice groups as Erise has done here. The Court understands and appreciates Defendant's concerns and the adverse consequences that could flow from any inadvertent disclosure of Defendant's confidential information to its competitor, Plaintiff. But, the Court has no reason to believe or suspect that Plaintiff or its lawyers will not enforce and abide by the restrictions and protections that Plaintiff represents to the Court have been put in place by Plaintiff's Erise lawyers, as stated

---

[13] *Vishay*, 2008 WL 4372765, at *5.

[14] *Id.* at *5 (emphasis added). Defendant quoted this same language from *Vishay* in its brief (ECF No. 41 at 9) but with a material omission; Defendant omitted the italicized language above.

[15] Seitz Decl. ¶ 3, ECF No. 42-1.

[16] *Id.* at ¶ 6 (emphasis in original).

under penalty of perjury in their Declarations. As in all cases, the Court trusts and expects counsel to conduct themselves in accordance with their ethical obligations and specifically with their representations to the Court in their Declarations in this case. As is clear from the ruling herein, the Court is satisfied that, with the restrictions and protections put in place by Erise, there is not an unacceptable risk of inadvertent disclosure or competitive use of confidential information in this case. Moreover, in *Round Rock*, after finding that Round Rock's principal, Mr. Desmarais, should be subject to a protective order prosecution bar, the court actually refused to extend the prosecution bar firm-wide to the other 17 members of Mr. Desmarais's firm.[17] The better reading of *Round Rock* is that it supports Plaintiff's opposition of the firm-wide prosecution bar.

Having determined that Defendant has not met its burden to prove that there is an "unacceptable risk" of inadvertent disclosure or competitive use of confidential information in this case, the Court need not address the other aspect of the balancing test—the potential harm to Plaintiff if it were denied its counsel of choice as a result of imposition of a firm-wide prosecution bar. However, such analysis only further bolsters the Court's ruling. The potential harm to Plaintiff of such a bar would be significant. Ms. Bailey has represented Plaintiff in patent prosecution matters since 2009. She and her patent prosecution group have been and are actively engaged in representing Plaintiff in such matters. Conversely, there is no indication that any other firm is currently or has recently represented Plaintiff in such matters, nor does Plaintiff have in-house patent counsel. Indeed, every indication is that Plaintiff relies heavily upon Erise for all of its patent-related legal work. It would likely be difficult for Plaintiff to engage other counsel with similar expertise to represent Plaintiff in the pending litigation or to represent it

---

[17] 2012 WL 1848672 at *4.

before the USPTO.  The Court thus concludes that Defendant has failed to show there is an unacceptable risk of inadvertent disclosure or competitive use of confidential information sufficient to justify a *firm*-wide prosecution bar in the protective order.

## II.   DISPUTE REGARDING PARTICIPATION BY PLAINTIFF'S COUNSEL IN POST-PATENT-ISSUANCE PROCEEDINGS

The parties' second dispute concerns Plaintiff's proposed carve-out provision allowing its counsel, who are subject to the provisions of Section 8(a) of the protective order, to participate in post-patent-issuance review proceedings for the asserted patents.[18]  Defendant objects to the inclusion of this provision, arguing that Erise should not be permitted to represent Plaintiff in *inter partes* review or post-issuance review proceedings before the USPTO for the same reasons justifying a firm-wide prosecution bar.  It points out that Plaintiff admits in its brief in support of its protective order that there is "theoretically some risk that confidential information could be used in making claim amendments that impact in some way the scope of the patent claims," and that prosecution bars extend to post-issuance proceedings.  Defendant also argues that its proposed language closely tracks the model protective order provision from the Northern District of California.

---

[18] Plaintiff proposes the following provision 8(b):

In the event any Producing Party files a request for reexamination, *inter partes* review, covered business method review, or post grant review, or other similar proceeding before the USPTO (collectively, "USPTO Proceeding"), any individual subject to the provisions of Paragraph 8(a) shall be permitted to represent the patentee in a USPTO Proceeding only if the patentee agrees to forfeit all rights to amend the scope of any claim or to submit new claims in the USPTO Proceeding. Such forfeiture must be in writing and must be provided to the Producing Party prior to any substantive submissions to the USPTO on behalf of the patentee. Additionally, if any individual subject to the provisions of Paragraph 8(a) represents the patentee in a USPTO Proceeding pursuant to this paragraph, then patentee in said USPTO proceeding may be represented only by individuals subject to the provisions of Paragraph 8(a) and may not be represented in said USPTO proceeding by any individual who is not subject to the provisions of Paragraph 8(a). ECF No. 37-1, at 8.

11

Plaintiff contends that Defendant's restriction on post-issuance proceedings are premised on false concerns that ignore the limitations included within its proposed provision. Under Defendant's proposed protective order, Plaintiff's litigation counsel could not oppose Defendant's invalidity defenses if Defendant decides to bring those invalidity defenses at the USPTO. This would strip Plaintiff of its chosen litigation counsel. Plaintiff argues that the single concern raised by Defendant with respect to such post-issuance proceedings—that confidential information produced in the litigation could be used to affect claim scope "because such proceedings allow a patentee to attempt to change claim scope"—is a fictitious concern given that Plaintiff has included a "no-amendment" restriction in its prepared provision.

Plaintiff cited a number of cases in its initial brief in support of its proposed carve out provision, arguing: "[I]f litigation counsel abstains from any claim amendments, the competitive risk disappears, and courts permit litigation counsel with access to confidential information to otherwise fully participate in Post-Grant Proceedings."[19] Although Defendant attempts to distinguish those cases in its responsive brief, arguing generally that the litigation counsel in those cases were not also prosecution counsel, Defendant's asserted distinction is unpersuasive given that, as already discussed above, Plaintiff's Erise counsel are separated into a litigation group and a patent prosecution group that are isolated from one another. The Court is persuaded by the case law Plaintiff cites, which supports the conclusion that courts that have considered provisions similar to Plaintiff's proposal (including restrictions on claim amendments) have consistently allowed and adopted such provisions. The Court agrees with Plaintiff that the concerns raised by Defendant with regard to Plaintiff's proposed carve-out provision are adequately addressed by the no-amendment restriction within the provision. Omitting the

---

[19] Pl.'s Br., ECF No. 39, at 8.

provision from the protective order altogether, as urged by Defendant, would result in Plaintiff's litigation counsel at Erise not being allowed to represent Plaintiff before post-issuance proceedings before the USPTO. This result is too harsh and not warranted in this case. As such, the Court will enter the protective order with Plaintiff's proposed provision.

**IT IS THEREFORE ORDERED THAT** the parties' Joint Motion for Entry of a Protective Order (ECF No. 37) is granted with the Court entering the protective order proposed by Plaintiff. **Within seven (7) days of the date of this Memorandum and Order**, Plaintiff shall email a WordPerfect or Word version of its proposed Protective Order to *ksd_james_chambers@ksd.uscourts.gov* for entry by the Court.

**IT IS SO ORDERED.**

Dated this 17th day of June 2016, at Kansas City, Kansas.

      *s/ Teresa J. James*
Teresa J. James
U. S. Magistrate Judge