**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DIGITAL ALLY, INC. <br><br> Plaintiff, <br><br> v. <br><br> TASER INTERNATIONAL, INC. <br><br> Defendant. | Case No. 2:16-cv-02032 |

**DEFENDANT TASER INTERNATIONAL, INC.'S RESPONSE TO PLAINTIFF DIGITAL ALLY, INC.'S DISPOSITIVE MOTIONS FOR LEAVE TO DISMISS THE '292 PATENT WITH PREJUDICE, AND TO DISMISS TASER'S '292 PATENT COUNTERCLAIM FOR LACK OF DECLARATORY JUDGMENT JURISDICTION**

**TABLE OF CONTENTS**

I. INTRODUCTION. ................................................................................................................. 1

II. FACTUAL BACKGROUND. ............................................................................................... 1

    A. The Asserted Patents. ................................................................................................. 1

    B. TASER's IPR Requests. ............................................................................................. 2

III. ARGUMENT. ........................................................................................................................ 3

    A. Digital's Covenant Not to Sue is Insufficient to Divest the Court of Jurisdiction over TASER's '292 Inequitable Conduct Counterclaim. ........................................ 4

    B. The Interrelatedness of the Asserted Patents Warrants Keeping TASER's '292 Inequitable Conduct Counterclaim in the Case. ........................................................ 6

    C. The Court Retains Independent Jurisdiction of TASER's Inequitable Conduct Counterclaim Pursuant to 35 U.S.C. § 285. ............................................................... 8

IV. CONCLUSION. ................................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**FEDERAL CASES**

*Agfa Corp. v. Creo Prods.*, 451 F.3d 1366 (Fed. Cir. 2006) ..........................................................7

*Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013) .................................................................... 4, 5, 6

*Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739
    (M.D.N.C. Nov. 20, 2003) ......................................................................................................10

*Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 981 F. Supp. 2d 415 (D.
    Md. 2013) .................................................................................................................................7

*Dairy Health Prods., Inc. v. IBA, Inc.*, Case No. 1:07CV75DAK, 2011 WL
    4345311 (D. Utah Sept. 15, 2011) .........................................................................................11

*Digeo, Inc. v. Audible, Inc.*, No. C05-464JLR, 2006 WL 3486801 (W.D. Wash.
    Dec. 1, 2006) ..........................................................................................................................10

*Gordon-Darby Sys., Inc. v. Applus Techs., Inc.*, No. 10 C 1863, 2010 WL
    5419068 (N.D. Ill. Dec. 23, 2010) ............................................................................................9

*Higher One, Inc. v. TouchNet Info., Sys.,* Civil No. 3:10CV1435(AWT), 2014 WL
    4798546 (D. Conn. Sept. 26, 2014) ..........................................................................................4

*HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2011 WL 2174919
    (D. Kan. June 3, 2011) .......................................................................................................5, 11

*InfoSpan, Inc. v. Emirates NBD Bank PJSC*, Case No. SACV 14–01679 JVS,
    2015 WL 4572454 (C.D. Cal. July 27, 2015) ..........................................................................4

*IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir. 2005) .................................10

*Jovanovich v. Redden Marine Supply, Inc.*, Case No. C10-924-RSM, 2011 WL
    4073197 (W.D. Wash. Sept. 13, 2011) ........................................................................8, 9, 11

*Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1228 (Fed. Cir. 2008) ......................................8

*Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223 (Fed. Cir. 2007) ...................................................6

*Polarity, Inc. v. Diversified Techs., Inc.*, No. C-06-0646 EMC, 2006 WL 2982151
    (N.D. Cal. Oct. 17, 2006) .......................................................................................................10

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294 (Fed. Cir. 2009) ........................4

*Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 337 (D. Del. 2014) ..................................7

*Shum v. Intel Corp.*, 629 F.3d 1360 (Fed. Cir. 2010) .......................................................................9

**FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

35 U.S.C. § 285................................................................................................................... passim

**STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

FEDERAL RULE OF CIVIL PROCEDURE Rule 54(d) ...............................................................................9

I.      INTRODUCTION.

Digital is attempting to drop a patent it now considers a liability. The Patent Office recently began an *inter partes* review ("IPR") for the '292 patent based on the same prior art cited in TASER's inequitable conduct counterclaim.  As a matter of law, Digital cannot unilaterally remove that counterclaim by filing a motion to dismiss.

TASER does not object to Digital dismissing its '292 patent infringement claim.[1]  But TASER opposes the dismissal of its inequitable conduct counterclaim directed to the '292 patent. TASER is entitled to maintain that counterclaim for at least three reasons:  (1) Digital's covenant not to sue is insufficient to divest the Court of declaratory judgment jurisdiction; (2) the '292 patent is closely related to the still-asserted '452 patent, and favorable resolution of TASER's counterclaim may also render the '452 patent unenforceable under the doctrine of infectious unenforceability; and (3) the Court has independent jurisdiction based on TASER's demand for damages pursuant to 35 U.S.C. § 285, which cannot be decided until this action is resolved.

The Court should not hesitate to dismiss Digital's '292 patent claim with prejudice, but should deny Digital's motion to dismiss TASER's corresponding inequitable conduct counterclaim.

II.     FACTUAL BACKGROUND.

   A.      The Asserted Patents.

Digital accuses TASER of infringing the '292 and '452 patents.  (Doc. No. 19.)  The '292 patent is a continuation of the '452 patent.  (Doc. No. 19-14 (cover page).)  Both patents claim the same invention: "Computer Program, Method, and System for Managing Multiple Data

---

[1] Digital's "Motion" is tripartite in nature, asking for three different types of relief, some non-dispositive, others dispositive.  (*See* Docket Entry Sept. 12, 2017, removing motion referral to Magistrate Judge.)  TASER addressed the non-dispositive portion of Digital's Motion – seeking to amend the pleadings – in earlier briefing filed on September 14, 2017.  (Doc. No. 135.)

1

Recording Devices." They also share the same specification, much of the same prosecution history, and many key claim terms. (Doc. Nos. 19-14, 19-15, 19-21.) They are so patentably indistinct that the United States Patent and Trademark Office ("USPTO") required Digital to file a terminal disclaimer preventing an unjustified extension of patent protection beyond the term of the earlier-issued patent. (Doc. Nos. 19-14, 19-21 (cover page).)

Digital's infringement allegations have also overlapped. Initially, Digital accused TASER's body cameras in combination with TASER's Signal Performance Power Magazine ("SPPM") and/or Axon Signal Unit of infringing both asserted patents. (*See* Doc. No. 19 at ¶¶ 66, 70, 77, and 81.) Digital has since dropped some of its allegations for each patent, including certain originally-asserted claims.

Finally, TASER has filed similar counterclaims for unenforceability against both asserted patents due to inequitable conduct. (Doc. No. 58, Amended Partial Answer at ¶ 121; Counterclaims at ¶¶ 65-92.) TASER asserts that Digital's intentional failure to disclose known prior art regarding the ICOP 20/20 system renders both patents unenforceable. (Doc. No. 58, Counterclaims at ¶¶ 65-92.)[2]

**B.     TASER's IPR Requests.**

TASER successfully petitioned the Patent Trial and Appeal Board ("PTAB") to institute *inter partes* review of the '292 patent, for all but three asserted dependent claims (or 26 total asserted claims). (Doc. No. 134 at 1.) The PTAB instituted the '292 IPR on June 6, 2017. (*Id.*) Importantly, the prior art on which the PTAB instituted the IPR is the *same prior art* cited in

---

[2] TASER's inequitable conduct claim for the '452 patent incorporates by reference its counterclaim allegations with respect to the '292 patent. (Doc. No. 58 at ¶ 79.) Digital's opening brief is silent on whether, if the present motion is granted, Digital will subsequently argue that such dismissal limits TASER's ability to prove unenforceability of the '452 patent in any way. This issue was raised in pre-filing teleconferences and correspondence, but not resolved.

TASER's inequitable conduct counterclaims for both the '292 and '452 patents. (*Compare* Doc. No. 58, Counterclaims at ¶¶ 18, 33, 40, 65-92, *with* Ex. A-1, Decision, Institution of *Inter Partes Review* at 27.)  In instituting the '292 IPR, the PTAB concluded, "Petitioner has demonstrated a reasonable likelihood of prevailing in establishing that claim 1 is obvious over" the prior art for the ICOP 20/20 system.  (*Id.*)  On September 12, 2017, after filing the present Motion, Digital asked the PTAB for permission to cancel the patent claims in the IPR, and substitute amended claims instead that would allegedly be patentable over the cited ICOP prior art.  (Ex. A-2, Digital's Motion to Amend at 1.)

Regarding the '452 patent, the PTAB declined to institute IPR.  But Digital omits two important details from its Motion.  First, one of the '452 IPR requests was directed at claim 1 and its dependents.  During claim construction briefing before this Court, Digital withdrew claim 1 from assertion (*See* Doc. No. 134 at 2.).  Digital has since confirmed in writing its withdrawal of the dependent claims as well. (*See* Ex. A-3, Email Correspondence with Counsel, Dec. 7, 2016.)  Second, TASER filed a Request for Rehearing on August 1, 2017, directed to the PTAB's denial of the second IPR request for the '452 patent.  This request remains pending. (Doc. No. 134 at 2.)

### III.   ARGUMENT.

TASER does not object to Digital's dismissal with prejudice of its '292 patent infringement claim.  But TASER most certainly objects to the dismissal of TASER's corresponding inequitable conduct counterclaim.  As a matter of law, TASER's counterclaim should remain pending for independent adjudication.

First, Digital's covenant not to sue is not sufficiently comprehensive to divest the Court of jurisdiction over TASER's counterclaim.  Second, resolution of TASER's '292 counterclaim is relevant to the parties' claims concerning the closely-related '452 patent, including under the

3

doctrine of infectious unenforceability. Third, the Court retains jurisdiction over TASER's '292 counterclaim pursuant to 35 U.S.C. § 285, which permits TASER to seek attorneys' fees for, among many other reasons, a finding of inequitable conduct. Any one of these bases justifies denying Digital's attempt to remove TASER's '292 inequitable conduct counterclaim from this case.

      **A.    Digital's Covenant Not to Sue is Insufficient to Divest the Court of Jurisdiction over TASER's '292 Inequitable Conduct Counterclaim.**

Digital cannot unilaterally dismiss TASER's counterclaim by proffering an inadequate covenant not to sue. Digital bears the "formidable burden" of showing its covenant is sufficiently broad. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013). The party offering the covenant must "show that it 'could not reasonably be expected' to resume its enforcement efforts against" the opposing party. *Id.* (citing *Friends of Earth, Inc. v. Laidlaw Environmental Serv. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). "Whether the covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant." *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

Factors supporting a sufficiently broad covenant include:

1. The unconditional and irrevocable nature of the covenant;
2. The prohibition from making any claim or demand;
3. The extension to the allegedly infringing party's distributors and customers; and
4. Coverage for past and current designs and any colorable imitations.

*See generally Nike*, 568 U.S. at 92 (referring to covenant not to sue on trademark designs); *Higher One, Inc. v. TouchNet Info., Sys.,* Civil No. 3:10CV1435(AWT), 2014 WL 4798546, at *5 (D. Conn. Sept. 26, 2014) (denying dismissal of declaratory judgment counterclaims due to insufficient covenant); *InfoSpan, Inc. v. Emirates NBD Bank PJSC*, Case No. SACV 14–01679

JVS (ANx), 2015 WL 4572454, at *4 (C.D. Cal. July 27, 2015) (finding party failed to show action was moot); *see also HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2011 WL 2174919, at *3-4 (D. Kan. June 3, 2011) (pre-*Nike*, but also finding covenant insufficient). Once a party "demonstrat[es] that the covenant encompasses all of its allegedly unlawful conduct," then the opposing party should "indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Nike*, 568 U.S. at 94.

TASER does not dispute that Digital's covenant addresses the first three factors listed above. (*See* Doc. No. 133-2.) However, the fourth factor – coverage for past and current designs and any colorable imitations – is lacking. Instead, Digital's covenant only extends to TASER "products (including Accused SPPM Combination) with functionalities *currently marketed by [TASER] and identified on [TASER's] website* as of the Effective Date, regardless of whether those products and functionalities were made, used, sold, offered for sale, or imported before or after the Effective Date of this Covenant." (*Id.* (emphasis added).)

This covenant does not extend to previous TASER products, or to functionalities no longer marketed or not listed on TASER's website. Nor does it extend to "colorable imitations" of currently marketed products or functionalities found on TASER's website. Digital's narrow identification of covered product functionalities *currently* marketed *and* identified on TASER's website provides little assurance that Digital will not resume its enforcement efforts against TASER's future products or functionalities. *See Nike*, 568 U.S. at 93-94. This is particularly troublesome given Digital's continued public statements and press releases attacking TASER. In short, Digital's covenant not to sue on the '292 patent is not sufficiently comprehensive to protect TASER from further infringement accusations.

5

Sidestepping its burden to show sufficiency, Digital instead tries to argue TASER has not "identified" its "concrete plans for releasing new products or new functionalities into the market." Here too, Digital is mistaken. TASER has produced documents to Digital in this litigation with information regarding both past and new products, including functionalities that are neither currently marketed nor identified on TASER's website. Further, Digital mischaracterizes statements by TASER's counsel regarding its future product development plans. (*See* Doc. Nos. 133 at 8, 133-1 at ¶ 4.) Digital states TASER indicated it "has no such plans" to "engage in activities not covered by the Covenant." (*See* Doc. No. 133 at 8.) The participants on that call were outside counsel and TASER's undersigned in-house litigation counsel, Ms. Pamela Petersen, who is not a TASER competitive decision-maker (and is thus allowed to view material under the case protective order). Ms. Petersen stated she could <u>not</u> warrant that TASER had no such plans because she is not privy to all future product development plans, and because TASER routinely issues upgrades to its software and product functionalities. (Ex. B, Decl. of Pamela B. Petersen at ¶ 5.) Thus, even if Digital had met its initial burden under *Nike* to show sufficiency – which it has not – TASER has "indicate[d] that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." 568 U.S. at 94.

Accordingly, Digital's covenant does not extinguish the controversy between the parties under *Nike* and its progeny. On this basis alone, the Court should deny Digital's attempt to dismiss TASER's '292 inequitable conduct counterclaim.

### B. The Interrelatedness of the Asserted Patents Warrants Keeping TASER's '292 Inequitable Conduct Counterclaim in the Case.

"[I]nequitable conduct with respect to one or more patents in a family can infect related applications . . . ." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1230 (Fed. Cir. 2007)

6

(holding no abuse of discretion where district court found four patents, withdrawn by the plaintiff shortly before trial, as unenforceable due to inequitable conduct); *see also Agfa Corp. v. Creo Prods.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (finding lower court's inequitable conduct analysis extended to a related, continuation patent). "'[B]ecause inequitable conduct with respect to one or more patents in a family can infect related applications,' there is 'no abuse of discretion' when a district court retains jurisdiction over unenforceability claims as to withdrawn patents. *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 981 F. Supp. 2d 415, 418 (D. Md. 2013) (granting motions to dismiss all defenses and counterclaims *except* an inequitable conduct counterclaim for a dismissed patent claim) (quoting *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242-43 (Fed. Cir. 2008) (further citations omitted)).[3]

Here, the '452 and '292 patents are closely interrelated. The '292 patent is a continuation patent of the '452 patent, though for the most part, they were prosecuted before the USPTO concurrently.[4] Both patents share the same specification and mostly the same prosecution history. Both claim aspects of the same invention and share the same patent title. Both have very similar claims. In fact, the Patent Office found the '452 and '292 patents so "patentably indistinct," that it required Digital to file a terminal disclaimer preventing Digital from improperly extending the term of patent protection. And several, key claim terms – all of which were part of the parties' claim construction negotiations in this litigation and in briefing to the PTAB – are common to the asserted claims of both patents, including "recording device," "recording device manager," and "metadata." Lastly, the prior art on which TASER bases its inequitable conduct counterclaims is the same prior art currently being scrutinized by the PTAB

---

[3] This concept of inequitable conduct infecting related patents has been referred to as "the doctrine of infectious unenforceability." *See generally Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 337 (D. Del. 2014).

[4] Indeed, though the application for the '452 patent was *filed* first, the USPTO *issued* the '292 patent first.

7

in the '292 IPR, regarding the ICOP 20/20 system, and around which Digital recently sought amendment.

Because of their interrelatedness, a finding of inequitable conduct on either of the patents could likely affect, and infect, the other. As the courts in *Nilssen*, *Agfa*, and *Classen* found, inequitable conduct counterclaims can, and do, remain in litigation despite the absence of the underlying patent infringement claim where a finding of inequitable conduct could infect it or other, related patents. This presents yet another basis to conclude that this Court is on solid footing to retain TASER's inequitable conduct counterclaim for the '292 patent, despite Digital's requested dismissal of its own patent infringement count.[5]

### C. The Court Retains Independent Jurisdiction of TASER's Inequitable Conduct Counterclaim Pursuant to 35 U.S.C. § 285.

Regardless of Digital's proffered covenant not to sue, or close relationship between the asserted patents, 35 U.S.C. § 285 permits the Court to retain TASER's inequitable conduct counterclaim on the '292 patent. Section 285 states "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." And unenforceability of a patent due to inequitable conduct is one of many bases on which to find a case exceptional.

The Federal Circuit has specifically held that a district court retains "jurisdiction under [35 U.S.C.] § 285 to determine whether there was inequitable conduct in the prosecution of patents that are otherwise no longer in suit." *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1228, 1243 (Fed. Cir. 2008). This jurisdiction extends to "declar[ing] a patent unenforceable." *Id.*; *Jovanovich v. Redden Marine Supply, Inc.*, Case No. C10-924-RSM, 2011 WL 4073197, at

---

[5] Notably, despite TASER notifying Digital of its intention to rely on the doctrine of infectious unenforceability in correspondence and several telephone conferences, Digital's opening memorandum does not discuss this topic.

8

\*3-4 (W.D. Wash. Sept. 13, 2011) (reasoning that *Monsanto*'s language warranted retaining declaratory judgment jurisdiction over the defendant's counterclaim for unenforceability).

Digital does not dispute that the Court retains jurisdiction over TASER's declaratory judgment claim of inequitable conduct on the '292 patent. Instead, Digital's objection on this ground appears to be one of timing only. (Doc. No. 133 at 9 ("The law, however, does not support maintaining a declaratory judgment counterclaim indefinitely"). Based on this Section 285 concession alone, the Court should deny Digital's Motion.

As for timing, Digital contends that any request for attorneys' fees based on TASER's inequitable conduct counterclaim must be filed within 14 days of the '292 patent's dismissal, pursuant to Rule 54(d).[6] (*Id.* at 9-10.) This argument is baseless. Section 285 permits an award of attorney fees "to the prevailing party." The Federal Circuit has stated "just because a party can be said to have 'prevailed' on *a claim* does not necessarily make him a 'prevailing party' as the term is used in Rule 54." *Shum v. Intel Corp.*, 629 F.3d 1360, 1367 (Fed. Cir. 2010) (emphasis added). "[T]here can only be one prevailing party in a given case." *Id.* This is particularly relevant where a case involves a "mixed judgment," because it requires the court to examine the parties' respective successes once the entire case is resolved. *See id.* at 1367-68. A court therefore looks at the outcome of the case before determining the "prevailing party."

Here, the Court has not entered a judgment on TASER's inequitable conduct counterclaim, let alone of any of the other pending claims at issue in this case. Thus, the Court has not determined the prevailing party. Nor could it determine one at this stage, as the outcome of the case – as opposed to a single claim – has yet to be determined. As in *Shum*, this case

---

[6] Digital's citation to *Gordon-Darby Sys., Inc. v. Applus Techs., Inc.*, No. 10 C 1863, 2010 WL 5419068 (N.D. Ill. Dec. 23, 2010) is inapposite. As noted in Digital's brief, that case included a covenant not to sue "agreed upon by the parties," which is not present here. Further, the holding in *Gordon-Darby* was analyzed and rejected in *Jovanovich*, 2011 WL 4073197, at \*3-4.

9

involves several claims that may or may not result in a mixed judgment requiring the Court to weigh which party is the prevailing party for purposes of this action. To suggest that any motion for attorneys' fees must be filed in the middle of a pending case is simply not supportable.

Not surprisingly, none of the cases cited by Digital support such a novel position. In *IPXL Holdings*, cited by Digital, the 14-day deadline to file a motion for attorneys' fees occurred after a grant of summary judgment on what appeared to be *the only claim in the case*, thus resolving the entire case. See *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1141 (Fed. Cir. 2005). In *Aventis Cropscience*, also cited by Digital, the court invalidated all four patent claims based on collateral estoppel, therefore disposing of *the entire case*, when the defendant requested further discovery to address its § 285 motion for attorneys' fees. See *Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 741 (M.D.N.C. Nov. 20, 2003). The same is true in *Digeo*, where the court declined to permit additional discovery "after the case has been dismissed." *Digeo, Inc. v. Audible, Inc.*, No. C05-464JLR, 2006 WL 3486801, at *4 (W.D. Wash. Dec. 1, 2006). And in *Polarity*, the court had granted dismissal of "the entire action" before declining further discovery for purposes of § 285. See *Polarity, Inc. v. Diversified Techs., Inc.*, No. C-06-0646 EMC, 2006 WL 2982151, at *1 (N.D. Cal. Oct. 17, 2006). None of these cases stands for the proposition that prevailing party status for purposes of a fees motion under § 285 can be determined upon dismissal of a single claim, as Digital argues. Any suggestion that jurisdiction under § 285 requires TASER to file its motion for attorneys' fees within 14 days of the '292 patent's dismissal is without merit.

Moreover, Digital's accusations of TASER's desire to recklessly drive up litigation costs to support an eventual § 285 motion are misplaced. The factual allegations underlying TASER's '292 inequitable conduct counterclaim are similar to – and incorporated into – the allegations

10

directed to its '452 inequitable conduct claims. The patents are also closely related and share a prosecution history. And, of course, this litigation, including its discovery phase, is far from over. Any suggestion that TASER would improperly churn fees in seeking evidence to support its counterclaims is both improper and baseless.

TASER has asserted counterclaims that Digital made no attempt to dismiss on the pleadings. Instead, Digital waited until the '292 patent became a serious liability, after the Patent Office confirmed TASER's statements about the prior art. For all the reasons above, TASER is entitled to maintain its '292 patent counterclaim even without Digital's underlying patent infringement count.[7] *See Jovanovich*, 2011 WL 4073197, at *4 (specifically concluding that "[a]ll discovery is terminated except as it relates to defendant's remaining claims," which included its inequitable conduct counterclaim for a patent the court dismissed); *Dairy Health Prods., Inc. v. IBA, Inc.*, Case No. 1:07CV75DAK, 2011 WL 4345311, at *2 (D. Utah Sept. 15, 2011) (leaving discovery open for defendant to pursue inequitable conduct counterclaim and prepare for bench trial in line with operative scheduling order).[8] Because the Court can retain

---

[7] Digital suggests in a footnote that TASER will not be able to show materiality of the omitted prior art, a significant hurdle to proving its counterclaim. (Doc. No. 133 at 10, n.2.) TASER notes, however, that in the '292 IPR, Digital has recently sought permission to amend the '292 patent's claims to circumvent the prior art at issue in the IPR – prior art TASER alleges Digital knew about and failed to cite the USPTO – and, essentially, avoid an inevitable finding that the ICOP 20/20 prior art invalidates the '292 patent. (*See* Ex. A-2, at 1, 28.) On its face, Digital's seeking to amend its claims appears to demonstrate that the '292 patent claims would not have issued but-for the omission of the ICOP 20/20 prior art.

[8] Digital's opening brief does not cite the *HR Tech* case, *supra*. In that case, Judge Lungstrum denied a motion to dismiss because of an insufficient covenant not to sue. Regarding Section 285, the Court found the fee claim had "no effect" on the viability of the declaratory judgment claims, although the defendant could still pursue both an unenforceability finding and fees. *HR Tech*, 2011 WL 2174919 at *2-3. Here, it appears Digital is attempting to suppress further discovery into its '292 patent misconduct by asserting TASER must file an immediate motion for fees, while Digital simultaneously seeks to lift the IPR-related discovery stay *only with respect to the '452 patent*, relying on its current motion to dismiss (*see* Doc. Nos. 134 and 136-138, regarding dispute and related briefing schedule).

jurisdiction over TASER's inequitable conduct counterclaim on the '292 patent, Digital's Motion as to that claim should be denied.

## IV.    CONCLUSION.

Multiple, independent bases exist to support the Court's retaining TASER's inequitable conduct counterclaim on the '292 patent in this case, regardless of Digital's dismissal of its underlying '292 patent infringement claim.  Digital's covenant not to sue does not protect TASER from future accusations of infringement on similar functionalities.  The relatedness of both asserted patents requires addressing the merits of TASER's counterclaims together.  And Digital fundamentally does not dispute that this Court still has jurisdiction over TASER's counterclaim under 35 U.S.C. § 285.  Accordingly, the Court should deny Digital's Motion to Dismiss TASER's '292 Patent Counterclaim for Lack of Declaratory Judgment Jurisdiction.

DATE: September 21, 2017

/s/ Lynn C. Herndon
B. Trent Webb (KS Bar # 15965)
bwebb@shb.com
John D. Garretson (D. Kan. # 78465)
jgarretson@shb.com
Zach Chaffee-McClure (KS Bar # 23479)
zmcclure@shb.com
Lynn C. Herndon  (D. Kan. # 78369)
lherndon@shb.com
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO  64108-2613
Phone: 816-474-6550
Fax: 816-421-5547

Pamela B. Petersen (*Admitted Pro Hac Vice*)
Axon Enterprise, Inc.
17800 North 85th Street
Scottsdale, Arizona 85255-9603
Phone: (623) 326-6016

Fax: (480) 905-2027
ppetersen@axon.com
Secondary: legal@axon.com
***Counsel for TASER International, Inc.***

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of September 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a notice of electronic filing to all attorneys of record linked to this case.


*/s/ Lynn C. Herndon*
Lynn C. Herndon