# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DIGITAL ALLY, INC.

                Plaintiff,

v.

TASER INTERNATIONAL, INC.

                Defendant.

Case No. 2:16-cv-02032

**DEFENDANT TASER INTERNATIONAL, INC.'S OPENING MEMORANDUM IN SUPPORT OF MAINTAINING THE STAY IN THIS CASE PENDING *INTER PARTES* REVIEW**

**TABLE OF CONTENTS**

I.   INTRODUCTION. ................................................................................................................ 1

II.  FACTUAL BACKGROUND. .............................................................................................. 2

III. LEGAL STANDARD. .......................................................................................................... 2

IV.  ARGUMENT. ....................................................................................................................... 3

    A.  No Set Deadlines Exist for the Completion of Discovery or Trial. ......................... 3

    B.  Digital's Statements and the PTAB's Decisions in the '292 IPR Will Streamline Litigation on the Closely Related '452 Patent. ........................................................ 4

    C.  A Stay Does Not Result in Undue Prejudice to Digital. .......................................... 7

V.   CONCLUSION. .................................................................................................................. 10

# **TABLE OF AUTHORITIES**

Page(s)

**FEDERAL CASES**

*Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353 (Fed. Cir. 2017) ..........................................5, 6

*Braintree Labs., Inc. v. Nephro-Tech, Inc.*, Case No. 96-2459-JWL, 1997 WL
    94237 (D. Kan. Feb. 26, 1997) ...............................................................................................2, 3, 9

*Corel Software, LLC v. Microsoft Corp.*, Case No. 2:15-cv-528-JNP-PMW, 2016
    WL 4444747 (D. Utah Aug. 23, 2016) ...................................................................................2, 7, 9

*Evolutionary Intelligence, LLC v. LivingSocial, Inc.*, Case No. 13-cv-04205-
    WHO, 2014 WL 2735185 (N.D. Cal. June 16, 2014) ............................................................2

*Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, Case No. C-13-04513,
    2014 WL 4802426 (N.D. Cal. Sept. 26, 2014) .......................................................................4

*Fusion Specialties, Inc. v. China Network Leader, Inc.*, Civil Action No. 12-cv-
    00009-CMA-KMT, 2012 WL 3289077 (D. Colo. Aug. 11, 2012) ................................. passim

*Norred v. Medtronic, Inc.*, Case No. 13-2061-EFM/TJJ, 2014 WL 554685 ..................................2
    (D. Kan. Feb. 12, 2014)

*MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284 (Fed. Cir. 2015) .............................3

*ScriptPro LLC v. Innovation Assocs., Inc.*, No. 06-2468-CM-TJJ (D. Kan.) .................................8

*ScriptPro LLC v. Wal-Mart Stores, Inc.*, No. 05-2244-CM, 2006 WL 2294859 (D.
    Kan. Aug. 8, 2006)....................................................................................................................2

*SMT Solutions, Inc. v. Expoevent Supply LLC*, Civil Action No. 11-6225
    (ES)(CLW), 2012 WL 3526830 (D.N.J. Aug. 15, 2012)................................................. passim

*Trading Techs Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870 (N.D. Ill.
    2016) ......................................................................................................................................4, 7, 8, 9

*VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307 (Fed. Cir. 2014) ..........................................7

*Vivint, Inc. v. Alarm.com Inc.*, Case No. 2:15-cv-392 CW, 2016 WL 4750176 (D.
    Utah Sept. 12, 2016) ...............................................................................................................2, 4

*White Knuckle IP, LLC v. Electronic Arts Inc.*, Case No. 1:15-cv-00036-DN-
    BCW, 2016 WL 3959689 (D. Utah July 20, 2016) ................................................................2, 8

I.       INTRODUCTION.

The Patent Office has begun an *inter partes* review ("IPR") for the '292 patent. That IPR will clarify claim construction for both the '292 and '452 patents. The patents have the same specification, share the same prosecution history, and have overlapping claim terms. Courts routinely maintain litigation stays in such circumstances.

The '292 IPR has already had a clarifying effect. Digital recently changed its claim construction position on one overlapping claim term, compared to its previous briefing before Judge Murguia. Digital also just filed a motion in the IPR to amend the '292 patent claims *by adding an element from the '452 patent claims*. In short, the two patents are inextricably intertwined.

Digital is now trying to dismiss the '292 patent from this case. It apparently recognizes that precedent strongly favors maintaining the stay while both patents are still asserted. But Digital's motion does not ultimately affect the stay analysis. As described above, the '292 IPR addresses issues common to both patents. And the premise for Digital's motion is further flawed. It unilaterally, and improperly, attempts to dismiss TASER's inequitable conduct counterclaim with respect to the '292 patent. TASER filed this counterclaim more than a year ago. Digital did not move to dismiss it then. But now, after the Patent Office instituted an IPR *on the same prior art* cited by TASER in its counterclaim, the '292 patent has become a liability for Digital.

Digital's motion to dismiss is not yet fully briefed. If its outcome is indeed relevant to the stay analysis, as Digital contends, then its effect cannot be determined until Judge Murguia rules. TASER strongly believes Digital's motion should fail as a matter of law. But either way, the '292 IPR will streamline and clarify the issues in this case.

Stays pending IPR ultimately lessen litigation costs, increase judicial efficiency, and avoid duplicated effort. For this reason, courts in Kansas and many other jurisdictions have a "liberal policy" toward granting and maintaining stays pending IPR. Here, the Court should maintain the current stay until the Patent Office resolves the '292 IPR proceeding, which will affect claim construction for both the '292 and '452 patents.

## II. FACTUAL BACKGROUND.

For brevity, TASER incorporates by reference the Joint Report Regarding the Asserted Patents' IPR Status and the Parties' Respective Positions Regarding Stay. (Doc. No. 134.) Further, since the parties filed the Joint Report, Digital has filed a Motion to Amend in the '292 IPR seeking to cancel and substitute the instituted claims. (*See* Doc. No. 139-3.)

## III. LEGAL STANDARD.

This Court and courts in the Tenth Circuit universally apply a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." (Doc. No. 115, Stay Order at 3.) *See e.g., Norred v. Medtronic, Inc.*, Cases No. 13-2061-EFM/TJJ, 2014 WL 554685, at *1 (D. Kan. Feb. 12, 2014) (James, J.); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, Case No. 96-2459-JWL, 1997 WL 94237, at *9 (D. Kan. Feb. 26, 1997).[1] Numerous other district courts similarly apply this "liberal policy." *See e.g., Evolutionary Intelligence, LLC v. LivingSocial, Inc.*, Case No. 13-cv-04205-WHO, 2014 WL 2735185, at *2 (N.D. Cal. June 16, 2014); *SMT Solutions, Inc. v. Expoevent Supply LLC*, Civil Action No. 11-6225 (ES)(CLW), 2012 WL 3526830, at *2 (D.N.J. Aug. 15, 2012).

---

[1] *See e.g., ScriptPro LLC v. Wal-Mart Stores, Inc.*, No. 05-2244-CM, 2006 WL 2294859, at *1 (D. Kan. Aug. 8, 2006) (Murguia, J.); *Vivint, Inc. v. Alarm.com Inc.*, Case No. 2:15-cv-392 CW, 2016 WL 4750176, at *2 (D. Utah Sept. 12, 2016); *Corel Software, LLC v. Microsoft Corp.*, Case No. 2:15-cv-528-JNP-PMW, 2016 WL 4444747, at *2 (D. Utah Aug. 23, 2016); *White Knuckle IP, LLC v. Electronic Arts Inc.*, Case No. 1:15-cv-00036-DN-BCW, 2016 WL 3959689, at *2 (D. Utah July 20, 2016); *Fusion Specialties, Inc. v. China Network Leader, Inc.*, Civil Action No. 12-cv-00009-CMA-KMT, 2012 WL 3289077, at *1 (D. Colo. Aug. 11, 2012).

In creating the IPR process, Congress specifically "react[ed] to 'a growing sense that questionable patents are too easily obtained and are too difficult to challenge.'" *MCM Portfolio LLC v. Hewlett-Packard Co.*, 812 F.3d 1284, 1290-91 (Fed. Cir. 2015).  Consequently, IPR seeks to "'provid[e] a more efficient system for challenging patents that should not have issued' and to 'establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.'" *Id.* (citing H.R. Rep. No. 112-98, at 39-40.)  These benefits "prevent costly pretrial maneuvering which attempts to circumvent the reexamination procedure, and "settl[e] patent validity disputes more quickly and less expensively than often-protracted litigation and allowing courts to rely on the [US]PTO's expertise." *Braintree*, 1997 WL 94237, at *9.

The stay factors are: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. (Doc. No. 115, Stay Order at 3.)  No one factor is dispositive; instead, each is analyzed under the totality of the circumstances.  *See Fusion Specialties*, 2012 WL 3289077, at *2.  All three factors favor maintaining the stay here.

IV.     ARGUMENT.

The reasons the Court granted the stay in March favor maintaining it now.  Lifting the stay will still result in duplicating effort on overlapping claim terms and subject matter the PTAB is now addressing during the '292 IPR.  Regardless of whether Digital succeeds in dismissing the '292 patent, a stay pending IPR saves both the Court and the parties from unnecessary do-overs and needless litigation expense.

    A.     No Set Deadlines Exist for the Completion of Discovery or Trial.

The litigation has not progressed since the Court granted the stay in March.  As the Court

3

noted then, this factor favored a stay.  (Doc. No. 115 at 4.)  *See Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, Case No. C-13-04513 (consolidated cases omitted), 2014 WL 4802426, at *3 (N.D. Cal. Sept. 26, 2014) (finding factor continued to favor stay where stage of case had not advanced since stay issued).  The deadline for fact discovery will not occur until 60 days after the Court's claim construction ruling.  (*Id.*)  A claim construction hearing has not occurred.  (*Id.*)  At the parties' suggestion, the Court deferred setting deadlines for the Pretrial Conference, submission of the Pretrial Order, and trial until after the Court's claim construction ruling.  (*Id.*)  And, as the Court previously noted, it "has not yet invested significant resources in those activities."  (*Id.*)  Nor have the parties noticed any depositions or begun expert discovery.  Because the litigation has not advanced since the Court's Order, this factor strongly weighs in favor of a stay.

### B. Digital's Statements and the PTAB's Decisions in the '292 IPR Will Streamline Litigation on the Closely Related '452 Patent.

Maintaining the stay will simplify and clarify the issues for the Court.  "[T]he question is merely whether the issues will be simplified, and not whether the entire case will be resolved." *Vivint, Inc.*, 2016 WL 4750176, at *3.  Courts routinely maintain litigation stays, even where less than all asserted patents are subject to USPTO review.  *See e.g., Id.* (disagreeing that a stay would not substantially simplify the issues for trial when only three of six asserted patents were subject to IPR); *Evolutionary Intelligence, LLC,* 2014 WL 4802426, at *4 (maintaining stay where only one of eight IPR petitions across two patents was granted); *Trading Techs Int'l, Inc. v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 874 (N.D. Ill. 2016) (reasoning that benefits of stay "would even exist if only *some* of the litigated claims were undergoing review"); *SMT Solutions*, 2012 WL 3526830, at *4 (finding "simplification may occur even where, as here, not all of the patents-in-suit are under reexamination").

4

Here, the PTAB is proceeding through the IPR process expeditiously. The '292 IPR will test the validity of nearly every asserted claim of the '292 patent. Moreover, the prior art at issue in the '292 IPR is the same prior art forming the basis for TASER's inequitable conduct counterclaims against both the '292 and '452 patents—the ICOP 20/20 system. And importantly, TASER has sought rehearing of the PTAB's denial of one of the '452 IPR petitions. That petition for rehearing remains pending. (*See* Doc. No. 134 ¶ 3.)

Regardless of the status of a '452 IPR, significant advantages exist in permitting the '292 IPR to run its course. Both patents have significant overlap. They share the same specification and almost an entire prosecution history. They both claim the same invention. In fact, the Patent Office found the '292 and '452 patents so "patentably indistinct" that the Office required Digital to file a terminal disclaimer, which prevents unjustified extension of patent protection beyond the term of an earlier-issued patent. And several key claim terms are common to both asserted patents, including "recording device," "recording device manager," and "metadata"—all of which are at issue in the '292 IPR. In fact, Digital has now filed a Motion to Amend in the '292 IPR, seeking to cancel and substitute its claims. (*See* Doc. No. 139-3.) Its amendment tries to import claim language found in the '452 patent in an attempt to save the '292 patent. (*Compare* Doc. No. 19-21 at 20, cl. 1, *with* Doc. No. 139-3 at Claim Appendix xv (amending claim to include a distinct computer-readable medium found in claim 1 of the '452 patent).)

Digital's statements in the '292 IPR will thus influence this litigation. The Federal Circuit recently held (as a matter of first impression) that any statements made by a patent owner during an IPR proceeding can be considered for claim construction, and used to support prosecution disclaimer in district court. *Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1359

5

(Fed. Cir. 2017). Digital's statements regarding currently-*disputed* claim terms[2] *or undisputed* claim terms in the '292 IPR will affect the interpretation of the '452 patent in the litigation. Digital has already begun to articulate positions in the IPR on what the ICOP 20/20 prior art discloses, what claim elements were already in the art prior to Digital filing its patent applications, and what the perceived points of novelty are for its alleged invention. All of these position statements impact the scope of both the '292 and '452 patents.

Digital has already filed a Preliminary Patent Owner Response to the petition, a Patent Owner Response to the PTAB's institution decision, and a Motion to Amend in the '292 IPR which provide valuable insight on Digital's positions. In moving to amend, Digital must prove patentability for *every* claim limitation over *all prior art of record*–i.e., not just the ICOP 20/20 prior art that forms the focus of the '292 IPR. Thus, Digital's attempts to amend the '292 patent claims will provide vital data points in this litigation for claim construction and invalidity. And at least the following events have yet to occur in the IPR that will likely yield more information: the deposition of Digital's expert, briefing on the merits by both TASER and Digital, oral argument before the PTAB panel, and, of course, the PTAB's final written decision.

Conversely, lifting the stay will cause duplication of efforts and waste the Court's and the parties' resources. Without a stay, the parties will have to re-address claim construction issues after the record is complete and the PTAB provides its final written decision on the '292 patent. *Aylus*, 856 F.3d at 1359. But given the originally intended discovery schedule—in which the close of fact discovery occurs 60 days after a *Markman* Order—without a stay, the parties may

---

[2] For instance, Digital has changed its claim construction position for "recording device" in the '292 IPR (a term that overlaps with the '452 patent). Now Digital argues for an express construction, instead of the "plain and ordinary meaning" construction it proffered during claim construction in this litigation. (*See* Doc. No. 139-2, PTAB's Decision to Institute IPR on the '292 patent at 8 ("Patent Owner counters that a 'recording device' as claimed . . . means "a device that captures and stores data for future retrieval").)

6

have to amend or supplement their contentions, take additional fact discovery (including third-party discovery), or supplement expert reports, all resulting in needless backtracking. *See Corel Software*, 2016 WL 4444747, at *2 (noting that denying stay without benefit of full intrinsic record "could complicate this case by making it necessary to reconsider certain claim construction issues"); *Norred*, 2014 WL 554685, at *3 (noting stay "will avoid the need for multiple claim construction hearings"); *Fusion Specialties*, 2012 WL 3289077, at *2 (finding a stay "will also save the parties from needlessly wasting their resources in litigating issues that will ultimately be rendered moot by the [US]PTO's findings"). This duplication exists regardless of the status of the '292 patent in this case, because the patents are so closely related. Accordingly, this factor also strongly weighs in favor of a stay.

      **C.**    **A Stay Does Not Result in Undue Prejudice to Digital.**

Undue prejudice can exist if the parties are sole competitors or the record shows head-to-head competition. (*See* Doc. No. 113 at 4.) Lack of undue prejudice is most apparent where the party opposing a stay failed to move for preliminary injunction. *See VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1320 (Fed. Cir. 2014) (noting patentee's delays in "seeking preliminary injunctive relief belie its claims that it will be unduly prejudiced by a stay"); *Trading Techs.*, 186 F. Supp. 3d at 878 (including string citation for similar holdings). Moreover, as this Court and the Federal Circuit have recognized, mere delay in litigation "does not establish undue prejudice." *Norred*, 2014 WL 554685, at *4; *see VirtualAgility Inc.*, 759 F.3d at 1319 (finding that "passage of time," without more, is insufficient to "justify a conclusion of undue prejudice").[3] Indeed, the IPR process is "statutorily limited in time and is required to take place

---

[3] *See e.g., Corel Software*, 2016 WL 4444747, at *2 (finding "[t]he delay inherent to the reexamination process does not constitute, by itself, undue prejudice"); *SMT Solutions*, 2012 WL 3526830, at *3 (same); *Fusion Specialties*, 2012 WL 3289077, at *4 ("[m]ere

7

within twelve months." *White Knuckle*, 2016 WL 3959689, at *3 (concluding that such delay made it "less likely that [the plaintiff] will suffer prejudicial delay").[4]

First, Digital's superficial protestations of an intense rivalry with TASER have never been supported. As TASER and Digital detailed in prior briefing, the body-camera market for law enforcement is saturated with dozens of providers. (*See* Doc. No. 112-8 at 1-3, 1-4, and 1-5 (identifying more than 35 different entities); Doc. No. 113 at 5.) TASER's governmental or community stakeholders have never identified Digital "as a vendor with whom they were interested in doing business." (Doc. No. 109, Memo. at 14; Doc. No. 109-8.) And Digital has consistently failed to adduce any evidence, beyond online articles discussing the parties' rivalry *in this litigation*, that the parties actually compete head-to-head.[5] (*See* Doc. No. 113 at 5.) In fact, the parties have never competed "head-to-head."

At most, TASER and Digital have occasionally submitted proposals to the same law enforcement agencies, along with many other competitors. (*See* Doc. No. 113 at 7-8.). This does not indicate sufficient competition to find undue prejudice, particularly since Digital routinely fails to make the first cut. And many courts, espousing a "liberal policy," grant stays even where the parties *are* direct competitors. *See Trading Techs.*, 186 F. Supp. 3d at 877-78 (granting stay despite noting that parties "are direct competitors"); *Fusion Specialties*, 2012 WL 3289077, at *4 (noting the parties are "direct competitors," but finding that "any such prejudice

---

delay, without more . . . does not demonstrate undue prejudice," even if USPTO "proceedings may result in a delay of months or years") (quotation omitted).

[4] This Court has previously permitted a stay pending USPTO review that lasted far longer—over three years—prior to the creation of IPR, which now provides a shorter and more streamlined approach to review. *See ScriptPro LLC v. Innovation Assocs., Inc.*, No. 06-2468-CM-TJJ (D. Kan.), *compare* Doc. No. 33 (Order granting stay entered in May 2007), *with* Doc. No. 63 (Order lifting stay entered in July 2010).

[5] Notably, in earlier briefing, Digital did not dispute its own public statements and independent press reports regarding the failures of its body cameras, demonstrating Digital's lack of success in the law enforcement market is of its own making, not TASER's. (*See* Doc. No. 109, Mem. at 14; Doc. No. 113 at 6.)

8

appears minimal"); *SMT Solutions*, 2012 WL 3526830, at *3, *5 (granting stay even where the plaintiff "correctly assert[ed] that it and the [d]efendants are competitors"). Such a result applies equally here.

Second, courts in this Circuit, as well as other courts embracing a liberal policy in favor of granting stays, overwhelmingly agree that failure to move for a preliminary injunction is fatal to a plaintiff's claims of undue prejudice. Such claims are merely speculative if plaintiffs have not even attempted to make, let alone met, a threshold effort to justify preliminary injunctive relief. *See e.g., Corel Software*, 2016 WL 4444747, at *2 (granting stay where "Corel has not sought injunctive relief in this case"); *Trading Techs*, 186 F. Supp. 3d at 878 (finding plaintiff's decision to forego seeking a preliminary injunction "particularly detrimental to its claim"); *Fusion Specialties*, 2012 WL 3289077, at *3 (calling plaintiff's arguments of loss of market share "speculative at best"); *Braintree Labs*, 1997 WL 94237, at *10 (finding plaintiff's concerns regarding defendants' selling product during pendency of litigation "would more appropriately have been raised in support of a request for a preliminary injunction"). Absent such a showing of preliminary injunctive relief, Digital cannot plausibly argue undue prejudice. Consistent with what Digital said at the outset of this litigation, it will have "all of [its] legal and equitable remedies available to it after the stay is lifted." *SMT Solutions*, 2012 WL 3526830, at *3.

Digital cannot now disavow its previous, public statements that it is *not* being unduly prejudiced by TASER's sales of allegedly-infringing products as this case continues. When asked by an investor specifically *why it did not move for preliminary injunctive relief in this case*, Digital's CFO demurred that "if [TASER] want[s] to continue to sell [the infringing technology], so be it, it will just add to the damages that will be awarded at the end." (Doc. Nos. 113 at 7, 113-2 at 20.) This is particularly significant because Digital made this statement

shortly after filing its Complaint, when a preliminary injunction motion typically would have followed. (*See* Doc. No. 113 at 7.) Thus, Digital cannot credibly argue that it will be unduly prejudiced if the stay is maintained. This factor overwhelmingly supports a stay.

## V.  CONCLUSION.

Digital has asserted baseless claims, changed positions, and tried to avoid the consequences. Digital's antitrust allegations were dismissed after it subpoenaed multiple third-party governmental entities. Digital now seeks to dismiss its '292 patent allegations as well, after forcing TASER to successfully request an IPR proceeding. Digital also previously dropped claim 1 of the '452 patent (and its dependent claims) at the end of claim construction briefing, after finally acknowledging those claims contain fatal defects. Digital now continues to change its positions during the IPR proceedings in ways that will affect both patents in suit. For all these reasons, the Court should maintain the current stay until the IPR is resolved.

Respectfully submitted,

DATE: October 2, 2017

*/s/ Lynn C. Herndon*
B. Trent Webb (KS Bar # 15965)
bwebb@shb.com
John D. Garretson (D. Kan. # 78465)
jgarretson@shb.com
Zach Chaffee-McClure (KS Bar # 23479)
zmcclure@shb.com
Lynn C. Herndon (D. Kan. # 78369)
lherndon@shb.com
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, MO  64108-2613
Phone: 816-474-6550
Fax: 816-421-5547

Pamela B. Petersen (*Admitted Pro Hac Vice*)
Axon Enterprise, Inc.
17800 North 85th Street
Scottsdale, Arizona 85255-9603
Phone: (623) 326-6016
Fax: (480) 905-2027
ppetersen@axon.com
Secondary: legal@axon.com
**Counsel for Axon Enterprise, Inc. (formerly TASER International, Inc.)**

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a notice of electronic filing to all attorneys of record linked to this case.

/s/Lynn C. Herndon
Lynn C. Herndon

8342568