**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DIGITAL ALLY, INC. | |
| Plaintiff, | |
| v. | Case No. 2:16-cv-02032-CM-TJJ |
| TASER INTERNATIONAL, INC. | |
| Defendant. | |

**PLAINTIFF DIGITAL ALLY, INC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS TASER'S '292 PATENT COUNTERCLAIM**

As noted in Digital's Reply to TASER's First Opposition (Dkt. No. 140), both parties agree that Digital's '292 Patent infringement claims should be dismissed with prejudice, which leaves for the Court's consideration only whether TASER's counterclaim of inequitable conduct for the '292 Patent should be dismissed. The law here is clear—TASER cannot maintain its '292 counterclaim independently. The Court maintains jurisdiction over TASER's request for attorneys' fees pursuant to 35 U.S.C. § 285 ("Section 285"), which bears relation to TASER's '292 counterclaim, but the counterclaim itself must be dismissed for lack of jurisdiction. The practical impact of dismissing TASER's counterclaim boils down to attorneys' fees. Even though TASER has no basis to seek attorneys' fees presently, it is seeking to maintain its counterclaim independently such that it can attempt to prove the '292 Patent unenforceable over the next 2+ years and then seek all fees incurred in the process. This cannot be permitted.

To refocus the Court, TASER has pled that Digital engaged in inequitable conduct with regard to the '292 Patent and the '452 Patent (e.g., that Digital has committed "fraud" on the Patent Office) based largely on identical theories. Of course, no defense in patent infringement litigation has been abused as much as the inequitable conduct defense. The Federal Circuit "has

1

long recognized that the habit of charging inequitable conduct in almost every major patent case has become an absolute plague." *Dickson Indus., Inc. v. Patent Enf't Team, L.L.C.*, 333 F. App'x 514, 519 (Fed. Cir. 2009) (internal citations omitted). This defense is "overplayed, [] appearing in nearly every patent suit, and is cluttering up the patent system." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011).[1]

It is on this overplayed, plague of a defense that TASER hangs its hopes for attorney fees. Here, there is no imminent finding of inequitable conduct for the '292 Patent. To the contrary, TASER's claim is in its infancy—it has conducted only minimal written discovery on its claim, document production had just begun, no depositions have been taken, and no substantive motions have been filed. TASER is far from establishing its case by "clear and convincing evidence." Instead, TASER seeks to maintain its '292 counterclaim for the life of the '292 Patent IPR and any appeals, hoping the outcome may provide some evidence in support of its counterclaim. Through this lengthy process that could last over two years, TASER intends to incur attorney fees attempting to prove its counterclaim and then, if it prevails, seek those very same fees incurred long after the '292 Patent was dismissed from this case. The perverse interest created in such a situation for the attorneys is enormous. As one court has noted:

> Under defendants' view that a Section 285 attorney fees request is akin to a separate cause of action, they would have a right to proceed with discovery on all of the issues raised in their answer which might support their fees request. The attorneys' fees discovery would be, in amount, nearly equal to that which would have been conducted had the case gone to trial. The time, energy, and funds

---

[1] Judge Newman has expressed even stronger views on the plague of inequitable conduct:

> "Litigation-induced assaults on the conduct of science and scientists, by aggressive advocates intent on destruction of reputation and property for private gain, produced the past "plague" of charges of "inequitable conduct." [] Indeed, the prevalence of accusations of inequitable conduct in patent cases led judges to suspect that all scientists are knaves and all patent attorneys jackals." *Hoffmann-La Roche, Inc. v. Promega Corp.*, 323 F.3d 1354, 1372 (Fed. Cir. 2003).

> expended by the Court and the parties would completely dwarf the resolution of the basic patent law issues which gave rise to the controversy. Such a result would be unreasonable and outside the intent of Congress. [] Moreover, defendants' proposition that the Court should treat Section 285 claims for attorneys' fees as an independent, separate claim heavily relies on their view that they are not only entitled to fees which have been incurred to this point, but also any fees incurred while conducting further discovery related to their fees request. [] **Such a result would pervert beyond all recognition, the concept behind allowing attorneys' fees. Moreover, it would create such enormous attorney self-interest that it would raise significant questions of propriety and ethics.**

*Aventis Cropscience, N.V. v. Pioneer Hi-Bred Int'l, Inc.*, 294 F. Supp. 2d 739, 745 (M.D.N.C. 2003) (emphasis added).

The law is clear—in light of Digital's covenant not to sue, TASER has no basis to independently maintain its inequitable conduct counterclaim for the '292 Patent. Nor does TASER currently have a ripe claim for attorney fees pursuant to Section 285. Instead, it seeks to engage in discovery, briefing, and ultimately trial to attempt to prove its claim and then bring a claim for attorneys' fees. TASER argues that any effort expended attempting proving inequitable conduct for the '292 Patent will be coextensive with its effort do the same with respect to the '452 Patent. That may well be true, but the Patent Office has already rejected a key element of TASER's theory with respect to the '452 Patent, which makes it extremely unlikely that TASER will ultimately prevail on that counterclaim. Accordingly, to the extent TASER is able to prove that any asserted patent is unenforceable due to inequitable conduct, it will at most be with respect to the '292 Patent, which is currently being dismissed from the case. Under these circumstances, TASER will have engaged in over 2 years worth of litigation to prove a dismissed patent unenforceable and will then turn around and seek its fees incurred in the effort. Such an absurd result cannot be permitted. Accordingly, to the extent TASER ultimately proves only the '292 Patent unenforceable and seeks fees pursuant to Section 285, those fees must not include any effort expended after the dismissal of the '292 Patent.

3

**I.      Digital's Covenant Divests the Court of Jurisdiction Over TASER's Counterclaim**

TASER identifies three alleged deficiencies with Digital's Covenant – (1) it fails to cover past products, (2) it fails to cover "colorable imitations," and (3) it fails to cover future products.

With regard to the first criticism, TASER is raising this issue for the first time in its Opposition. The parties conducted multiple meet and confers over a three week process where TASER repeatedly refused to discuss any potential problems with the covenant not to sue. Setting aside TASER's motives for not discussing this perceived defect during the meet and confer process the issue is easily remedied. Digital has amended the language of its Covenant to make crystal clear that it covenants not to sue on the '292 Patent for all past products marketed by TASER. *See* Ex. A, Amended Covenant (including coverage for past products).[2]

Turning to TASER's remaining criticisms, neither holds water. TASER argues that Digital's Covenant fails to capture "colorable imitations." TASER Opposition Dkt. No. 139 at 4-5 (citing *Already v. Nike, Inc*., 568 U.S. 85, 92 (2013).). But *Already* was a trademark matter, and the concept of "colorable imitations" has no applicability to the utility patent at issue here. To the extent there was any question about what a "colorable imitation" is, Black's Law Dictionary makes it perfectly clear: "Considered to be a pre-meditated attempt to deceive. Trademark or service mark that is sufficiently similar to an existing registered trademark or service mark." http://thelawdictionary.org/colorable-imitation/. Not surprisingly, courts before and after *Already*, do not impose any such "colorable imitation" requirement for covenants not to sue in utility patent matters. *See PPG Indus., Inc. v. Valspar Sourcing, Inc.*, 679 F. App'x 1002,

---

[2] Digital is unaware of any past products to which this covenant would apply. The lawsuit revolves around a new feature that TASER just introduced into its products shortly before the suit began. Because TASER did not identify any past products that would be impacted, Digital assumes this must be another issue identified by TASER without any basis in fact. But, nonetheless, it is easily remedied.

4

1004 (Fed. Cir. 2017) (citing *Already* and finding appeal moot in light of covenant covering "currently existing products or use of methods and of prior existing products or prior use of methods" with no mention of colorable imitations); *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1300 (Fed. Cir. 2009) (analyzing numerous covenants where "courts found absence of continuing case or controversy" none of which included any mention of colorable imitations). Accordingly, TASER's criticism regarding "colorable imitations" should be rejected as wholly inapplicable.

Finally, TASER argues that the Covenant fails to divest the Court of jurisdiction over TASER's counterclaim because "TASER has 'indicate[d] that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant.'" Dkt. No. 139, Opposition at 6. In support, TASER argues only that (1) it has "produced documents to Digital in this litigation with information regarding both past and new products, including functionalities that are neither currently marketed nor identified on TASER's website" and (2) TASER's counsel "could <u>not</u> warrant that TASER had no such plans" to "engage in activities not covered by the Covenant." *Id*. Neither is sufficient to maintain jurisdiction despite Digital's comprehensive Covenant. See *HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2011 WL 2174919, at *4 (D. Kan. June 3, 2011) (holding "covenants need not cover every possible act of infringement that defendants could possible commit in the future" and noting that the accused infringer "must have made 'meaningful preparation' for the development of the product before a case or controversy arises"). At no point in TASER's Opposition or during the parties numerous meet and confers has TASER concretely identified any plans to develop products not covered by the Covenant. Nor could TASER provide any concrete plans in its briefing other than vague generalities.

Accordingly, TASER's suggestion to the contrary is entirely without support, and TASER's final critique of the Covenant should be dismissed.

II.  **Infectious Unenforceability Does Not Support Maintaining Independent Jurisdiction Over TASER's Counterclaim**

TASER next argues that the doctrine of infectious unenforceability supports maintaining independent jurisdiction over both the '292 Patent and '452 Patent counterclaims. It does not, and two important points on this issue must be clarified.

First, although infectious unenforceability is a viable legal doctrine, it does not alone support maintaining independent jurisdiction over a counterclaim for a dismissed patent. The sole decision cited by TASER to the contrary is *Classen*—a non-binding decision from Maryland that misinterprets the Federal Circuit's holding in *Monsanto* and conflicts with other courts, including in this District, on the issue of whether jurisdiction is maintained for the unenforceability counterclaim or just the attorneys' fees request pursuant to 35 U.S.C. § 285 ("Section 285"). As TASER notes, the court in *Classen*, interpreting *Monsanto*, noted "the Federal Circuit held that a district court retains jurisdiction over a patent unenforceability claim after the patent is no longer in suit in order to determine whether a patent holder engaged in 'inequitable conduct' and thus may be liable to the prevailing party for attorneys' fees." *Classen Immunotherapies, Inc. v. King Pharm., Inc.*, 981 F. Supp. 2d 415, 418 (D. Md. 2013) (citing *Monsanto Co. v. Bayer Bioscience N.V.*, 514 F.3d 1229, 1242–43 (Fed. Cir. 2008)). But the Federal Circuit was clear that the covenant at issue did in fact "divest the court of jurisdiction over a declaratory judgment action regarding these patents." *Monsanto*, 514 F.3d at 1242. Rather than permit jurisdiction over the counterclaim, as the *Classen* court misinterpreted, the Federal Circuit held only that "the district court retained independent jurisdiction over Monsanto's request for attorney fees under 35 U.S.C. § 285." *Id*. The *Classen* court's misreading of

6

*Monsanto* is further contradicted by other court opinions that have analyzed the issue and concluded that *Monsanto* does not in fact support maintaining independent jurisdiction over counterclaims for dismissed patents. For example, Judge Lungstrum provided the following analysis that directly conflicts with TASER's and the *Classen* court's analysis:

> ***Monsanto* does not suggest**, however, **that the fee claim confers or creates jurisdiction over the declaratory judgment claims**. To the contrary, in *Monsanto* the court ruled that the district court retained jurisdiction over the fee claim even if the covenant divested that court of jurisdiction over the declaratory judgment claims.

*HR Tech., Inc. v. Imura Int'l U.S.A., Inc.*, No. 08-2220-JWL, 2011 WL 2174919, at *3 (D. Kan. June 3, 2011) (emphasis added); *see also Gordon-Darby Sys., Inc. v. Applus Techs., Inc.*, No. 10 C 1863, 2010 WL 5419068, at *2 (N.D. Ill. Dec. 23, 2010) (concluding "the *Monsanto* court . . . understood unenforceability declarations as failing for jurisdiction right along with those other claims" for infringement and invalidity and holding there is "no basis for retaining jurisdiction over a declaratory judgment claim for unenforceability after a covenant not to sue has been filed and agreed upon by the parties."). TASER's reliance on *Classen* and its argument that infectious unenforceability bestows independent jurisdiction over the '292 Patent counterclaim should thus be rejected as a confused and incorrect reading of otherwise clear Federal Circuit precedent.

Second, TASER goes to great lengths to paint its counterclaims against the '292 Patent and '452 Patent as essentially the same, noting that the same ICOP 20/20 prior art is material to both and implying that they rise and fall together. Dkt. No. 139, *Opposition* at 7-8. But TASER fails to mention that the Patent Office has already weighed in on this issue with respect to the '452 Patent. Namely, the PTAB rejected TASER's IPR petition, challenging the '452 Patent claims based on the same Pierce reference (describing ICOP 20/20) at issue in the single

7

instituted IPR proceeding on the '292 Patent. Ex. B, *Decision Denying IPR of '452 Patent* at 38. The PTAB compared Pierce to the '452 Patent claims and concluded TASER failed to "demonstrate a reasonable likelihood" that the '452 Patent claims are invalid over Pierce. *Id*. at 24. Accordingly, for TASER's infectious unenforceability theory to bear fruit, it will not only have to prevail in the current IPR proceeding for the '292 Patent, but it will also have to overcome the fact that the Patent Office has already rejected its argument that ICOP 20/20, as described by Pierce, is material to the patentability of the '452 Patent claims. Accordingly, contrary to TASER's suggestion, infectious unenforceability is an extreme long shot defense contingent on both (1) an unlikely ruling from the PTAB that Pierce invalidates the '292 Patent and (2) the even less likely requirement that TASER convince a fact finder that Pierce is in fact material to the patentability of the '452 Patent despite the PTAB already having found it is not.

**III.    TASER's Cited Case Law Establishes A Party Cannot Dismiss Its Claims to Avoid an Imminent Finding That Said Claims Were Exceptional**

Although TASER cites numerous cases in its Opposition that it alleges support this Court indefinitely maintaining independent jurisdiction over the '292 Patent counterclaim, none of the binding cases support such a broad proposition. There is however a consistent theme that can be gleaned from the case law TASER cites. Namely, where a finding that an asserted patent is unenforceable due to inequitable conduct is imminent, courts refuse attempts by patentee plaintiffs to dismiss the patent as a means of avoiding the unenforceability finding and the corresponding award of attorneys' fees pursuant to Section 285.

For example, reviewing a finding of unenforceability for four patents "withdrawn shortly before trial," the Federal Circuit reasoned that "[i]t was not an abuse of discretion for the district court, when these patents were sued upon and maintained in the suit up until just before trial, to

hold these four patents unenforceable, even though it did not include them in its entry of judgment." *Nilssen v. Osram Sylvania, Inc.*, 504 F.3d 1223, 1230 (Fed. Cir. 2007).

Similarly, in *Monsanto*, after the district court granted summary judgment that all four asserted patents were unenforceable for inequitable conduct, the Federal Circuit reversed based on certain factual disputes. *Monsanto*, 514 F.3d at 1233. On remand, the plaintiff dismissed three of the four patents, presumably hoping to avoid the district court once again finding them unenforceable and sanctioning plaintiff pursuant to Section 285 for bringing and maintaining an exceptional case. *Id*. The district court nonetheless held all four patents unenforceable for inequitable conduct, and the Federal Circuit affirmed. *Id*. at 1243.

The question for this Court is far removed from these instances where patentee plaintiffs dismissed patents to avoid imminent declarations that said patents were unenforceable and that the plaintiffs were accordingly on the hook for attorneys' fees. Currently, TASER has no ability to prove unenforceability of the dismissed '292 Patent, nor could it file a motion for attorneys' fees pursuant to Section 285. Rather, TASER asks this Court to maintain its counterclaim for the life of the '292 Patent IPR and any appeals, which could last for 2 years, all the while permitting it to conduct discovery into the other elements of its inequitable conduct counterclaim. Then, potentially years later, TASER intends to file its Section 285 motion, seeking an exceptional case finding and requesting attorneys' fees that is has accrued since the '292 Patent was dismissed. As Digital noted in its Motion to Dismiss TASER's Counterclaim, courts routinely deny requests to accrue attorneys' fees for lengthy periods of time after the underlying issue has been resolved. Dkt. No. 133, Digital's Brief at 11. This Court should similarly reject TASER's attempt to do the same.

## IV.     Conclusion

Because the Amended Covenant deprives TASER jurisdiction to maintain its '292 Patent counterclaim, Digital respectfully requests that the Court dismiss said counterclaim without prejudice.

DATE:  October 5, 2017

Respectfully submitted,
ERISE IP, P.A.

/s/ *Adam P. Seitz*
Adam P. Seitz, KS Bar #21059
Eric A. Buresh, KS Bar #19895
Jason R. Mudd, KS Bar #25749
Erise IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, Kansas 66211
Telephone: (913) 777-5600
adam.seitz@eriseip.com
eric.buresh@eriseip.com
jason.mudd@eriseip.com

Paul R. Hart, admitted *Pro Hac Vice*
Erise IP, P.A.
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Telephone: (913) 777-5600
paul.hart@eriseip.com

*Counsel for Plaintiff Digital Ally, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 5, 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing on the CM/ECF registrants.

/s/ *Adam P. Seitz*
Adam P. Seitz, KS Bar #21059
Erise IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, Kansas 66211
Telephone: (913) 777-5600
adam.seitz@eriseip.com

*Counsel for Plaintiff Digital Ally, Inc.*