# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DIGITAL ALLY, INC., a Nevada corporation,

        Plaintiff,

v.

TASER INTERNATIONAL, INC., a Delaware corporation.

        Defendant.

Case No. 2:16-cv-02032-CM-TJJ

JURY TRIAL DEMANDED

**DIGITAL ALLY, INC.'S OPPOSITION TO TASER'S BRIEF IN SUPPORT OF STAY**

**Table of Contents**

I. Introduction ............................................................................................................................. 1
II. The Court Should Not Continue its Temporary Stay of Litigation ............................... 2
   A. Simplification of Issues ..................................................................................................... 2
   B. Prejudice to Digital of a Stay/Tactical Disadvantage .................................................... 5
III. Conclusion ............................................................................................................................. 8

**Cases**

*Audatex North America Inc. v. Mitchell Intern. Inc.*, 46 F.Supp.3d 1019 (S.D. Cal. 2014) ........... 7

*Cf. VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307 (Fed. Cir. 2014) ............................. 7

*Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-CV-07025 (RBK/JS), 2016 WL 7165695 (D.N.J. Dec. 7, 2016) ................................................................................................................. 7

*Fusion Specialties, Inc. v. China Network Leader, Inc. No.* 12-CV-00009-CMA-KMT, 2012 WL 3289077 (D. Colo. Aug. 11, 2012) ........................................................................................... 6

*Trading Techs. Int'k v. BCG Partners, Inc*. 186 F. Supp. 3d 870 (N.D. Ill.) ................................... 6

*Zipit Wireless Inc. v. Blackberry Ltd.*, No. 6:13-CV-02959-JMC, 2016 WL 3452735 (D.S.C. June 24, 2016) ........................................................................................................................ 6

## I.      INTRODUCTION

Because both parties agree that the '292 Patent infringement allegations should be dismissed from this case, TASER's brief rightly focuses on how an IPR of the (soon to be) unasserted '292 Patent impacts litigation moving forward on the remaining '452 Patent. Put simply, it does not. Against this backdrop, TASER primarily argues that the following justify staying litigation: (1) the unidentified impact from unidentified statements made in an IPR for the unasserted '292 Patent and (2) the incredulous (and demonstrably false) contention that it does not compete with Digital. On the first point, TASER cannot dispute that the record in the '292 Patent IPR is effectively closed with respect to Digital and that there is no reason to wait any further to resume discovery and complete the claim construction process in this litigation. Moreover, TASER fails to cite a single case supporting its proposition that an IPR on an <u>unasserted patent</u> can justify staying litigation.

As for its second argument, it is difficult to understand what basis TASER has to contend that the parties do not directly compete for business in the body camera market. Digital's opening brief demonstrated the exact opposite with concrete evidence of situations where the parties directly competed for body camera business and Digital lost contracts to TASER. Moreover, the parties will both be advertising their body cameras and competing for business at the IACP Conference on October 21-24. This conference—which is one of the largest law enforcement conferences in the entire country—will involve a situation where Digital and TASER will have sales booths that are almost directly across from each other. Ex. A, *IACP Floor plan* (illustrating close proximity of TASER/Axon's and Digital's booths). For TASER to suggest otherwise is a gross mischaracterization of the real-world competition in which these parties are engaged and cannot support maintaining the stay.

1

## II. THE COURT SHOULD NOT CONTINUE ITS TEMPORARY STAY OF LITIGATION

Although both parties briefly address the stage of litigation factor, the opening briefs from both Digital and TASER largely focus on the remaining two factors – (1) simplification of the issues and (2) prejudice. Because these two factors should in fact drive the Court's decision, Digital will focus its Opposition accordingly.

### A. Simplification of Issues

TASER raises a number of issues in an attempt to convince the Court that judicial efficiency demands that the stay be maintained until the '292 Patent IPR (and any appeal therefrom) run its course. In fact, TASER's arguments are based on inapposite case law or mischaracterizations of the IPR proceeding, and none withstand scrutiny.

TASER begins its simplification of the issues section by pointing to case law in support of the proposition that a stay may be proper "even where less than all asserted patents are subject to USPTO review." Dkt. No. 142, TASER Brief at 4. But that is not the framing of the issue before this Court. When the '292 Patent is dismissed, as both parties agree it should be, no asserted patents will be under review by the Patent Office. TASER does not even attempt to argue that prior courts have stayed litigation where no asserted patents are under PTAB review. Accordingly, this first attempt by TASER to suggest that its stay request is consistent with precedent can easily be set aside as meritless.

TASER next goes to great lengths to demonstrate overlap between the '292 and '452 Patents, concluding that this favors stay because "Digital's statements in the '292 IPR will [ ] influence this litigation." *Id*. at 5-6. As Digital explained in its Brief, however, Digital's record is now effectively closed in the '292 Patent IPR, and anything it could have said that may impact claim construction in the litigation has been said. TASER ignores this simple fact and

2

misleadingly suggests that the following additional events will occur in the '292 Patent IPR and are relevant to claim construction in the litigation: (1) "the deposition of Digital's expert," (2) "briefing on the merits by both TASER and Digital," (3) "oral argument before the PTAB panel," and (4) "the PTAB's final written decision." As explained below, none of these merit postponing claim construction in the litigation.

Starting with the deposition of Digital's expert, this event does not merit maintaining the stay for a number of reasons. First, Digital's expert has already submitted a declaration in the IPR, which sets forth any opinions relevant to claim construction and which will be the subject of his deposition. Thus, to the extent Digital's expert will proffer any claim construction opinions in the IPR relevant to the litigation, those have already been included in his declaration. Second, TASER's reply brief in the '292 Patent IPR is due November 9, 2017 (Ex. B, Scheduling Order at 7), and TASER will depose Digital's expert well in advance of this fast approaching deadline. So, even assuming the deposition of Digital's expert were pertinent to claim construction in this litigation, that event will occur within the next few weeks and thus cannot justify maintaining the stay.

Turning to "briefing on the merits by both TASER and Digital," this similarly cannot justify maintaining a stay. First, it is unclear what "briefing" TASER is alluding to. As Digital noted in its Brief, Digital has already submitted its final brief in support of the original claims, so there is no further briefing from Digital on that point. If TASER is referring to briefing on the claim amendment issue, it has entirely failed to explain how briefing on proposed new claim language could be relevant to claim construction of preexisting claim language. Whatever the outcome of the claim amendment process and the meaning of new claim language potentially added to the '292 Patent claims, it is entirely irrelevant to claim construction in the litigation

3

where only the original claim language is at issue. Second, there is certainly no need to wait for TASER's briefing in the IPR before addressing claim construction in the litigation. To the extent TASER intends to advance an argument in the IPR proceeding relevant to the litigation, it is free to do so now. Digital does not oppose supplemental briefing in the litigation prior to a *Markman* hearing such that both parties can address any relevant changes in the record since the previous *Markman* briefs were filed. If TASER intends to present Digital's statements previously made in the IPR or statements TASER itself intends to make in the IPR, it can do so through a supplemental brief with no need for further delay.

Lastly, TASER's identification of the oral argument and the PTAB's final written decision are easily disposed of. As Digital noted in its Brief, the oral argument is limited to evidence and arguments advanced in the parties papers. Dkt. No. 141, *Digital Brief* at 10. Because no new evidence or arguments may be introduced, the oral argument cannot justify maintaining the stay. Regarding the final written decision, to the extent the PTAB does address claim construction for a term disputed in the litigation, they will be applying a different legal standard, which significantly minimizes the instructive value of the PTAB's conclusions. Because the final written decision will not issue until June 2018 and any appeal process could last many months, TASER is proposing staying this litigation for up to two years so this Court can consider a non-binding decision from the PTAB that applies a different legal standard. With a complete record before it, this Court is more than capable of construing the disputed terms in this litigation without waiting for the PTAB's final written decision.

TASER's final argument regarding the simplification of issues factor is that lifting the stay will force the Court and parties to re-address claim construction after the IPR resolves, resulting in duplication of efforts. Dkt. No. 142, *TASER Brief* at 6-7. As addressed above,

because the '292 Patent IPR record is effectively closed with respect to Digital, the *Markman* process can proceed ahead in this litigation with no need to re-address any claim construction issues and no duplication of efforts.

### B. Prejudice to Digital of a Stay/Tactical Disadvantage

As explained in Digital's Brief, there is simply no question that (1) TASER and Digital directly compete in the small and sticky body camera market, (2) the parties' respective portions of the market are drastically diverging, and (3) continued stay of this litigation will cause severe damage to Digital. Dkt. No. 141, *Digital Brief* at 2-7. TASER's Brief fails to dispute any of these key points.

TASER begins its discussion of the prejudice factor, stating "the parties have never competed 'head-to-head'" (yet fails to provide any evidence supporting this statement) and then immediately contradicting itself by noting the parties have in fact "submitted proposals to the same law enforcement agencies." Dkt. No. 142, TASER Brief at 8. Setting aside TASER's internal inconsistencies, Digital has conclusively demonstrated that the parties here directly compete for the same business, routinely submitting bids for the same long-term contracts. Dkt. No. 141, Digital Brief at 7. And TASER's unsupported statements suggesting the contrary cannot change this critical fact.

Indeed, the parties will be competing for potential business at the upcoming International Association of Chiefs of Police ("IACP") Annual Conference and Exposition on October 21-24. The IACP conference is one of the United States' largest conferences for vendors of law enforcement equipment and the upcoming event will include thousands of law enforcement professionals from federal, state, county, local and tribal agencies.[1] Digital and TASER will both be demonstrating their body cameras at the expo and have booth space that is nearly side by side.

---
[1] http://www.theiacpconference.org.

Ex. A, *IACP Floor plan*. TASER's suggestion that the parties are not competitors is demonstrably false, which is likely why TASER did not provide any evidence supporting its argument in this regard.

TASER follows this contradictory and unfounded argument with a few isolated examples of courts staying litigation against competitors. Dkt. No. 142, TASER Brief at 8-9. None of these cases are instructive here. The first decision cited by TASER, *Trading Techs. Int'k v. BCG Partners, Inc.*, involved a patentee plaintiff that waited "six to seven years after the Defendants released their accused technology" to file suit. 186 F. Supp. 3d 870, 878 (N.D. Ill.). Similarly, in *Fusion Specialties, Inc. v. China Network Leader, Inc.*, the plaintiff waited more than a year to file suit after inspecting the defendant's accused products. No. 12-CV-00009-CMA-KMT, 2012 WL 3289077, at *4 (D. Colo. Aug. 11, 2012). While such delay could support a conclusion that further delay would not constitute undue prejudice, there is no such delay on the record here. Digital filed its Complaint **on the exact day the reexamination certificate was issued for the '292 Patent**, and Digital amended its Complaint to add the '452 Patent **on the same day it was issued by the Patent Office**. The final decision cited by TASER, *SMT Solutions*, did involve a court that discounted the fact that the parties competed. But this unpublished and non-binding decision from New Jersey is inconsistent with the overwhelming majority of decisions finding direct competition weighs strongly against staying litigation. *See, e.g.*, Dkt. No. 141, *Digital Brief* at 3-4 (citing numerous decisions where courts decline to stay litigation against competitors); *see also Zipit Wireless Inc. v. Blackberry Ltd.*, No. 6:13-CV-02959-JMC, 2016 WL 3452735, at *3 (D.S.C. June 24, 2016) ("When looking at the relationship between the parties, courts generally are 'reluctant to stay proceedings where the parties are direct competitors.'").

TASER finally argues that Digital's "failure to move for a preliminary injunction is fatal

to a [its] claims of undue prejudice." Dkt. No. 142, TASER Brief at 9. As explained in Digital's opposition to TASER's original motion to stay (Dkt. No. 112 at 9-10), Digital's decision not to seek a preliminary injunction "does not mean that it would not suffer prejudicial harm from its competitor's market activity during a lengthy delay in the case." *See Universal Electronics*, 943 F.Supp.2d at 1034. Digital's actions throughout this case have emphasized the importance and urgency of this case to its business. For example, Digital filed its Complaint on the exact day the reexamination certificate was issued for the '292 Patent, and Digital amended its Complaint to add the '452 Patent on the same day it was issued by the Patent Office. *Cf. VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014) (noting that because the plaintiff waited nearly a year after issuance of the patent-in-suit to file its complaint, its case was not as urgent as the plaintiff suggested). While the staggered issuance of the two asserted patents complicated Digital's ability to move for a preliminary injunction, that is a far cry from saying that Digital's case should be stopped dead in its tracks. *Audatex North America Inc. v. Mitchell Intern. Inc.*, 46 F.Supp.3d 1019, 1026 (S.D. Cal. 2014) (finding that the undue prejudice factor weighed against a stay and considering, but declining to assign much weight to, the fact that the plaintiff did not seek preliminary injunction); *Eagle View Techs. Inc. v. Xactware Sols., Inc.*, No. 15-CV-07025 (RBK/JS), 2016 WL 7165695, at *5-6 (D.N.J. Dec. 7, 2016) (finding that the undue prejudice weighed against a stay, finding that the fact the plaintiffs did not seek a preliminary injunction non-determinative). Moreover, Digital has repeatedly requested a shortened schedule and early trial date for the patent issues, all of which have been opposed by TASER. Given that the parties are direct competitors in a small and sticky market, and given the fact that TASER has much more control over that market at this time, the risk of undue prejudice to Digital in continuing to stay the litigation weighs strongly against granting a stay.

### III. CONCLUSION

For the reasons stated above and in Digital's Brief, Digital respectfully requests that the Court lift the temporary stay of litigation and set an expedited scheduling conference to permit the parties and the Court to set reasonable deadlines for a *Markman* hearing and further pre-trial deadlines.

DATE: October 12, 2017

Respectfully submitted,
ERISE IP, P.A.

/s/ *Adam P. Seitz*_____
Adam P. Seitz, KS Bar #21059
Eric A. Buresh, KS Bar #19895
Jason R. Mudd, KS Bar #25749
Erise IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, Kansas 66211
Telephone: (913) 777-5600
adam.seitz@eriseip.com
eric.buresh@eriseip.com
jason.mudd@eriseip.com

Paul R. Hart, admitted *Pro Hac Vice*
CO Bar No 45697
Erise IP, P.A.
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Telephone: (913) 777-5600
paul.hart@eriseip.com

*Counsel for Plaintiff Digital Ally, Inc.*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all attorneys of record linked to this case.

　　　　　　　　　　　　　　　　　　*/s/ Adam P. Seitz*
　　　　　　　　　　　　　　　　　　Adam P. Seitz