UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cv-2032-CM-TJJ |
| ) | |
| TASER INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court for a determination regarding whether to continue the stay previously granted in this case now that the Patent Trial and Appeal Board ("PTAB") has issued its initial decisions on Defendant's four petitions for *inter partes* review ("IPR") of the two patents in suit (the '292 and '452 patents). For the reasons discussed below, the Court denies Defendant's request to continue the stay of this case with respect to the '452 patent.[1]

### I.   RELEVANT BACKGROUND FACTS

On March 20, 2017, the Court granted in part Defendant's Motion to Stay Litigation Pending *Inter Partes* Review of the Asserted Patents.[2] The Court temporarily stayed the case and all deadlines set forth in the September 16, 2016 Second Patent Scheduling Order "until the PTAB issues its initial decision(s) whether to institute an *inter partes* review of the '292 and '452

---

[1] The Court's rulings herein apply only to the patent-related claims and counterclaims. Plaintiff's antitrust and unfair competition claims (Counts III-VIII) were dismissed January 12, 2017 (ECF No. 105), and Plaintiff is currently appealing the dismissal of those claims to the Tenth Circuit Court of Appeals. *See* Apr. 14, 2017 Order certifying dismissal of antitrust and unfair competition claims as final under Fed. R. Civ. P. 54(d). ECF No. 118.

[2] *See* Mem. & Order (ECF No. 115). *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-cv-2032-CM-TJJ, 2017 WL 1048351 (D. Kan. Mar. 20, 2017).

patents."³ In addition, the Court ordered the parties to file a joint report advising the Court of the PTAB's decisions on Defendant's IPR petitions, as well as the parties' respective positions regarding further proceedings in this case, within fourteen days of the PTAB's initial decision on each of Defendant's pending IPR petitions.

On August 31, 2017, Plaintiff filed a motion which, among other things, requested leave to amend its complaint to dismiss its '292 patent allegations with prejudice and to dismiss Defendant's '292 patent counterclaim for lack of jurisdiction (ECF No. 132). Defendant does not object to dismissal of Plaintiff's '292 patent infringement count, but does oppose dismissal of its inequitable conduct counterclaim related to the '292 patent.

Also on August 31, 2017, the parties filed their Joint Report Regarding the Asserted Patents' IPR Status and the Parties' Respective Positions Regarding Stay (ECF No. 134). The report advised that the PTAB instituted review of a number of claims as to the '292 patent petition (IPR2017-00375), but declined to institute *inter partes* review of the second '292 patent petition (IPR2017-00376) and both '452 patent IPR petitions (IPR2017-00515 & IPR2017-00775). The report also indicated that the parties disagree regarding whether the litigation should remain stayed, as Defendant contends, or should resume for the '452 patent, as Plaintiff contends.

After a telephone conference with the parties on September 20, 2017, the Court entered an order setting a briefing schedule on the stay issue (ECF No. 138). The matter is now fully briefed⁴ and the Court is prepared to rule.

---

³ *Digital Ally*, 2017 WL 1048351, at *4. Defendant's motion to stay was premised on two petitions for IPR of the '292 patent it filed on December 1, 2016, and two petitions for IPR of the '452 patent, which it filed respectively on December 20, 2016 and January 25, 2017.

⁴ *See* the parties' opening briefs filed on Oct. 2, 2017 (ECF Nos. 141 & 142), and responses filed Oct. 12, 2017 (ECF Nos. 144 & 145).

## II. FACTORS THE COURT WILL CONSIDER IN DETERMINING WHETHER TO CONTINUE THE STAY OF THE '452 PATENT LITIGATION DURING THE *INTER PARTES* REVIEW OF THE '292 PATENT

Courts consider the following three factors significant in deciding whether to stay judicial proceedings pending either a ruling on a petition for *inter partes* review or the review itself: (1) whether discovery is complete and whether a trial date has been set; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party.[5] The Court considered these three factors when it granted the stay currently in effect in this case, and the parties are in agreement that these same factors should be applied in determining whether the stay should continue in light of the PTAB's recent rulings. Based on these factors, courts determine whether the benefits of a stay outweigh the inherent costs of postponing resolution of the litigation.[6] Courts in the District of Kansas have previously recognized a "liberal policy in favor of granting motions to stay proceedings pending the outcome of [PTAB's] reexamination or reissuance proceedings."[7] However, the party requesting the stay bears the burden of showing that a stay is appropriate, and such showing must be based on more than the mere fact that an IPR petition was filed.[8]

---

[5] *Norred v. Medtronic, Inc.*, No. 13-cv-2061-EFM/TJJ, 2014 WL 554685, at *1 (D. Kan. Feb. 12, 2014). *See also Cellular Commc'ns Equip., LLC v. Samsung Elecs. Co.*, No. 6:14-CV-759, 2015 WL 11143485, at *2 (E.D. Tex. Dec. 16, 2015); *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 592 (2014).

[6] *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015).

[7] *Norred*, 2014 WL 554685, at *1 (granting stay pending *inter partes* review); *Scriptpro LLC v. Wal-Mart Stores, Inc.*, No. 05-2244-CM, 2006 WL 2294859, at *1 (D. Kan. Aug. 8, 2006) (granting stay pending reexamination of patent in suit); *Braintree Labs., Inc. v. Nephro-Tech, Inc.*, No. 96-cv-2459-JWL, 1997 WL 94237, at *9 (D. Kan. Feb. 26, 1997) (granting motion to stay proceedings for reexamination of the plaintiff's patent).

[8] *CANVS Corp.*, 118 Fed. Cl. at 591–92.

### A. Stage of the Litigation

The first factor the Court considers in determining whether to stay the case is the stage of the proceedings, including whether discovery is complete and whether a trial date has been set. One consideration relevant to this factor is whether the parties have fully briefed the issue of claim construction, attended a *Markman* hearing, and received a claim construction order.[9] The expenditure of judicial resources can also be an important consideration in evaluating the stage of the proceedings.[10]

As the Court noted in its earlier order staying the case, the parties had been vigorously litigating this case prior to the stay, conducting significant discovery, exchanging infringement and invalidity contentions, and filing claim construction statements. The parties had also fully briefed the issues for claim construction in anticipation of a claim construction hearing. The Court's March 20, 2017 order stayed all case deadlines, including the March 28, 2017 *Markman* claim construction hearing. At the time of the stay, the remaining case deadlines, including the fact discovery deadline, had not expired as they were calculated from the Court's claim construction ruling.[11] The Pretrial Conference, a deadline for submission of the Pretrial Order, and the trial date for the patent claims were deferred to be set after the Court's claim construction

---

[9] *Norred*, 2014 WL 554685, at *1 (citing *Interwoven. Inc. v. Vertical Comput. Sys., Inc.*, No. C 10-04645 RS, 2012 WL 761692, at *4 (N.D. Cal. Mar. 8, 2012)).

[10] *Id.* (citing *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (C.D. Cal. 2013)). *See also Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-CV-04160-NKL, 2014 WL 2511308, at *2 (W.D. Mo. June 4, 2014) ("Although the decision to grant a stay remains firmly in the district court's discretion, the interests of judicial economy and deference to the PTO's expertise have given rise to 'a liberal policy in favor of granting stays.'").

[11] *See* Second Patent Scheduling Order (ECF No. 73) (deadline for close of fact discovery set 60 days after Court's claim construction ruling).

ruling.[12] The Court previously found this factor favored temporarily staying the case until the PTAB made its initial decisions on Defendant's petitions for *inter partes* review of the two patents-in-suit.

This case has not progressed since the Court granted the stay in March 2017 and thus remains at the same stage of litigation (pre-claim construction hearing). That the PTAB has since declined to institute *inter partes* review of the '452 patent and Plaintiff has moved to dismiss its allegations and infringement count related to the '292 patent (Count I) does not dictate a different outcome relative to this factor. The claim construction hearing will need to be reset, the deadline for fact discovery still has not expired, and neither a Pretrial Conference, nor a trial date has yet been set. Accordingly, the Court finds this factor remains in favor of staying the case, but is outweighed by the second and third factors discussed below.

### B. Simplification or Elimination of the Issues

The second factor the Court considers is whether a stay of the '452 patent litigation during the '292 IPR proceedings will result in the simplification or elimination of any matters that will be at issue in the '452 patent litigation. The "issue simplification" factor does not require a complete invalidation of all asserted claims by the IPR proceedings; simplification can occur even where "some or all of the claims are found not invalid."[13] Issue simplification can also occur where the number of asserted claims and patents are reduced due to invalidation or the estoppel effect of the IPR proceedings.[14] "A stay is favored where the outcome of the IPR

---

[12] *See* Minute Entry and Order, ECF No. 104.

[13] *Eagle View Techs., Inc. v. Xactware Sols., Inc.*, No. 15-7025 (RBK/JS), 2016 WL 7165695, at *6 (D.N.J. Dec. 7, 2016).

[14] *Id.*; *see also* 35 U.S.C. § 315(e)(2) (barring the petitioner in an IPR proceeding that results in a final decision by the PTAB from asserting in a civil action invalidity arguments that the petitioner raised or reasonably could have raised during the IPR proceedings).

"would be likely to assist the court in determining patent validity and, if the claims were canceled ... would eliminate the need to try the infringement issue."[15]  However, the more the scope of the litigation exceeds the scope of the IPR proceedings, the less likely the IPR proceedings and requested stay will simplify the issues.[16]

Defendant contends this factor favors continuing the stay because the PTAB's decision and findings in the '292 IPR, Plaintiff's statements made during the IPR, and the full intrinsic record in the '292 IPR will streamline the litigation on the closely related '452 patent.  Defendant points out that the '292 patent is a continuation of the '452 patent.  They are part of the same patent family, claim the same invention, share the same patent specification, and have much of the same prosecution history.  The Patent Office found the '292 and '452 patents were "patentably indistinct" and required Plaintiff to file a terminal disclaimer. Finally, Defendant asserts that several key claim terms are common to both patents, including "recording device," "recording device manager," and "metadata." These common claim terms are at issue in the '292 IPR.  Defendant points out that the PTAB is proceeding through the IPR process expeditiously and the '292 review will test the validity of nearly every asserted claim of the '292 patent. Plaintiff has filed a motion to cancel and substitute the '292 claims to add a limitation from the '452 patent. Defendant also states it has sought rehearing of the PTAB's denial of one of its IPR petitions for the '452 patent. Finally, Defendant states the prior art at issue in the '292 patent is the same prior art forming the basis for Defendant's inequitable conduct counterclaims against both the '292 and '452 patents.

---

[15] *Irwin Indus. Tool Co. v. Milwaukee Elec. Tool Corp.*, No. 3:15-CV-30005-MGM, 2016 WL 1735330, at *3 (D. Mass. Apr. 28, 2016) (quoting *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 357 (D. Mass. 2015)).

[16] *Eagle View*, 2016 WL 7165695, at *6.

Conversely, Plaintiff contends the '292 IPR proceedings will not simplify the litigation on the '452 patent. It argues that regardless of the outcome of the claim amendment process and the meaning of any new claim language that may be added to the '292 patent claims, the '292 IPR proceedings are entirely irrelevant to claim construction in the '452 litigation, where only the original claim language is at issue. Claim construction, discovery, and expert reports therefore must still be accomplished regardless of the outcome of the '292 IPR. Plaintiff maintains those tasks can move forward wholly without impact from the '292 IPR. To the extent the PTAB's decision and findings from the '292 IPR have any relevance to Defendant's counterclaim on the '292 patent, Plaintiff suggests that it will only be on one minor issue (i.e., materiality) and this can be easily accommodated with an expert report supplementation. Plaintiff also characterizes Defendant as going to great lengths to demonstrate overlap between the '292 and '452 patents in order to justify its argument that this favors a stay because any statements made by Plaintiff in the '292 IPR will influence this litigation. Plaintiff disputes this, arguing that the record is now effectively closed with respect to Plaintiff in the '292 IPR and no new evidence or argument relevant to claim construction can be entered in the IPR process. Thus, according to Plaintiff, the claim construction process on the '452 patent can proceed in this litigation with no need to re-address any claim construction issues and no duplication of efforts after the '292 IPR concludes.

      The factual scenario in which the stay issue arises in this case is unique. Since the Court's prior order granting a stay, the PTAB declined to institute an IPR for either of Defendant's petitions for the '452 patent claims. The PTAB has instituted a review of only one of Defendant's IPR petitions on the '292 patent claims, but Plaintiff has moved to dismiss with

prejudice its '292 patent infringement count and Defendant does not oppose the dismissal.[17] Thus, it appears Plaintiff's '292 patent infringement count will likely be dismissed, thereby leaving no asserted patent at issue in this case under review before the PTAB.

Plaintiff cites cases in support of its argument that courts routinely deny requests to stay litigation where less than all asserted claims in a case are under review by the Patent Office because such proceedings cannot possibly resolve the issue before the court.[18] Plaintiff argues the rationale for a stay is even less compelling here than in the cases it cites because, after the dismissal of the '292 patent, the PTAB will not be reviewing a single *asserted* patent claim in this case. On the other hand, Defendant cites cases in support of its argument that courts routinely maintain litigation stays, even where less than all asserted patents are subject to review.[19] But, none of these cases cited by Defendant involves the factual scenario in which a

---

[17] Def.'s Resp. to Pl.'s Mot. to Dismiss '292 Patent at 5, ECF No. 139. Defendant does, however, oppose dismissal of its equitable conduct counterclaim related to the '292 patent.

[18] *See Saint Lawrence Commc'ns LLC v. ZTE Corp.*, No. 2:15-CV-349-JRG, 2017 WL 3396399, at *2 (E.D. Tex. Jan. 17, 2017) (stay unlikely to simplify issues where PTAB instituted IPR on only one of five asserted patents and scope of the IPR on the asserted patent was very narrow and targeted); *Eagle View*, 2016 WL 7165695, at *7 ("issue simplification" factor weighed against a stay where only four asserted claims and four of seven asserted patents were under IPR proceedings); *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345, 349–50 (D. Del. 2016) ("simplification of issues" factor disfavored stay where the IPR proceeding would only address 13 of the 43 patent claims at issue and the IPR was limited to a single legal issue).

[19] *See Trading Techs. Int'l, Inc. v. BCG Partners, Inc.,* 186 F. Supp. 3d 870, 875 (N.D. Ill. 2016) (simplification factor favored a stay where one patent from each of the asserted patent families was under review); *Vivint, Inc. v. Alarm.com Inc.*, No. 2:15-CV-392 CW, 2016 WL 4750176, at *3 (D. Utah Sept. 12, 2016) (stay would simplify issues where IPR proceedings pending for five of six patents asserted in the litigation); *Evolutionary Intelligence, LLC v. Sprint Nextel Corp.*, No. C-13-03587, 2014 WL 4802426, at *4 (N.D. Cal. Sept. 26, 2014) (simplification factor strongly favored maintaining stay where PTAB had denied IPR petitions for all but 13 claims of one of two patents-in-suit*); SMT Sols., Inc. v. ExpoEvent Supply LLC*, No. 11-6225 ES CLW, 2012 WL 3526830, at *4 (D.N.J. Aug. 15, 2012) (simplification factor weighed in favor of stay where only two of the four patents-in-suit were under reexamination).

stay was granted when *no* asserted patent was under PTAB review. The Court finds that the authority cited by Defendant does not support continuation of the stay of this case during the '292 IPR proceedings because no *asserted* patent claim in this case will be under PTAB review after dismissal of Plaintiff's '292 patent infringement count from this case.

Defendant attempts to overcome this lack of authority by emphasizing the significant overlap between the '292 and '452 patents, arguing that the '292 IPR will "influence" this litigation. But Defendant does not argue that the PTAB's decision in the '292 IPR proceedings will eliminate or reduce the number of asserted '452 claims or will otherwise assist the Court in determining the validity of the '452 patent. Defendant has not persuaded the Court that a stay of this litigation with respect to the '452 patent pending the conclusion of the '292 IPR proceedings would result in the simplification or elimination of '452 patent issues. The scope of the '292 IPR, while seeking to render several of the '292 patent claims as invalid, appears relatively narrow and limited to the invalidity of those claims on the basis of obviousness in view of a certain prior art or combination of prior art (e.g., the 2005 Pierce published patent application and Raytheon 20/20-W white paper).[20] Defendant has not demonstrated to the Court's satisfaction how any decision or ultimate findings by the PTAB on the claims and prior art before the PTAB in the '292 IPR would streamline the litigation of Plaintiff's '452 patent.

Defendant does argue that there are three claim terms common to both patents ("recording device," "recording device manager," and "metadata") at issue in the '292 IPR. In its decision instituting an IPR of the '292 patent, the PTAB made preliminary determinations with respect to the claim terms "recording device," and "recording device manager," but left claim

---

[20] Decision, Institution of *Inter Partes* Review of '292 patent (IPR2017-00375) at 29, ECF No. 139-2.

interpretation an open issue.[21] Therefore, as Defendant argues, Plaintiff could make statements in the '292 IPR that will impact claim construction of these terms. Plaintiff, however, argues the record is now effectively closed with respect to it in the '292 IPR and no new evidence or argument relevant to claim construction can be entered in the IPR process. Defendant disputes this, indicating that regardless of the PTAB's decision on Plaintiff's motion to cancel and substitute claims, the parties will be submitting additional arguments on both the proposed new claims and the original claims (including the overlapping claim terms). In any event, the PTAB instituted its IPR of the '292 patent on June 6, 2017, more than five months ago, so almost half the statutory time for the PTAB to complete its review has passed. Thus, the opportunities for Plaintiff to make additional statements in the IPR that would be relevant to the '452 patent are few. The Court finds Defendant's stay arguments based upon Plaintiff's opportunities to make additional position statements in the '292 IPR that might impact the '452 patent are simply too speculative to justify further staying this litigation with respect to the '452 patent.

Defendant has not convinced the Court of the likelihood of simplification or elimination of any relevant issues with respect to the '452 patent by continuing the stay until the PTAB concludes the '292 IPR. In any event, any potential simplification or elimination of '452 patent-related issues resulting from the PTAB's ultimate findings and decision in the '292 IPR should occur promptly as the review process is statutorily limited in time.[22] This factor weighs against a continuation of the stay of this litigation with respect to the '452 patent.

---

[21] Id. at 9–14.

[22] *See* 35 U.S.C. § 316(a)(11) (requiring issuance of the final determination in an IPR "not later than 1 year after the date on which the Director notices the institution of a review," unless good cause is shown for an extension, not to exceed 6 months).

### C. Prejudice or Clear Tactical Disadvantage

The third factor is whether the non-moving party would suffer undue prejudice or a clear tactical disadvantage if the stay is continued. This inquiry is further broken into four sub-factors: (1) the timing of the request for reexamination; (2) the timing of the request for stay; (3) the status of reexamination proceedings; and (4) the relationship of the parties.[23]

The Court previously addressed the timing sub-factors, finding Defendant had provided a reasonable explanation for the timing of the filing of its four IPR petitions—which were filed nearly a year after this case was initiated—and its initial motion to stay the case. In the present briefing, the parties focus their respective arguments on the relationship of the parties. The Court will therefore focus its analysis on this sub-factor.

"Courts are generally reluctant to stay proceedings where the parties are direct competitors."[24] Courts recognize that "[w]hen the parties are direct competitors, there is a reasonable chance that delay in adjudicating the alleged infringement will have outsized consequences to the party asserting infringement has occurred, including the potential for loss of market share and an erosion of goodwill."[25]

---

[23] *SenoRx, Inc. v. Hologic, Inc.*, No. 12-173-LPS, 2013 WL 144255, at *6 (D. Del. Jan. 11, 2013).

[24] *Milwaukee Elec. Tool Corp. v. Hilti, Inc.*, 138 F. Supp. 3d 1032, 1040 (E.D. Wis. 2015) (quoting *ImageVision.Net, Inc. v. Internet Payment Exch.*, No. 12-cv-054, 2013 WL 663535, at *6 (D. Del. Feb. 25, 2013)). *See also Hunter Douglas, Inc. v. Nien Made Enter. Co.*, No. 13-CV-01412-MSK-MJW, 2014 WL 8807333, at *2 (D. Colo. Jan. 14, 2014) (finding the plaintiff would be unduly prejudiced because the direct competitor defendants could continue selling the alleged infringing products); *Davol, Inc. v. Atrium Med. Corp.*, No. 12-958-GMS, 2013 WL 3013343, at *3 (D. Del. June 17, 2013) ("An important factor in determining if a stay will prejudice the plaintiff is whether the parties are direct competitors."); *Boston Sci. Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783, 789 (D. Del. 2011) (recognizing the "particular importance" of the fact that the parties were "direct competitors").

[25] *SenoRx*, 2013 WL 144255, at *7. *See also Eagle View*, 2016 WL 7165695, at *5 ("Courts are generally reluctant to grant a stay in a matter where the parties are direct competitors on the rationale that a stay would likely cause the non-movant to lose substantial profits and goodwill on the market.").

In its previous stay order, the Court found Plaintiff and Defendant were competitors in a relatively small market and therefore closely examined any prejudice to Plaintiff from a stay. The Court concluded Plaintiff would not be unduly prejudiced by a *temporary* stay until the PTAB made its initial decisions on Defendant's IPR petitions. The PTAB has now made its initial decisions, granting only one of Defendant's IPR petitions for the '292 patent claims and denying the other three IPR petitions, including both petitions for IPR of the '452 patent claims. The Court now considers the prejudice to Plaintiff if the Court continues to stay this case with respect to the '452 patent during the '292 IPR proceedings.

Plaintiff argues that a continued stay of the patent-infringement litigation with respect to its '452 patent while the PTAB conducts its review of the '292 patent claims will cause it severe damage and prejudice. According to Plaintiff, the parties are direct competitors in the small body-camera market and directly compete for the same business, routinely submitting bids for the same long-term contracts with law enforcement agencies. Plaintiff argues that damages from the infringement will be long lasting because the body-camera market is "sticky." Customers are unlikely to change brands once an initial purchase has been made because body cameras are typically tethered to proprietary evidence management systems with long-term contracts that lock customers into a single supplier for many years. Plaintiff provides the recent example of the October 2017 annual conference and expo for vendors of law enforcement equipment where both Plaintiff and Defendant participated by demonstrating their respective body cameras in nearly side-by-side booths at the expo.  Plaintiff also identifies several other relatively recent instances of Defendant being awarded body-camera contracts over a competing bid by Plaintiff.

Defendant argues that continuing the stay will not result in undue prejudice to Plaintiff. Defendant claims any delay will be limited because the IPR process is statutorily limited in time

and is required to take place within twelve months. It also argues that Plaintiff's superficial protestations of an intense rivalry are not supported, as the body-camera market for law enforcement is saturated with dozens of providers. At most, the parties have occasionally submitted proposals to the same law enforcement agencies, along with many other competitors.

The parties' briefing reinforces the Court's earlier finding that the parties are in fact direct competitors in the law enforcement body-camera market. Plaintiff has shown, and Defendant does not refute, that the parties have submitted and continue to submit competing bids to the same law enforcement agencies for body-camera contracts. Defendant's own examples show that Plaintiff and Defendant bid on the same body-worn camera contracts recently awarded in Austin, Eugene, Seattle, and the State of Nevada, and only a relatively small total number of other companies submitted bids for those contracts.

Defendant also argues that Plaintiff's decision opting not to file a motion for preliminary injunction undercuts its claim of undue prejudice.  However, the Court finds the fact that Plaintiff did not seek a preliminary injunction is not determinative of whether it will likely suffer undue prejudice if the '452 patent litigation continues to be stayed during the '292 IPR.[26] There may be a variety of reasons why a plaintiff does not move for a preliminary injunction.[27] Given the facts of this case, including the discussion above regarding the direct competition between Plaintiff and Defendant in the sticky body-camera market, the Court finds a likelihood of undue prejudice not withstanding Plaintiff's decision to forego filing a motion for preliminary injunction at the commencement of this litigation.

---

[26] *See Eagle View*, 2016 WL 7165695, at *5 (finding the fact plaintiffs did not seek a preliminary injunction was not determinative of whether they would suffer undue prejudice from a stay).

[27] *Id.* (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1319 (Fed. Cir. 2014)).

Plaintiff and Defendant are direct competitors in the relatively small and sticky market for body-worn cameras. Continuing the stay of this action with respect to the '452 patent, which is not under review by the PTAB, may harm and prejudice Plaintiff by giving Defendant more time to sell the alleged infringing body cameras while diminishing Plaintiff's ability to establish long-term relationships with those potential customers. The Court therefore finds that this factor weighs heavily against continuing the stay of this litigation with respect to the '452 patent.

In conclusion, the Court finds that the second and third factors set out herein weigh heavily against continuing the stay of the '452 patent litigation in this case pending the '292 IPR. These factors outweigh the first factor, which weighs in favor of continuing the stay.

**IT IS THEREFORE ORDERED THAT** the Court denies Defendant's request to continue the stay of this case with respect to the '452 patent.

**IT IS FURTHER ORDERED THAT** a scheduling/status conference is set for **December 19, 2017 at 10:30 AM** and will be held by telephone conference. Participating counsel must dial 888-363-4749 and enter access code 4901386 to join the teleconference. By **December 14, 2017**, the parties shall submit their proposals regarding how the '452 patent litigation should proceed, with suggested deadlines, to *ksd_james_chambers@ksd.uscourts.gov*.

IT IS SO ORDERED.

Date this 17th day of November, 2017, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge