UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-2032-CM-TJJ |
| | ) |
| TASER INTERNATIONAL, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant TASER International, Inc.'s Motion for Leave to Amend Invalidity Contentions (ECF No. 152). Defendant requests leave to amend its invalidity contentions to add a single prior art reference that it recently discovered and which it claims is highly material. Defendant submits that it has shown good cause for the requested amendment by diligently searching for prior art since the inception of this case. Plaintiff Digital Ally, Inc. opposes the motion, arguing that Defendant was not diligent in searching for the prior art which is the basis for its amendment, and therefore has not shown good cause to amend its invalidity contentions at this stage of the case, after claim construction issues have been fully briefed and shortly prior to the claim construction hearing. The Court finds Defendant has shown good cause under D. Kan. Pat. Rule 3.5(b) to amend its invalidity contentions. Defendant's motion is granted.

### I.   BACKGROUND

Plaintiff filed this patent infringement case on January 14, 2016, alleging that body-worn camera products sold by Defendant infringe Plaintiff's patent, U.S. Patent Nos. 8,781,292 ("the '292 patent"). Plaintiff later amended its complaint on February 2, 2016 and March 18, 2016, to add another claim for patent infringement with respect to U.S. Patent Nos. 9,253,452 ("the '452

patent") and claims alleging Defendant violated federal and state antitrust and unfair competition laws.[1]

On May 9, 2016, the Court entered the Initial Patent Scheduling Order (ECF No. 40), which set May through August 2016 deadlines for the parties to serve infringement and invalidity contentions, claim terms requiring construction, preliminary claim construction, and their joint claim construction statement.

Plaintiff served its infringement contentions on May 17, 2016.[2] Defendant served its invalidity contentions on July 5, 2016. Defendant's invalidity contentions identified 24 prior art publications, including patents, international patent applications, white papers, and product documents. It also provided over 800 pages of exemplary claim charting. The parties filed their Joint Claim Construction and Prehearing Statement on August 30, 2016.[3]

A Second Patent Scheduling Order (ECF No. 73) was entered on September 16, 2016, moving the claim construction briefing deadlines to October and November 2016, and continuing the claim construction hearing. The claim construction proposals were fully briefed, including the filing of Defendant's Sur-reply Brief on Claim Construction (ECF No. 97), as of November 23, 2016. The deadline for completion of fact discovery was set 60 days after the Court's claim construction ruling.

---

[1] First Am. Compl., ECF No. 9; Second Am. Compl., ECF No. 19. Plaintiff's antitrust and state law claims were dismissed by the Court on January 12, 2017, ECF No. 105.

[2] Certificate of Service, ECF No. 47.

[3] ECF No. 65.

In December 2016 and January 2017, Defendant filed two petitions for *inter partes* review ("IPR") of the '292 patent,[4] and two petitions for IPR of the '452 patent.[5] Defendant also filed a motion to stay this case pending decisions by the Patent Trial and Appeal Board of the U.S. Patent Office ("PTAB") on the IPR petitions. On March 20, 2017, the Court stayed the case until the PTAB issued its initial decisions whether to institute an *inter partes* review of the '292 and '452 patents.[6]

On August 31, 2017, Plaintiff filed a motion to dismiss its '292 patent infringement claims and the parties filed a joint report advising on the status of the pending IPR petitions. The parties advised that on June 6, 2017, the PTAB instituted review of several claims as to the '292 patent petition, but declined to institute an IPR of the second '292 patent IPR petition and both '452 patent IPR petitions.[7] The report also indicated that the parties disagreed regarding whether the case should remain stayed or should resume for the '452 patent. The parties filed their briefing on the stay issue on October 2 and October 12, 2017.

On November 17, 2017, the Court denied Defendant's request to continue the stay with respect to the '452 patent.[8] On November 21, 2017, Defendant advised the Court it had provided a recently discovery prior art reference and corresponding claim charts to Plaintiff and, based

---

[4] IPR2017-00375 and IPR2017-00376.

[5] IPR2017-00515 and IPR2017-00775.

[6] ECF No. 115. *Digital Ally, Inc. v. Taser Int'l, Inc.*, No. 16-CV-2032-CM-TJJ, 2017 WL 1048351 (D. Kan. Mar. 20, 2017).

[7] The PTAB declined to institute *inter partes* review of the second '292 patent petition (IPR2017-00376) on June 6, 2017, the '452 patent IPR petitions on July 6, 2017 (IPR2017-00515), and on August 3, 2017 (IPR2017-00775).

[8] ECF No. 147.

upon this prior art, it intended to request leave to serve amended invalidity contentions. The Court thereafter held a telephone scheduling/status conference on December 19, 2017. The Court advised counsel that it intends to utilize the recently adopted District of Kansas Patent Rules, where applicable, going forward in this case.[9] The Court also stated that Defendant had met the D. Kan. Pat. Rule 3.5(c) conferring and telephone conference prerequisites for its proposed motion to amend its invalidity contentions and set a December 22, 2017 deadline for Defendant to file its motion.

## II.   APPLICABLE LOCAL PATENT RULE

District of Kansas Patent Local Rule 3.5 governs the amendment of infringement and invalidity contentions.  Subsection (a) allows one amendment of invalidity contentions as a matter of right if amended infringement contentions have been served or the amending party has a good faith belief that amendment is required by the court's claim construction order.[10] "In all other situations, amendment of the . . . Invalidity Contentions may be made only by order of the court upon a timely showing of good cause."[11] Defendant is requesting leave to amend under subsection (b), where it must show good cause for the requested amendment of its invalidity contentions.

---

[9] *See* Third Patent Scheduling Order § 5(a), ECF No. 150. The parties previously agreed in their Rule 26(f) planning report that certain patent rules adopted by the Northern District of California would apply in this case. The District of Kansas Patent Local Rules went into effect on August 14, 2017. D. Kan. Pat. Rule 1.4.

[10] *See* D. Kan. Pat. Rule 3.5(a)(2)(A)-(B) ("A party opposing a claim of patent infringement may serve Amended Invalidity Contentions (limited to the information required by D. Kan. Pat. Rule 3.3) not later than 56 days after filing by the court of its claim construction order if: (A) a party claiming patent infringement has served Amended Infringement Contentions pursuant to D. Kan. Pat. Rule 3.5(a)(1), or (B) the party opposing a claim of patent infringement believes in good faith that amendment is required by the court's claim construction order.").

[11] D. Kan. Pat. Rule 3.5(b).

D. Kan. Pat. Rule 3.5(b) provides the following non-exhaustive examples of circumstances that typically will, absent undue prejudice to the non-moving party, support a finding of good cause:

(1)  Recent discovery of material, prior art despite earlier diligent search; or

(2)  Recent discovery of nonpublic information about the Accused Instrumentality that was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

Subsection (c) of D. Kan. Pat. Rule 3.5 requires two prerequisites before the court will entertain any motion seeking leave to amend invalidity contentions. First, counsel for the moving party must confer or make reasonable efforts to confer. Second, the moving party must arrange for and hold a telephone conference with the court before filing the motion. As the Court indicated at the December 19, 2017 status conference, Defendant has met both D. Kan. Pat. Rule 3.5(c) prerequisites for its motion.

## III. WHETHER DEFENDANT HAS SHOWN GOOD CAUSE TO AMEND ITS INVALIDITY CONTENTIONS

Defendant submits that it has shown good cause to amend its invalidity contentions with respect to the '452 patent to add a prior art reference to World Intellectual Property Organization ("WIPO") International Publication WO/2014/000161 A1 titled "Apparatus and Method for Cooperative Electronic Data Collection" (the "Xu reference"), which it discovered on September 20, 2017. Defendant argues that the Xu reference is highly relevant prior art because it invalidates the remaining claims of the '452 patent, whether considered by itself or in combination with other references. Defendant contends it has shown diligence in its efforts to search for prior art and in seeking leave to amend, and Plaintiff will suffer no prejudice by the proposed amendment.

As an initial matter, the Court considers what law governs the validity and interpretation of its local patent rules, including the specific rule governing the amendment of infringement or invalidity contentions. As announced by the Federal Circuit, in *O2 Micro International Ltd. v. Monolithic Power Systems, Inc.*,[12] issues concerning the validity and interpretation of local patent rules that are likely to directly affect the substantive patent law theories that may be presented at trial are "intimately involved in the substance of enforcement of the patent right" and must be governed by the law of the Federal circuit.[13] In the *O2 Micro* case, the Federal Circuit found that the Northern District of California's local patent rules regarding amendment of infringement contentions were unique to patent cases and had a close relationship to enforcement of substantive patent law, and therefore reviewed their validity and interpretation under Federal Circuit law.[14] The Court will therefore apply Federal Circuit law in determining whether Defendant has shown good cause under D. Kan. Pat. Rule 3.5(b) to amend its invalidity contentions in this case. In the absence of any controlling Federal Circuit law, the Court finds caselaw from the Northern District of California instructive based upon the similarity of its local patent rule governing amendment of contentions[15] to the rule recently adopted by the District of Kansas.

District of Kansas Patent Rule 3.5(b)(1) provides the example of a party's "recent discovery of material, prior art despite its earlier diligent search" as a circumstance that will typically support a finding of good cause, absent undue prejudice to the non-moving party.

---

[12] 467 F.3d 1355 (Fed. Cir. 2006).

[13] *Id.* at 1364.

[14] *Id.* at 1364–65.

[15] *See* N.D. Cal. Pat. Rule 3-6.

Under Federal Circuit law, "good cause" for allowing amendments to infringement or invalidity contentions requires a showing of diligence by the party seeking to amend its contentions.[16] If the moving party is able to show diligence, the court may then consider the prejudice to the non-moving party.[17] In considering good cause, courts also examine other factors including "the relevance of the newly discovered prior art, the difficulty in obtaining such prior art, and whether the motion appears to be motivated by gamesmanship."[18]

### A. Diligence in Discovering the Basis for the Amendment (Prior Art)

Diligence is the critical issue in the good cause determination.[19] The burden is on the party seeking to amend its contentions to establish diligence rather than on the opposing party to show a lack of diligence.[20] "[T]he diligence required for a showing of good cause has two subparts: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered."[21]

---

[16] *O2 Micro*, 467 F.3d at 1366.

[17] *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 491745, at *3 (N.D. Cal. Feb. 5, 2014).

[18] *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 2855260, at *3 (N.D. Cal. May 13, 2016); *Acco Brands, Inc. v. PC Guardian Anti–Theft Prods., Inc.*, No. C 04–03526 SI, 2008 WL 2168379, at *1 (N.D. Cal. May 22, 2008).

[19] *Sunpower Corp. Sys. v. Sunlink Corp.*, No. C08-02807 SBA (EMC), 2009 WL 1657987, at *1 (N.D. Cal. June 12, 2009).

[20] *O2 Micro*, 467 F.3d at 1366.

[21] *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. 11-cv-02226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013).

Defendant contends it was diligent in searching for the prior art serving as the basis for its request to amend its invalidity contentions. It attaches the Declaration of its counsel, John Garretson, who describes Defendant's efforts to search for prior art:

> Beginning in January 2016, [Defendant] hired five professional search firms and consultants to search for prior art to the '292 and '452 patents-in-suit. Those firms spent more than 210 hours searching for and analyzing prior art, totaling eight separate searches. These searches included U.S., Europe, World Intellectual Property Organization (WIPO), China, Japan, Korea, Germany, Canada, Australia, France and UK patent/application databases. This searching also included non-patent literature searches of databases covering technical papers, trade journals, white papers, presentations and other publicly-available materials. During this time, [Defendant's] counsel further independently searched for and analyzed prior art, including enlisting the assistance of a technical expert.
>
> [Defendant] continued in these efforts until it served its Invalidity Contentions for the '292 and '452 patents on July 5, 2016. [Defendant's] Invalidity Contentions identified 24 prior art publications, including patents, international patent applications, white papers, and product documentation. [Defendant] also provided 839 pages of exemplary claim charting.
>
> After [Defendant] served its Invalidity Contentions, [Defendant's] counsel continued to perform additional prior art searches while continuing to analyze the many items collected to identify appropriate references to challenge the 30+ claims then purportedly asserted by [Plaintiff]. In particular, [Defendant's] Seattle IPR counsel worked diligently with the technical expert to continue to analyze and research the prior art, and to prepare four IPR petitions addressing both the '292 and '452 patents in December 2016 and January 2017. These petitions and their supporting expert declarations totaled more than 715 pages of analysis and discussion. Shortly after [Defendant] filed these materials, the Court stayed this litigation.
>
> During 2017, [Defendant's] counsel continued to investigate the prior art. After an IPR proceeding was instituted on the '292 patent, and after [Defendant's] '452 patent-related IPR petitions were initially denied institution on July 6 and August 3, 2017, [Defendant's] counsel conducted further prior art searches in light of the [PTAB's] institution decisions.[22]

---

[22] Garretson Decl. ¶¶ 4–7, ECF No. 153-1.

Defendant discovered the Xu reference on September 20, 2017, as a result of prior art searches it conducted after the PTAB issued decisions on the IPR petitions.[23]  On October 31, 2017, Defendant's counsel emailed Plaintiff's counsel the Xu reference and Defendant's proposed supplemental invalidity contentions with respect to the '452 patent, including 44 pages of element-by-element charts.[24]

Plaintiff argues that Defendant was not diligent in discovering the Xu reference and has provided no explanation why it did not discover or could not have discovered the Xu reference during its prior art searches leading up to service of its invalidity contentions. Plaintiff points out that the Xu reference was publicly available in the searchable WIPO database two years before Plaintiff filed this lawsuit in January 2016, and two and a half years before Defendant served its invalidity contentions on July 5, 2016.  Plaintiff also argues that Defendant's suggestion that the failure to locate the Xu reference earlier was due to its international patent classification number, which has a different subclass than the '452 patent, undercuts its argument that the Xu reference is material prior art.

Based upon Defendant's reported search efforts for prior art, as described in the Garretson Declaration, the Court finds Plaintiff has shown diligence in searching for prior art, including the Xu reference, which it did not find until September 20, 2017.  Defendant's search efforts include the hiring of five professional search firms and consultants to conduct eight different searches in many different patent/application databases and non-patent literature databases covering technical papers, trade journals, white papers, presentations, and other publicly available materials. Defendant's prior art search efforts started before Plaintiff filed this

---

[23] Garretson Decl. ¶ 7.

[24] Garretson Decl. ¶ 9.

lawsuit and continued until it filed the four IPR petitions in December 2016 and January 2017. After the PTAB's decisions on the IPR petitions in July and August 2017, decisions which changed the focus of this litigation from the '292 patent to the '452 patent, Defendant conducted further searches for prior art and discovered the Xu reference.

The Court is not persuaded by Plaintiff's argument that if Defendant had conducted a diligent search, it would necessarily have uncovered this publicly available patent. Although a diligent search should reveal well-known prior art references,[25] there is nothing suggesting that the Xu reference is well-known or otherwise should have been easily found by Defendant.[26] Defendant points out that even Plaintiff failed to find the Xu reference in its own prior art searches during prosecution of the '452 patent, where it searched for and submitted over 300 U.S. patents, foreign patent documents, and non-patent literature to the Patent Office.

Plaintiff argues that Defendant provides no explanation why it failed to discover or could not have discovered the Xu prior art in its earlier searches, which by its own admission included the WIPO database, the database containing the Xu reference. Defendant has not provided an explanation, but offers that its failure to find the Xu reference in earlier searches may be due to the Xu reference's international patent classification number, which is a slightly different subclass than on the face of the '452 patent. Patent cases have noted that although hindsight is often "20/20," identifying and evaluating prior art can be difficult, and new information learned

---

[25] *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, No. 12-CV-03844-JST, 2014 WL 6879428, at *3 (N.D. Cal. Dec. 5, 2014).

[26] *Compare Symantec Corp. v. Acronis Corp.*, No. 11-5310 EMC (JSC), 2013 WL 5368053, at *4 (N.D. Cal. Sept. 25, 2013) (release date for prior art at issue was posted on defendant's own website and could be found in several documents produced by defendant during discovery).

in discovery can lead a party to understandably reevaluate evidence found earlier.[27] The mere possibility that a defendant might have discovered the prior art references earlier does not defeat its diligence.[28] "The good cause requirement does not require perfect diligence.[29] The fact Defendant admittedly failed to find the Xu reference in its earlier prior art searches does not, by itself, demonstrate a lack of diligence.

Plaintiff also argues that Defendant should not be allowed to amend its invalidity contentions to add a prior art reference after taking a "wait and see" approach on the success of its IPR petitions and not conducting any prior art searches for seven months in 2017 while the IPR petitions were pending. Defendant counters that to the extent Plaintiff is arguing it should have continued to do extensive prior art searching while the case was stayed, the case law does not support Plaintiff's position, citing two cases, *THX, Ltd. v. Apple, Inc.*, and *Richtek Technology Corp. v. uPI Semiconductor Corp*.[30] In the *THX* case, the court found that the defendant's actions in waiting almost two years before seeking more information about products that might constitute prior art during the IPR of the patents-in-suit, and while the case was stayed, did not evidence a lack of diligence in discovering the prior art which served as the basis for amendment of tis invalidity contentions.[31] In *Richtek*, the court likewise found the

---

[27] *Tech. Props. Ltd. LLC v. Canon Inc.*, No. 14-3643 CW (DMR), 2016 WL 1570163, at *2 (N.D. Cal. Apr. 19, 2016); *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-CV-03587-WHO, 2014 WL 491745, at *4 (N.D. Cal. Feb. 5, 2014).

[28] *Karl Storz*, 2016 WL 2855260, at *5.

[29] *Fujifilm Corp.*, 2014 WL 491745, at *4.

[30] *THX, Ltd. v. Apple, Inc.*, 13-CV-00161-HSG, 2016 WL 1718137, at * 2 (N.D. Cal. Apr. 29, 2016); *Richtek Tech. Corp. v. uPI Semiconductor Corp.*, C09-05659 WHA, 2016 WL 3136896, at *2 (N.D. Cal. June 6, 2016).

[31] *THX*, 2016 WL 1718137, at *2.

defendant's failure to conduct prior art searches while the case was stayed during the International Trade Commission investigation should not be held against the defendant for purposes of determining whether it acted diligently in seeking to amend its invalidity contentions.[32]

Plaintiff does not cite, and the Court has not located any case, where the court found a party seeking to amend its contentions was not diligent because it failed to continue searching for prior art while the case was stayed. The two cases cited by Defendant suggest the opposite, that a failure to search for prior art while a case is stayed should not be considered evidence of a lack of diligence. As noted by the *Richtek* court, the purpose of a stay is "to avoid expenses that might ultimately prove moot."[33] The Garretson Declaration shows Defendant conducted a diligent search for prior art. Defendant's failure to continue searching for prior art while the case was stayed during the pendency of the IPR petitions does not establish a lack of diligence in discovering the Xu prior art reference that should prohibit or preclude Defendant from amending its invalidity contentions under the facts of this case. Notably, this patent case was filed in January 2016, stayed from March to November 2017, and the discovery deadline has not yet expired and will not expire until 60 days after the Court's claim construction ruling. And, as discussed subsequently, Plaintiff does not make any compelling argument that it will be prejudiced by allowing Defendant to serve amended invalidity contentions.

---

[32] *Richtek*, 2016 WL 3136896, at *2.

[33] *Id.*

### B.  Diligence in Seeking Leave to Amend Invalidity Contentions

Defendant must also show it was diligent in seeking leave to amend its invalidity contentions. Defendant claims it discovered the Xu reference on September 20, 2017 and its counsel sent an email to Plaintiff's counsel on October 31, 2017, attaching the Xu reference and Defendant's proposed supplemental invalidity contentions with respect to the '452 patent, which included 44 pages of element-by-element charts. Counsel for Defendant then inquired whether Plaintiff would consent to the supplementation request. Upon learning that Plaintiff opposed the request, counsel for Defendant had a meet-and-confer call with Plaintiff's counsel on November 21, 2017. That same day, Defendant advised the Court of its intent to request leave to serve amended invalidity contentions and requested a telephone conference.

Defendant notified Plaintiff of its discovery of the Xu reference and its proposed supplemental invalidity contentions approximately 40 days after it found the Xu reference. It then acted promptly in bringing the matter to the Court's attention and requesting a conference. Defendant has acted diligently in moving for leave to amend its invalidity contentions.

Plaintiff argues that Defendant's request to amend is motivated by gamesmanship, as shown by Defendant acknowledging that the only reason it now seeks to inject newly discovered prior art into the case is because its timely-disclosed prior art was rejected in the IPR proceedings. Plaintiff argues that Defendant should not be given a second chance to redo their invalidity contentions after waiting to see if it prevailed on its IPR petitions.

The Court does not find Defendant's request to amend its invalidity contentions for a single prior art reference to be motivated by gamesmanship. The local rule specifically contemplates the circumstances under which Defendant seeks to amend its contentions (the recent discovery of material prior art). Defendant has shown it was diligent in searching for the

prior art that is the basis for its amendment. That Defendant resumed searching for prior art after the PTAB issued its decisions on the IPR petitions does not persuade the Court that Defendant's motion is motivated by gamesmanship.

### C.     Prejudice to Plaintiff if Amendment Granted

Having found Defendant was diligent in searching for the prior art and in seeking leave to amend its invalidity contentions, the Court considers whether Defendant's proposed amendment will unduly prejudice Plaintiff.[34]  Local patent rules are designed to encourage parties to "provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery," and thus the rules seek to "balance the right to develop new information in discovery with the need for certainty as to the legal theories."[35] Prejudice has been found where allowing the amendment of infringement or invalidity contentions will disrupt the case schedule or other court orders.[36]

 Defendant argues that Plaintiff will suffer no prejudice by its proposed amendments because Plaintiff still has ample time to conduct discovery regarding the prior art reference added in its amended invalidity contentions.  Defendant states that it provided notice of the Xu reference to Plaintiff on October 31, 2017, and fact discovery will not close for at least another

---

[34] *See* D. Kan. Pat. Rule 3.5(b) (example of recent discovery of material, prior art despite diligent search will support a finding of good cause "absent undue prejudice to the non-moving party").

[35] *O2 Micro*, 467 F.3d at 1365–66.

[36] *Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 7386136, at *3 (N.D. Cal. Dec. 21, 2016).

five months. Defendant acknowledges that the parties have already filed claim construction briefing, but asserts that the Xu reference will not raise any new claim construction issues.

Plaintiff relies heavily on its argument that Defendant was not diligent in discovering the Xu reference and therefore does not allocate much of its allowed eight pages[37] to explaining how it will be prejudiced by Defendant's proposed amendment of its invalidity contentions to add a single prior art reference.  Plaintiff merely argues that Defendant's attempt to inject new prior art into the case years after inception, after a stay of litigation resulted in the narrowing of Defendant's invalidity case, after claim construction issues have been fully briefed, and shortly before the claim construction hearing is "highly prejudicial."

The Court is not convinced that Plaintiff will be unduly prejudiced by Defendant's amendment of its invalidity contentions to add one prior art reference. Defendant previously identified 24 prior art publications in its initial invalidity contentions, which included patents, international patent applications, white papers, and product documents.  It also provided over 800 pages of exemplary claim charting.[38] The addition of one additional prior art reference at this pre-claim construction stage of the case should not cause undue prejudice to Plaintiff.[39] During

---

[37] The motion and response were limited to eight pages. *See* Third Patent Scheduling Order at § 5(b), ECF No. 150.

[38] *See Karl Storz*, 2016 WL 2855260, at *4 (defendant's initial invalidity contentions including over 500 prior art references, 31 claim charts, and 400 pages of analysis, belied a finding that its search was not diligent).

[39] *See Zest IP Holdings, LLC v. Implant Direct Mfg, LLC*, No. 10CV0541-GPC-WVG, 2013 WL 5674834, at *11 (S.D. Cal. Oct. 16, 2013), order clarified sub nom. *Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, No. 10CV541-GPC(WVG), 2014 WL 11878454 (S.D. Cal. July 30, 2014) (plaintiff was not unduly prejudiced by the addition of one prior art reference after discovery deadline closed but before experts were deposed and pretrial and trial dates set).

the December 19, 2017 status conference in relation to the proposed amendment, both parties indicated that they saw no need to supplement the claim construction briefing before the claim construction hearing. Plaintiff makes no argument in its response that Defendant's proposed amendment to add one new prior art reference will impact the upcoming claim construction hearing.

Allowing Defendant to amend its invalidity contentions at this pre-claim construction stage of the case should not disrupt the case schedule. Fact discovery is not set to close until 60 days after the Court's claim construction ruling. Plaintiff therefore has time to conduct any discovery regarding this prior art and before any expert reports or dispositive motions are due. The pretrial conference and trial has not yet been set.  No substantive motions will be impacted or rendered moot by allowing Defendant's amended invalidity contentions. Although significant time has passed since Defendant served its invalidity contentions on July 5, 2016, the case was stayed during most of 2017 (from March 20, 2017 until November 17, 2017) while Defendant's IPR petitions were pending.  The Court thus finds Plaintiff will not be unduly prejudiced by Defendant's proposed amendment of its invalidity contentions.

**IT IS THEREFORE ORDERED THAT** Defendant TASER International, Inc.'s Motion for Leave to Amend Invalidity Contentions (ECF No. 152) is GRANTED.

IT IS SO ORDERED.

Dated March 2, 2018 at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge