**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

DIGITAL ALLY, INC., a Nevada corporation,  )
  )
          Plaintiff,  )
  )
v.  )     Case No.  2:16-cv-02032-CM
  )
TASER INTERNATIONAL, INC., a Delaware  )     JURY TRIAL DEMANDED
corporation.  )
  )
          Defendant.  )
  )

## MEMORANDUM IN SUPPORT OF DIGITAL ALLY'S MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

I.    **Introduction** ..................................................................................................... 1

II.   **Statement of Facts** ......................................................................................... 5
    A.   **ICOP 20/20-W Invalidity Theory** ........................................................... 5
    B.   **Inequitable Conduct – Materiality** ......................................................... 7
    C.   **Inequitable Conduct – Specific Intent to Deceive** ................................ 9

III.   **Legal Background** ......................................................................................... 9
    A.   **Summary Judgment** .................................................................................. 9
    B.   **System-Based Invalidity** ........................................................................ 10
    C.   **Inequitable Conduct** ............................................................................... 12

IV.   **Argument** ....................................................................................................... 13
    A.   **There is no genuine material dispute that TASER's ICOP 20/20-W invalidity theory depends on critical details unrelated to the 20/20-W system.** .............................................. 13
       1.   TASER's ICOP invalidity theory is based on the ICOP 20/20-W system only—no other ICOP-related systems have been preserved or advanced. .......................................................... 14
       2.   TASER's expert relies on a single document for its purported disclosure of the ICOP 20/20-W system's wireless communication. ........................................................................................... 15
       3.   No evidence links the TriSquare document to the ICOP 20/20-W system .......................... 17
       4.   Because TASER's ICOP invalidity theory relies critically on details unrelated to the ICOP 20/20-W system, there is no evidence on which a finding of invalidity could be based. ................. 19
    B.   **There is no genuine dispute of material fact that TASER cannot prove the ICOP 20/20-W system would have been but-for material to the patentability of the '452 Patent.** ......................... 20
       1.   TASER relies entirely on Dr. Schonfeld's invalidity opinion to prove the materiality prong of its inequitable conduct theory. .......................................................................................................... 21
       2.   On this record, TASER cannot prove but-for materiality. ....................................................... 22
    C.   **No Reasonable Fact-finder Could Conclude that there is Clear and Convincing Evidence of Specific Intent to Deceive the Patent Office.** ...................................................................... 26
       1.   There is no direct evidence of intent to deceive. ....................................................................... 27
       2.   Interpreting indirect evidence in a light most favorable to TASER, no reasonable fact finder could conclude that specific intent to deceive is the "single most reasonable inference." ............... 28

V.   **Conclusion** .................................................................................................... 29

# TABLE OF AUTHORITIES

## Cases

*Abbott Laboratories v. Syntron Bioresearch Inc.*, No. 98–CV–2359 H(POR), 2001 WL 34082555 (S.D. Cal. Aug. 24, 2001) ............................................................................................... 24

*Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582 (Fed. Cir. 2004) ................. 22

*Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348 (Fed. Cir. 2005) .. 12

*Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253 (10th Cir. 2006) ................................ 10

*Cancer Research Technology Ltd. v. Barr Labs., Inc.*, 625 F.3d 724 (Fed. Cir. 2010) ........... 12,13

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................ 10

*FatPipe Networks India Limited v. XRoads Networks Inc.*, No. 2:09–cv–186–DN, 2015 WL 12778762 (D. Utah Sep. 22, 2015) .............................................................................................. 25

*Garrison v. Gambro, Inc.*, 428 F.3d 933 (10th Cir. 2005) ........................................................... 10

*Giuliano v. SanDisk Corp.*, 224 F.Supp.3d 851 (N.D. Cal. 2016) ............................................... 25

*Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826-PSG, 2015 WL 4197554, (N.D. Cal. July 10, 2015) ............................................................................................................................... 11

*Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215 (10th Cir. 2006) ................................ 10

*HR Technology, Inc. v. Imura Intern., U.S.A., Inc.*, 858 F.Supp.2d 1230 (D. Kan. 2012) ........... 10

*Intercontinental Great Brands LLC v. Kellogg North America Company*, 869 F.3d 1336 (Fed. Cir. 2017) .............................................................................................................................................. 29

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867 (Fed. Cir. 1988) ................... 29

*MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372 (Fed. Cir. 2007) ...................................... 12

*Navico Inc. v. Garmin Int'l, Inc.*, No. 216CV00190JRGRSP, 2017 WL 3750252 (E.D. Tex. July 28, 2017) ................................................................................................................................ 11, 19

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285 (Fed. Cir. 2012) ......... 13

*RCA Corp. v. Data Gen. Corp.*, 887 F.2d 1056 (Fed. Cir. 1989) ................................................ 11

*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) .............................................. 11

*Schumer v. Lab. Computer Sys., Inc.*, 308 F.3d 1304  (Fed. Cir. 2002) ...................................... 22

*Sprint Communications Company L.P. v. Comcast Cable Communications* LLC, Nos. 11-2684-JWL, 11-2686-JWL, 2016 WL 7052055 (D. Kan. Dec. 5, 2016) .............................................. 10

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357 (Fed. Cir. 2008) ............. 13, 29

*Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc.*, 339 F. Supp.3d 803 (N.D. Ill. 2018) .............................................................................................................................................. 28

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011). 12, 13, 20, 26, 29

*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848 (10th Cir. 2003) ............................................. 10

*Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989 (Fed. Cir. 2000) ................ 12

*Zenith Electronics Corp. v. PDI Comm'n Systems, Inc.*, 522 F.3d 1348 (Fed. Cir. 2008)..... 11, 19

**Statutes**

35 U.S.C. § 102(a)(1)...................................................................................................... 6, 10

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................ 10

I.      **INTRODUCTION**

In-car recording systems for law enforcement predate the asserted patent in this case, U.S. Patent No. 9,253,452 ("the '452 Patent"), by many years. These systems were large, involved complex wiring, and typically were permanently mounted to the vehicle or installed in the dashboard of the police car. Plaintiff Digital Ally's own product portfolio included many iterations of such in-car systems, marketed as the Digital Video Mirror ("DVM") line, that included multiple hard-wired camera inputs, officer-mounted walkie-talkie-style microphones that stream audio back to the vehicle, as well as the ability to activate a recording in response to triggers such as turning on the light bar. Systems with these same features were prevalent in the industry, often distinguished by their specific form factors and installation locations rather than the functionalities they offered a police precinct.

One in-car recording system competitor that the Court has heard much about is ICOP Digital. TASER has pursued ICOP's 20/20-W System in attempts to both invalidate the Asserted Claims (and claims from the previously asserted '292 Patent) as well as to argue that the '452 Patent's prosecution at the Patent Office was flawed because the ICOP 20/20-W System was not considered. None of TASER's theories involving the ICOP 20/20-W System has merit. Like Digital's own in-car systems, the ICOP 20/20-W System is an in-car, centralized recording system in which all inputs—from cameras and walkie-talkie microphones—are stored and synchronized by a single centralized controller. This large and complex system was installed in the dashboard of the police vehicle and then hard-wired to various components in the vehicle.

The '452 Patent, in contrast, expands the technology well beyond a single centralized recording system, creating a wireless ecosystem in which independent officer body cams (each with its own control and storage) can communicate and coordinate with the in-car system. Most importantly, with the '452 Patent, the trigger-based activation functionalities for multiple,

independent body cameras was something never before seen in the industry. This patented

technology, called the VuLink technology by Digital Ally, was explained by Digital Ally CEO

and '452 Patent inventor, Stan Ross:

> Q. **What does VuLink add**?
> . . .
> A. [. . .] I mean, **the VuLink really allows the in-car system, the body cameras, to act as one**. And meaning that by the activation of let's say your light bars, it obviously activates the in-car systems. Right? So **the VuLink** also **receives a signal and says** hey, **make sure all of the body cameras are going as well so** that they are all understanding that **they are working together**. It is similar to, you can be outside your vehicle and activate your body camera and it will activate the in-car systems so that they are all one working as one.

**Ex. L**, *Ross. Tr. 9-12-2018* at 153:5-154:5 (emphasis added). Mr. Ross confirmed that he was the

first person to conceive of wirelessly activating body cams in response to light bar triggers:

> Q. Do you claim to have invented auto activation?
> . . .
> A. **The concept of having a device that would automatically activate say a body camera based upon just turning on light bars or numerous other triggers, was my concept**.
> Q. (By Mr. Garretson) And you claim **you were the first one to come up with that**?
> A. **To my knowledge I was**.

*Id*. at 34:14-35:2 (emphasis added). To date, no evidence of record disputes Mr. Ross's

understanding. Though the validity of the '452 Patent has been repeatedly challenged by TASER,

it has never been challenged with evidence that someone other than Mr. Ross invented wirelessly

activating law enforcement body cams in response to light bar triggers. TASER's own invalidity

theories confirm this—TASER was unable to find any prior body camera systems that pre-dated

the '452 Patent. Instead, TASER's invalidity challenges focus on in-car camera systems with

walkie-talkie microphones and centralized storage and control. These systems, of course, simply

don't "fit" with the multiple independent recording device activation of the '452 Patent.

At issue for purposes of Summary Judgment are two theories based on ICOP's in-car

recording system—the ICOP 20/20-W. The ICOP 20/20-W System did not include body cams or

any officer-worn recording devices. Rather, like Digital Ally's own DVM systems, the ICOP 20/20-W System was hard-wired into the vehicle and included camera inputs and walkie-talkie-style microphones that transmit captured audio back to the in-car system to be centrally stored and synchronized with the captured video. Critically, it did not include multiple independent recording devices as required by the '452 Patent. The differences between the wireless body camera activation of the '452 Patent and the centralized in-car ICOP 20/20-W system are stark and were readily apparent when the Patent Office looked at this exact issue.

TASER previously asked the experts at the Patent Office to take another look at the VuLink patents in light of ICOP. Namely, TASER filed three *Inter Partes* Review challenges, asking the Patent Office to find claims from the previously asserted '292 Patent (another VuLink patent that shares its disclosure with the '452 Patent) and the currently asserted '452 Patent invalid in view of patents and publications describing the ICOP 20/20-W System. Although the Patent Office instituted review of the '292 Patent, it ultimately concluded that the ICOP 20/20-W documents did not invalidate **any** claims of the '292 Patent. As for the two petitions challenging the '452 Patent at issue in this case, the Patent Office concluded TASER's reliance on a patent describing the ICOP 20/20-W system failed to meet the basic threshold showing and twice **declined to even institute** review of the '452 Patent. Rejecting TASER's ICOP arguments, the Patent Office repeatedly found that the documents describing the ICOP 20/20-W System lacked specific communications to the "recording devices" as required by the challenged claims. *See* **Ex. H**, *'292 Patent Final Written Decision* at 37 (concluding TASER "has not adequately established that the [ICOP 20/20-W prior art] discloses or suggests a second communication signal that instructs the alleged second recording devices . . . to begin recording"); **Ex. I**, *'452 Decision Denying Institution* at 20-21 (concluding TASER "does not demonstrate that [the ICOP 20/20-W prior art] . . . teaches or renders obvious 'a recording device manager' performing the step to 'broadcast . . . at least one

communication signal . . . to the first recording device and the second recording device" instructing those devices to begin recording).

Despite the Patent Office having rejecting all TASER's efforts to invalidate the VuLink patents with the ICOP 20/20-W System, TASER persists in this litigation, seeking to present this three-times rejected prior art to the jury. Moreover, enough though the Patent Office found the documents describing the ICOP 20/20-W System had a deficient description of the claimed communications, TASER never plugged this hole and does not today have any evidence of what communications were in fact used by the ICOP 20/20-W System. Instead, TASER's expert, Dr. Schonfeld, simply assumed certain functionality, citing a single document that was not published by or attributable to ICOP. When asked whether that document described functionality in the actual ICOP 20/20-W System, Dr. Schonfeld admitted that he did not know. This critical flaw forms the basis of Digital Ally's first challenge. Namely, TASER advances a theory that the ICOP-20/20-W System (combined with other prior art) renders the '452 Patent Asserted Claims obvious. But this theory relies critically on Dr. Schonfeld's assumption that this single document describes the actual ICOP 20/20-W System—an assumption Dr. Schonfeld unequivocally disowned in his deposition. Given this hole in the evidentiary record, Digital Ally respectfully requests the Court grant summary judgment of no invalidity based on ICOP.

Related but separate from its invalidity theories based on ICOP, TASER has advanced defenses and counterclaims of inequitable conduct. Akin to a finding of fraud on the Patent Office, the doctrine of inequitable conduct renders a patent unenforceable if a patent applicant (1) withholds prior art from the Patent Office that would prevent that applicant from obtaining a patent with (2) specific intent to deceive the Patent Office. The evidentiary standards to prove such fraud are extremely stringent, a result of the Federal Circuit having acknowledged that prevalence of such claims had become a plague to the District Courts and the patent system. Here, there is not a

shred of evidence resembling such fraud. Rather, TASER saw an opportunity to manufacture an emotionally-charged story based on the fact that ICOP was founded by Stan Ross's father. Namely, TASER seeks to argue that Mr. Ross and his colleagues did not invent anything, but instead copied their invention from his father's company and withheld this copying effort from the Patent Office as part of a scheme to fraudulently obtain the '452 Patent. But this story didn't bear out for TASER. For one, as noted above, even the Patent Office agrees the ICOP 20/20-W System does not teach the limitations of the '452 Patent claims. Nor is there any evidence on which a fact finder could conclude the ICOP 20/20-W System would have prevented the '452 Patent from issuing. Additionally, far from evidence of a specific intent to defraud the Patent Office necessary to survive summary judgment, the record instead demonstrates that Stan Ross and his colleagues had no reason to tell the Patent Office about the ICOP 20/20-W System, which was nothing more than an outdated version of Digital Ally's own in-car systems—systems that had been described in numerous documents provided the Patent Office. For these reasons as well as the additional reasons articulated herein, Digital Ally respectfully requests the Court grant summary judgment of no inequitable conduct.

## II. __STATEMENT OF FACTS__

### A. ICOP 20/20-W Invalidity Theory

1. In its Invalidity Contentions, TASER identified the "ICOP 20/20-W System (with the ICOP EXTREME Wireless Mic)" as a "system . . . known, used, offered for sale and/or sold in the United States prior to the claimed inventions of the Asserted Patents." **Ex. A**, *Preliminary Invalidity Contentions* at 2.

2. TASER also alleged that "ICOP 20/20-W was offered for sale, sold, and/or publicly used in the United States by Activision [sic] at least as early as July 3, 2008 [and] is prior art . .

. under at least AIA 35 U.S.C. § 102(a)(1)." **Ex. B**, *Exhibit C1 to Preliminary Invalidity Contentions* at 1.

3. TASER's expert, Dan Schonfeld, opines that the Asserted Claims are obvious over the ICOP 20/20-W system as modified pursuant to prior art publication Xu (WIPO Publication No. WO 2014/000161). **Ex. C**, *Schonfeld Invalidity Report* at 93, 105.

4. TASER's invalidity contentions (and supplements thereto) did not propose the ICOP 20/20-W System modified by Xu as advanced by Dr. Schonfeld. **Ex. D**, *Supplemental Invalidity Contentions* at 12 (identifying ICOP 20/20-W modified pursuant to Lee '166 (U.S. Patent Publication No. 2006/0274166) and/or Blanco '469 (U.S. Patent No. 8,446,469)); *id.* at 13 (identifying Xu modified pursuant to ICOP 20/20-W System, Pierce '404 (U.S. Patent Publication No. 2005/0083404), and/or Lee '166).[1]

5. Each Asserted Claim includes the requirement that a "recording device manager [is] operable to . . . ***broadcast*** . . . ***at least one communication signal*** including correlation data ***to the first recording device and the second recording device***." **Ex. G**, *'452 Patent* at 16:30-43 (emphasis added).

6. Dr. Schonfeld contends "ICOP 20/20-W broadcasts at least one communication signal to the first recording device and the second recording device." **Ex. C**, *Invalidity Report* at 111.

---

[1] In an obviousness combination, the reference being modified is a "primary" or "base" reference and the reference(s) used to modify the primary/base reference as "secondary" references. TASER preserved a theory that Xu (primary/base reference) modified by ICOP 20/20-W (secondary reference) would have rendered the Asserted Claims obvious. This theory is addressed by Dr. Schonfeld separately and is not being challenged at summary judgment. **Ex. C**, *Schonfeld Rep.* at 93-94. TASER, however, never preserved the obviousness combination challenged here—ICOP 20/20-W as the primary/base reference and Xu as the secondary reference.

7. Dr. Schonfeld details the specific signals purportedly used by the ICOP 20/20-W system to communicate with the devices he contends satisfy the first and second recording devices (ICOP Extreme microphones) in ¶ 276 of his report. *Id.*

8. Dr. Schonfeld relies on a single document in support of his description of the specific communications exchanged with the ICOP Extreme microphones in the ICOP 20/20-W system—a TriSquare Communications document (**Ex. E**, DA_TASER_034096-113) ("the TriSquare Document"). **Ex. C**, *Schonfeld Invalidity Report* at 111.

9. All obviousness opinions related to Dr. Schonfeld's ICOP 20/20-W obviousness opinion rely on his understanding of the specific communications described in the TriSquare Document. *Id.* at 110-115.

10. Neither TASER nor Dr. Schonfeld have provided any evidence or analysis linking the TriSquare Document to the ICOP 20/20-W system.

11. Dr. Schonfeld admitted that the TriSquare Document was not relied upon for the purpose of describing the deployed 20/20-W system. **Ex. F**, *Schonfeld Tr.* at 259:12-13.

12. Dr. Schonfeld admitted that his analysis included the deployed system as well as systems that were "designed," and that the documents that he relied on may not have related to an actual deployed system. *Id.* at 259:24-260:4, 260:16-22.

13. Dr. Schonfeld also admitted that he was unsure whether the TriSquare Document described the deployed 20/20-W system. *Id.* at 261:1-2.

**B.    Inequitable Conduct – Materiality**

14. TASER pled affirmative defenses and counterclaims of unenforceability of the '292 and '452 Patents based on alleged inequitable conduct for a failure to disclose the ICOP 20/20-W System during prosecution and reexamination of the '292 Patent and prosecution of the '452 Patent. Dkt. 58 at ¶¶ 65-92.

15. In its Preliminary Infringement Contentions, TASER preserved the theory that '292 Patent claims were anticipated by the ICOP 20/20-W System. **Ex. A**, *Preliminary Invalidity Contentions* at 3.

16. TASER has no theory in this litigation that the ICOP 20/20-W System anticipates any claim of the '452 Patent. *Id.*

17. The '292 Patent and TASER's counterclaim of inequitable conduct relating to the '292 Patent have been dismissed from this case. Dkt. 163.

18. TASER's technical expert, Dr. Schonfeld, opined that Asserted Claims from the '452 Patent are obvious over the combination of the ICOP 20/20-W System and Xu. **Ex. C**, *Schonfeld Invalidity Report* at 93, 105-120.

19. Dr. Schonfeld's report does not offer the opinion that any claim of the '452 Patent is anticipated by the ICOP 20/20-W System. *Id.*

20. The Patent Office did not consider Xu during the prosecution of the '452 Patent. **Ex. G**, '452 Patent at 1-5 (listing all references cited, but not including Xu).

21. Dr. Schonfeld contends prior art reference U.S. Pub. No. U.S 2005/0083404 to Pierce ('Pierce") is "a representative prior art reference of the ICOP 20/20-W system." **Ex. C**, *Schonfeld Invalidity Report* at 122.

22. The PTAB at the Patent Office concluded that certain '292 Patent claims were **<u>not</u>** obvious under Pierce or the combination of Pierce and another reference describing the ICOP 20/20-W system. **Ex. H**, *AXON Enterprises, Inc. v. Digital Ally, Inc.*, Case IPR2017-00375, Paper 51 at 17-19, 41-42 (P.T.A.B. June 1, 2018).

23. The PTAB at the Patent Office also held that TASER failed to show that there was a reasonable likelihood that Asserted Claims of the '452 Patent are obvious over a combination of Pierce and another reference, U.S. Patent No. 8,594,485 to Brundula. **Ex. I**,

*AXON Enterprises, Inc. v. Digital Ally, Inc.*, Case IPR2017-00515, Paper 10 at 9-24 (P.T.A.B. July 6, 2017).

### C.      Inequitable Conduct – Specific Intent to Deceive

24.   The individuals involved in the filing and prosecution of the '452 Patent having a duty to disclose information material to patentability were the inventors (Stan Ross, Matthew Andrews, and Troy Bowlin) and the prosecuting attorney(s). *See* 37 CFR 1.56.

25.   TASER never deposed or sought discovery from any prosecuting attorney of record regarding the '452 Patent prosecution.

26.   TASER deposed all three inventors, but did <u>not</u> specifically ask any inventor whether that inventor knew of, during the '452 Patent prosecution, the specific documents on which TASER relies for its obviousness opinion concerning the ICOP 20/20-W System.

27.   TASER also did <u>not</u> specifically ask why the inventors did not disclose the ICOP 20/20-W System to the Patent Office.

28.   Mr. Bowlin testified that he was aware of a company called ICOP Digital "by name only." **Ex. J**, *Bowlin Tr.* at 56:13-57:4; *see also id*. at 58:1-9.

29.   Mr. Andrews testified that he had heard of the company ICOP Digital, but that "that's about it." **Ex. K**, *Andrews Tr.* at 78:13-15.

30.   Mr. Ross testified that he believed that there wasn't any relevance to ICOP system and that he did not know enough about it during the relevant time frame due to his lack of interest based on its antiquated technology and design. **Ex. L**, *Ross Tr. 9/12/18 Tr.* at 93:6-95:14.

## III.   LEGAL BACKGROUND

### A.      Summary Judgment

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(a). In applying this standard, all reasonable inferences are viewed in a light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way" and "material" when "it is essential to the proper disposition of the claim." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). "Summary judgment is not a 'disfavored procedural shortcut;' rather, it is an important procedure 'designed to secure the just, speedy and inexpensive determination of every action.'" *HR Technology, Inc. v. Imura Intern., U.S.A., Inc.*, 858 F.Supp.2d 1230, 1236 (D. Kan. 2012) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)).

Where the moving party does not bear the burden of proof, it must "simply point out to the court a lack of evidence for the other party on an essential element of that party's claim." *Sprint Communications Company L.P. v. Comcast Cable Communications* LLC, Nos. 11-2684-JWL, 11-2686-JWL, 2016 WL 7052055, at *1 (D. Kan. Dec. 5, 2016) (citing *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003). To survive summary judgment, "the nonmovant may not simply rest upon the pleadings but must 'bring forward specific facts showing a genuine issue for trial'" from the evidence of record. *Id*. at *2 (quoting *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005)).

## B.     System-Based Invalidity

From prior cases, this Court may be familiar with more "traditional" invalidity arguments relating to disclosures contained within patents or printed publications. Here, however, TASER is advancing an invalidity theory relating to an actual, physical system—the ICOP 20/20-W. The provisions of AIA 35 U.S.C. § 102(a)(1) permit an accused infringer to rely on the features and

functionalities of systems that were in "public use" or "on sale" to prove invalidity.[2] Because system-based prior art may take many forms, pertinent features of such systems "may be established by any relevant evidence, such as memoranda, drawings, correspondence, and testimony of witnesses." *RCA Corp. v. Data Gen. Corp.,* 887 F.2d 1056, 1060 (Fed. Cir. 1989); *Good Tech. Corp. v. Mobileiron, Inc.,* No. 5:12-CV-05826-PSG, 2015 WL 4197554, at *5 (N.D. Cal. July 10, 2015) (prior art "systems that were previously used . . . can be established with multiple pieces of evidence.").

Although many types of evidence may be utilized to establish the operation of the system, each piece of supporting evidence must be strictly tied to a *specific* prior art system. Indeed, because only the actual operation and functionalities of a specific system could have been publicly sold or used, system-based invalidity theories are limited to the features and functionalities present in a single system. *See, e.g.*, *Zenith Electronics Corp. v. PDI Comm'n Systems, Inc.*, 522 F.3d 1348, 1357 (Fed. Cir. 2008) (affirming summary judgment of invalidity based on model-specific details where there was "no genuine issue of material fact with respect to whether the J20525 television and 205–E pillow speaker were publicly used together prior to the critical date."); *cf Navico Inc. v. Garmin Int'l, Inc.,* No. 216CV00190JRGRSP, 2017 WL 3750252, at *4 (E.D. Tex. July 28, 2017), *report and recommendation adopted*, No. 216CV00190JRGRSP, 2017 WL 3764213 (E.D. Tex. Aug. 29, 2017) (granting summary judgment of no invalidity where "the only

---

[2] Although not pertinent to the legal flaw in TASER's theory addressed by the instant motion, because the ICOP 20/20-W System was commercialized by a third party unrelated to the patentee (Digital Ally), TASER's invalidity theory is properly assessed only under the "public use" prong, not as a "sale." "The 'on sale' provision of 35 U.S.C. § 102(b) is directed at precluding an inventor from commercializing his invention for over a year before he files his application. Sales or offers made by others and disclosing the claimed invention implicate the 'public use' provision of 35 U.S.C. § 102(b)." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 866 (Fed. Cir. 2010) (citing *In re Caveney*, 761 F.2d 671, 675, n. 5 (Fed. Cir. 1985).

document *potentially* describing the 2002 [prior art] system is the 2007 Operator Manual," but concluding there "isn't enough of a connection to infer the 2007 Manual is applicable to the 2002 system.").

### C.   Inequitable Conduct

"Inequitable conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) (en banc). Directed to violations of the "duty of candor, good faith and honesty" applicants owe the Patent Office "in their prosecution of patent applications", inequitable conduct amounts to an act of fraud on the Patent Office. *Union Oil Co. of California v. Atlantic Richfield Co.*, 208 F.3d 989, 1001 (Fed. Cir. 2000); *MyMail, Ltd. v. America Online, Inc.*, 476 F.3d 1372, 1375–76 (Fed. Cir. 2007) ("Fraud in the procurement bears on the enforceability of the patent . . . .").

Relevant to TASER's allegations, a finding of inequitable conduct requires clear and convincing evidence that the applicants[3] (1) "failed to disclose material information" during the prosecution of the '452 Patent and (2) "did so with intent to deceive the PTO." *Cancer Research Technology Ltd. v. Barr Laboratories, Inc.*, 625 F.3d 724, 732 (Fed. Cir. 2010). In 2011, an *en banc* Federal Circuit, acknowledged "**the inequitable conduct doctrine has plagued** not only **the courts** but also the entire patent system," and set out to "**tighten[] the standards** for finding both intent and materiality in order **to redirect a doctrine that has been overused to the detriment of the public**." *Therasense*, 649 F.3d 1276, 1289-90 (emphasis added).

---

[3] The "applicants" who owe this duty include "the inventor, the prosecuting attorney or agent, and anyone associated with the inventor or the assignee who is substantively involved in the preparation or prosecution of the application." *Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1351 (Fed. Cir. 2005).

Under these tightened standards, the materiality required to establish inequitable conduct is "but-for materiality." Prior art withheld from the Patent Office satisfies this standard *only* "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291-92.

To prove deceptive intent, there must be "clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Therasense*, 649 F.3d at 1290. It is insufficient to show that an applicant "should have known" of the materiality of a reference. *Id.*; *see also Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1292 (Fed. Cir. 2012). ("Negligence [] even gross negligence, is not sufficient to establish deceptive intent."). And "[w]hile deceptive intent can be inferred from indirect and circumstantial evidence, that 'inference must not only be based on sufficient evidence and be reasonable in light of that evidence, but it must also be the ***single most reasonable inference*** able to be drawn from the evidence to meet the clear and convincing standard.'" *Cancer Research Technology*, 625 F.3d at 732 (emphasis added) (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365-66 (Fed. Cir. 2008)); *see also Therasense*, 649 F.3d at 1290 ("[T]he evidence must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances.") (emphasis in original) (internal quotations omitted).

## IV.    ARGUMENT

### A.    There is no genuine material dispute that TASER's ICOP 20/20-W invalidity theory depends on critical details unrelated to the 20/20-W system.

TASER and its expert, Dr. Schonfeld, advance an invalidity theory they contend is based on the ICOP 20/20-W system, which was allegedly subject to public sales and use prior to the Asserted Patent. But TASER and its expert have failed to locate any evidence describing the operation of the ICOP 20/20-W system with respect to a key detail required by every Asserted Claims—the specific communications used to instruct recording devices to begin recording.

Instead, Dr. Schonfeld's expert report cites a single document—the TriSquare Document—describing such communications. Dr. Schonfeld then ascribes the teachings of the TriSquare Document to the ICOP 20/20-W without any proof that those documents are, or should be, linked together. Critically, Dr. Schonfeld admitted under oath that he did not know whether this TriSquare Document actually describes the ICOP 20/20-W system. Instead, he conceded that his ICOP invalidity opinion considered details that had been deployed in the ICOP 20/20-W system as well as details unrelated to any deployed system.

Even accepting, for purposes of this motion, that the ICOP 20/20-W system is proper prior art subject to a public sale or use, there is no provision in the law that would permit TASER to pursue an invalidity theory based on the ICOP 20/20-W System that relies on a document that neither TASER nor its expert can link to the 20/20-W system. Because the key communication details in the TriSquare Document relied on by Dr. Schonfeld were admittedly not linked to the actual ICOP 20/20-W system, TASER may not pursue this theory as a matter of law.

1.  TASER's ICOP invalidity theory is based on the ICOP 20/20-W system only—no other ICOP-related systems have been preserved or advanced.

Through its expert, Dr. Schonfeld, TASER advances a theory that the ICOP 20/20-W prior art system renders obvious the Asserted Claims when combined with the Xu prior art patent publication.[4] **Ex. C**, *Schonfeld Invalidity Report* at 105-121 ("In my opinion, ICOP 20/20-W . . . in view of Xu renders claims 10, 14, 15, 16, and 20 obvious").

---

[4] Dr. Schonfeld opines, in the alternative, that the ICOP 20/20-W system renders the Asserted Claims obvious when combined with Digital Ally's DVM-750 system with VoiceVault technology. Magistrate James has ruled that TASER may not pursue invalidity theories based on the DVM system. Dkt. 277. TASER filed objections to this ruling, which are fully briefed and pending before this Court. Dkts. 282, 291. Digital Ally does not address TASER's DVM-based invalidity theories herein, but reserves its rights to challenge those theories if they are permitted in this case.

14

In its Invalidity Contentions, TASER specifically identified only a single specific system from ICOP as prior art on which it based its invalidity defenses:

> In addition to the patents and printed publications in Exhibit A, TASER identifies the following devices or systems that were known, used, offered for sale and/or sold in the United States prior to the claimed inventions of the Asserted Patents.[1]  These devices may be prior art under AIA 35 U.S.C. §§ 102 and/or 103.
>
> - ICOP 20/20-W System (with the ICOP EXTREME Wireless Mic)

**Ex. D**, *TASER's Supp. Invalidity Contentions* at 2. Further, TASER made clear that its invalidity theories were based on public use or sales of that *specific* ICOP 20/20-W system:

> **Exhibit C1 – Invalidity Chart for the ICOP 20/20-W with ICOP Extreme Wireless Mic System by ICOP Digital, Inc. ("ICOP 20/20-W") in view of U.S. Patent Publication No. 2006/0274166 titled "Sensor Activation of Wireless Microphone" to Matthew Lee, et al. ("Lee '166")**
>
> ICOP 20/20-W was offered for sale, sold, and/or publicly used in the United States by Activision at least as early as July 3, 2008. ICOP 20/20-W is prior art to U.S. Patent No. 9,253,452 ("the '452 Patent") under at least AIA 35 U.S.C. § 102(a)(1). U.S. Patent Publication No. 2006/0274166 to Matthew Lee, et al. ("Lee '166") was filed on Jan. 9, 2006 and published on Dec. 7, 2006. Lee '166 is prior art to U.S. Patent No. 9,253,452 ("the '452 Patent") under AIA 35 U.S.C. § 102(a)(1).

**Ex. B**, *TASER's Preliminary Invalidity Contentions, C1 Chart* at 1 (emphasis added). At no point in its preliminary invalidity contentions, its supplemental invalidity contentions, or Dr. Schonfeld's report on invalidity did TASER advance a theory of invalidity based on the public sale or use of any ICOP system other than the 20/20-W.

### 2. TASER's expert relies on a single document for its purported disclosure of the ICOP 20/20-W system's wireless communication.

Digital Ally has accused TASER of infringing Claims 10, 14, 15, 16, and 20 of the '452 patent ("the Asserted Claims") of which only Claim 10 is independent. Accordingly, all Asserted Claims include the limitations of Claim 10, including the requirement that a "recording device manager [is] operable to . . . ***broadcast*** . . . ***at least one communication signal*** including correlation data ***to the first recording device and the second recording device***", **Ex. G**, *'452 Patent* at 16:30-

43 (emphasis added). In other words, a specific type of communication—a broadcast signal—must be transmitted to two specific devices—the first and second recording devices.

In its Preliminary Invalidity Contentions, TASER acknowledged the ICOP 20/20-W System may not include a broadcast signal and proposed filing this gap with other prior art:

> **To the extent that ICOP 20/20-W is found not to expressly disclose "broadcast[ing]"** at least one communication signal, **this claim element was obvious in view of** the knowledge of one skilled in the art, **Lee '166, and/or Blanco '469**.

**Ex. B**, *Preliminary Invalidity Contentions, Exhibit C1* at 56 (emphasis added).

Addressing this limitation in his report, Dr. Schonfeld does not discuss or rely on Lee '166 or Blanco '469. Instead, Dr. Schonfeld assumes ICOP 20/20-W itself includes this functionality. Without citation, Dr. Schonfeld alleges that the "ICOP 20/20-W broadcasts at least one communication signal to the first recording device and the second recording device". **Ex. C**, *Schonfeld Invalidity Report* at ¶ 275. Elaborating in the next paragraph, Dr. Schonfeld states the following:

> To activate the ICOP Extreme mics, **the controller commands an in-car transceiver to broadcast a communication signal** that includes a RECORD command **to each of the two ICOP Extreme wireless mics**.[228] The RECORD command instructs the first ICOP Extreme wireless mic to begin capturing or generating said first set of record data and instructs the second ICOP Extreme wireless mic to begin capturing or generating said second set of record data.[229] The data from each microphone is then transmitted back to the base transceiver located in the law enforcement vehicle.[230]

*Id*. at ¶ 276 (emphasis added). As shown below, each citation in support of Dr. Schonfeld's description of this purported ICOP 20/20-W functionality is a single document:

[228] *See, e.g.*, DA_TASER_034106-107; DA_TASER_034104,
[229] *See, e.g.*, DA_TASER_034105-107.
[230] *See, e.g.*, DA_TASER_034105-106.

*Id*. This document, produced as DA_TASER_034096-113, is not an ICOP document at all. Instead, as is clear in the following footer that is included on every page, the document is a "confidential/proprietary" product specification from TriSquare Communications, not ICOP:

| Compiled By: | PStaley | Approved by: | | First Issued: | June 1, 2007 |
|---|---|---|---|---|---|
| Div. or Dept.: | | File Name: Specification Rev 3.doc | | Drawing No: | NA |
| Location: | Kansas City | TriSquare Communications Confidential/Proprietary | | Page: | 1 of 18 |

Critically, in both the body of Dr. Schonfeld's report (which contains his specific analyses) and Exhibit B to his report (which contains additional evidentiary citations), the TriSquare Document is the sole piece of evidence cited for the teaching of what communication signals are sent to wireless microphones. *See generally id*. at ¶¶ 159-161, 248-317, 324-329; **Ex. M**, *Ex. B to Schonfeld Invalidity Report* at pp. 34-40. In other words, Dr. Schonfeld and TASER rely *exclusively* on the TriSquare Document to establish what specific communications the ICOP 20/20-W system transmitted to the wireless microphones.

3.  No evidence links the TriSquare document to the ICOP 20/20-W system

Despite the exclusive reliance on the TriSquare Document, neither TASER nor Dr. Schonfeld have linked it to the ICOP 20/20-W system. Although produced in the fall of 2016, long before any ICOP-related depositions proceeded, TASER did not ask a single witness about the TriSquare Document. Nor did TASER take any steps to authenticate the document or tie its technical disclosures to any specific systems, let alone to the ICOP 20/20-W system on which TASER's invalidity case now depends. Put simply, TASER has no evidence and did nothing during the course of this case to prove that the TriSquare Document actually describes the operation of the ICOP 20/20-W system.

17

Dr. Schonfeld similarly failed to link the TriSquare Document to the ICOP 20/20-W system. In fact, Dr. Schonfeld expressly disclaimed that TriSquare Document describes functionality in the deployed ICOP 20/20-W system:

> 8    Q.  How do you know this document describes the
> 9    operation of the wireless microphones deployed as part
> 10   of the ICOP 20/20-W system, on which you rely in your
> 11   invalidity opinion?
> 12       A.  I do not rely on this document for the
> 13   purpose of the deployed system.

**Ex. F**, *Schonfeld Tr.* at 259:8-13(emphasis added).

Despite the facts (1) that TASER preserved an ICOP invalidity theory based exclusively on the ICOP 20/20-W system and (2) that Dr. Schonfeld's report purports to describe functionality in the ICOP 20/20-W system, Dr. Schonfeld admitted that his invalidity theory did in fact consider functionalities that were not included in this specific system:

> Q.  Is your invalidity position -- or invalidity opinion based on ICOP based on the deployed ICOP 20/20-W system?
> A.  It's based on the deployed ICOP system as well as based on the collection of documents and references provided that describe the system.
> Q.  A single system?
> A.  That describes a system.
> Q.  Do you know whether ICOP released multiple systems?
> A.  So when -- let me -- let me clarify. The -- the described system, not necessarily the one that was deployed.  So I'm looking at both, at the deployed system as well as the systems that were designed.  Whether or not it made it into the final system that was deployed, I view it as being separate. And my analysis applies to both.
>            . . .

> Q.  So you didn't consider whether the documents you've relied on describe a specific ICOP system —
>            MS. DOUVILLE:  Objection to form.
> Q.  (By Mr. Hart)  -- is that correct?
> A.  The -- the documents that I relied on that describe the actual deployed system relate to a -- a -- to a particular system, the sys- -- corresponding to the system that I looked at, but there were other documents that were design documents that may or may not have related to that particular system.
> Q.  And do you know whether this particular exhibit that I've marked as 356 describes the operation of any particular ICOP system?
> A.  I don't know with certainty that it describes the actual deployed system.

18

*Id.* at 259:14-261:2 (emphasis added). Based on his deposition testimony, it is clear that Dr. Schonfeld did not limit his invalidity analyses to the specific ICOP 20/20-W system and did not connect the TriSquare Document to the ICOP 20/20-W system.

> 4. <u>Because TASER's ICOP invalidity theory relies critically on details unrelated to the ICOP 20/20-W system, there is no evidence on which a finding of invalidity could be based.</u>

Because only the actual operation and functionalities of a specific system could have been publicly sold or used, system-based invalidity theories are limited to the features and functionalities present in a single system. *See, e.g.*, *Zenith*, 522 F.3d at 1357 (affirming summary judgment of invalidity based on model-specific details where there was "no genuine issue of material fact with respect to whether the J20525 television and 205–E pillow speaker were publicly used together prior to the critical date."); *cf Navico,* 2017 WL 3750252, at *4 (granting summary judgment of no invalidity where "the only document *potentially* describing the 2002 [prior art] system is the 2007 Operator Manual," but concluding there "isn't enough of a connection to infer the 2007 Manual is applicable to the 2002 system."). Having failed to connect the TriSquare document to the ICOP 20/20-W (or to proffer alternative evidence of the 20/20-W system communication details), TASER's exclusive reliance on its teachings for a key limitation in the Asserted Claims precludes a finding of invalidity.

In *Navico*, the accused infringer "alleged prior sale and prior use relate[d] to the purported 2002 sale of [a prior art] MS 1000 System" relying on an operating manual as well as a purchase order, both listing the name of the product. *Navico,* 2017 WL 3750252, at *1. The accused infringer argued that, because the operating manual bore the same product model name as the purchase order, a reasonable jury could conclude that the details reflected in the operating manual were present in the 2002 sale. *Id*. at *4. Rejecting this argument and granting summary judgment of no invalidity, the court concluded there was insufficient evidence to conclude the product listed on

the purchase order, despite having the same name, did in fact embody all of the necessary claim limitations. *Id.* at *4-*5 ("Here, the only document *potentially* describing the 2002 system is the 2007 Operator Manual, but the only connection between the two is use of "MS 1000" designation. The court finds that isn't enough of a connection to infer the 2007 Manual is applicable to the 2002 system.").

In stark contrast to *Navico*, neither TASER nor Dr. Schonfeld has made any effort to connect the TriSquare Document to the ICOP 20/20-W System. To be sure, Dr. Schonfeld disingenuously attributed the TriSquare Document teachings to the ICOP 20/20-W system in his report. But, when questioned about any known link between the document and system, admitted that he was aware of no evidence suggesting the TriSquare Document described functionality in the ICOP 20/20-W system. As the sole document relied upon to teach a fundamental limitation in the Asserted Claims, TASER and Dr. Schonfeld's failure to tie the TriSquare Document to the ICOP 20/20-W system is fatal to their invalidity theory.

Accordingly, the Court should grant summary judgment of no invalidity based on the ICOP 20/20-W system.

B.       **There is no genuine dispute of material fact that TASER cannot prove the ICOP 20/20-W system would have been but-for material to the patentability of the '452 Patent.**

Prior art withheld from the Patent Office satisfies the but-for materiality standard required to find inequitable conduct *only* "if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense,* 649 F.3d at 1291-92. TASER cannot prove that but-for the non-disclosure of the ICOP 20/20-W System to the Patent Office, the Asserted Claims would not have been allowed.

    1.    <u>TASER relies entirely on Dr. Schonfeld's invalidity opinion to prove the materiality prong of its inequitable conduct theory.</u>

TASER filed an amended Answer on July 20, 2016, adding inequitable conduct affirmative defenses and counterclaims directed to both then-asserted patents. Dkt. 58 at 25-48. The factual basis for its inequitable conduct theories is that the applicants, including Digital Ally CEO and named inventor, Stan Ross, knew of, but failed to disclose "the ICOP 20/20-W system, and the patents and printed publications describing the same" during prosecution (and TASER-initiated reexamination) of the '292[5] and '452 Patents. *Id*. at ¶¶ 37, 42, 54, 75-78, 89-92.

Without the benefit of contentions detailing the factual bases for TASER's claim that ICOP 20/20-W was but-for material, Digital Ally served an interrogatory, requesting "an element-by-element mapping of the ICOP system to any claim that TASER believes the ICOP system is material to for its inequitable conduct claim." In response, TASER noted that some relevant details could be found in TASER's preliminary invalidity contentions and Amended Answer, but otherwise objecting to the request "as premature because it calls for a legal conclusion or expert opinion, or otherwise ***seeks information that is properly the subject of expert testimony***." **Ex. N**, *TASER's 1st Supp. Resp. to Digital Ally's 7th Interrogatories* at 2-3 (emphasis added). TASER elaborated, confirming that it would "show the extent to which its invalidity contentions, and any documents, testimony, or demonstrations of any ICOP systems corroborate the functionality of the same, ***at the time for expert discovery*** prescribed by the Court in its Fourth Patent Scheduling Order." *Id*. at 3 (emphasis added).

---

[5] The '292 Patent and TASER's inequitable conduct counterclaim regarding the '292 Patent were dismissed from this case on March 5, 2018. Dkt. 163.

Despite confirming that its materiality analysis would be provided by its expert, Dr. Schonfeld, did not provide any such assessment. In fact, Dr. Schonfeld did not discuss or even mention inequitable conduct in his expert report. Nor did Dr. Schonfeld analyze ICOP by itself—the sole basis on which TASER's inequitable conduct theory is based. Assuming TASER had decided to abandon this theory, Digital Ally reached out to TASER on January 2, 2019, asking TASER to confirm whether it intends to pursue inequitable conduct. **Ex. O**, *Jan. 2, 2019 Email re Materiality*. TASER responded that same day, confirming that it "has not abandoned its defense" and claiming that "[t]he ***facts supporting the materiality prong*** of TASER's inequitable conduct defense ***are discussed at length in Dr. Schonfeld's expert reports*.**" *Id.* (emphasis added).

As discussed in Section A, *supra*, Dr. Schonfeld has advanced a single invalidity theory involving ICOP[6]—that the Asserted Claims are obvious in view of the ICOP 20/20-W system combined with Xu. Accordingly, as conceded by TASER and required in complex cases such as this, to the extent there is any supporting evidentiary basis on which to find but-for materiality, it is this single obviousness opinion set forth by Dr. Schonfeld. *Schumer v. Lab. Computer Sys., Inc.,* 308 F.3d 1304, 1315 (Fed. Cir. 2002) (noting that expert testimony on issues of invalidity is "typically" required); *Aspex Eyewear, Inc. v. Concepts In Optics, Inc.*, 111 F. App'x 582, 588 (Fed. Cir. 2004) (noting it is a "rare case[] where the invention is so simple that expert testimony is not required").

2.       On this record, TASER cannot prove but-for materiality.

For at least three key reasons, TASER cannot prove but-for materiality on this record. First, as discussed in Section A, *supra*, TASER cannot prove that the ICOP 20/20-W System invalidates

---

[6] Dr. Schonfeld's in-the-alternative obviousness theory based on the ICOP 20/20-W system combined with Digital Ally's DVM-750 system has been stricken from this case and will not be addressed herein. Dkt. 277.

the Asserted Claims. If that part of Digital's motion is granted, then TASER's inequitable conduct theory also must fall. Second, even if TASER had properly relied upon details of the actual ICOP 20/20-W System, TASER has failed to present *any* theory of unpatentability based on the ICOP 20/20-W System alone or on the ICOP 20/20-W System combined with any prior art that actually was before the Patent Office. TASER's inequitable conduct theory relies on a failure to disclose the ICOP 20/20-W System alone, yet TASER's expert did not present an opinion based on ICOP alone. Moreover, TASER's combination of ICOP with Xu fails because Xu was not before the Patent Office. Therefore, there is no factual basis on which to find disclosing the ICOP 20/20-W System would have prevented the Asserted Claims from issuing. Finally, that the Patent Trial and Appeal Board ("PTAB") at the Patent Office has already found that claims of both the previously asserted '292 Patent and the currently asserted '452 Patent were patentable over art describing the ICOP 20/20-W System, strongly supports concluding that the ICOP 20/20-W System was <u>not</u> but-for material.

<blockquote>

a) *There is no genuine dispute of material fact that TASER's invalidity theory relies on details it cannot prove are part of the ICOP 20/20-W System.*

</blockquote>

As discussed in Section A, *supra*, TASER's invalidity theory fails as a matter of law because TASER relies on a single disclosure for a key limitation, but has failed to connect that disclosure to the actual ICOP 20/20-W System. Because TASER does not have a viable invalidity theory based on the ICOP 20/20-W System, there are no facts on which a fact finder could conclude that the Asserted Claims would not have been allowed had the Patent Office been aware of the ICOP 20/20-W System. Thus, there is no genuine dispute of material fact that TASER cannot prove but-for materiality of the ICOP 20/20-W System.

b)   *Even if ICOP 20/20-W had been disclosed, there is no evidence that it would have prevented Asserted Claims from issuing.*

TASER cannot prove that the ICOP 20/20-W System is but-for material because the record lacks any facts supporting a theory that the Patent Office would have found any Asserted Claim unpatentable based on the ICOP 20/20-W System alone.[7] Dr. Schonfeld's report lacks any opinion or facts suggesting that any claim of the '452 Patent was anticipated by or obvious over the ICOP 20/20-W System alone. *See generally*, **Ex. C**, *Schonfeld Invalidity Report.* Instead, Dr. Schonfeld opines that the ICOP 20/20-W System would have to be combined with unrelated prior art reference Xu to render any Asserted Claim obvious. This is fatal to TASER's inequitable conduct theory for two reasons. First, TASER never once alleged an inequitable conduct theory based on ICOP 20/20-W in conjunction with Xu, so this theory has not been preserved and summary judgment may be granted on this basis alone. Second, the Patent Office was not aware of Xu during the '452 Patent prosecution and, thus, could not have reached the conclusion that the ICOP 20/20-W System combined with Xu invalidates the Asserted Claims. That the disclosure of ICOP 20/20-W System to the Patent Office could not have led the Patent Office to adopt Dr. Schonfeld's obviousness assessment is equally fatal to TASER's inequitable conduct theory.

Prior courts have confirmed findings of materiality where an expert demonstrates the withheld reference anticipates (i.e., teaches every limitation of) an asserted claim. *Abbott Laboratories v. Syntron Bioresearch Inc.*, No. 98–CV–2359 H(POR), 2001 WL 34082555 at *6 (S.D. Cal. Aug. 24, 2001). Under those circumstances, there is no logical leap to conclude that an

---

[7] Dr. Schonfeld does not offer *any* opinion regarding the invalidity of any claim of the '292 Patent, based on the ICOP 20/20-W System or otherwise, so to the extent TASER had intended to base its theory of inequitable conduct on infectious unenforceability, it has presented no facts supporting such a theory.

examiner at the Patent Office would have found such a reference but-for material—the reference itself supports denying patentability. Here, however, TASER's invalidity theory depends on combining the ICOP 20/20-W system with a reference that was not before the Patent Office. There is no evidence of record that could support finding that an examiner would have considered ICOP 20/20-W but-for material. TASER leaves it up to the fact finder to guess how an examiner at the Patent Office would have found the ICOP 20/20-W System but-for material when invalidity based on the system requires, by TASER's own admission, the addition of another reference that the examiner did not have. *See FatPipe Networks India Limited v. XRoads Networks Inc.*, No. 2:09–cv–186–DN, 2015 WL 12778762 at *28 (D. Utah Sep. 22, 2015) (granting summary judgment of no inequitable conduct where defendant did not appear to "actively pursue[] the defense of unenforceability" and, instead, had "chosen to focus on *invalidity*") (emphasis in original); *Giuliano v. SanDisk Corp.*, 224 F.Supp.3d 851, 866 (N.D. Cal. 2016) (granting summary judgment of no inequitable conduct where "[t]he lack of any supporting expert testimony [] forecloses Plaintiffs' ability to establish that the PTO's awareness of the aforementioned prior art references would have led to the rejection of the Disputed Patents."). Because the sole invalidity theory of record involving the ICOP 20/20-W System requires it to be combined with a reference the Patent Office did not have, TASER cannot prove that the Patent Office would have found the ICOP 20/20-W System but-for material, i.e., that it would have prevented the issuance of the Asserted Claims.

c)      *The PTAB rejected TASER's ICOP-based invalidity theories.*

TASER filed three separate *Inter Partes* Review ("IPR") petitions with the PTAB, challenging the validity of the '292 and '452 Patents based on ICOP prior art. In each petition, TASER relied prominently on U.S. Publication No. 2005/0083404 to Pierce ("Pierce"), which Dr. Schonfeld has described as "a representative prior art reference of the ICOP 20/20-W system." **Ex. C**, *Schonfeld Invalidity Report* at 327, 321. None of these petitions were successful. Ruling on

TASER's first challenge, the PTAB found that the claims of the '292 Patent were not obvious over Pierce or Pierce in combination with other references. **Ex. H**, *AXON Enterprises, Inc. v. Digital Ally, Inc.*, Case IPR2017-00375, Paper 51 at 17-19, 41-42 (P.T.A.B. June 1, 2018). As to TASER's other challenges, the PTAB concluded there was not even a reasonable likelihood that claims of the '452 Patent were obvious over combinations involving Pierce and refused to even institute the proceedings. **Ex. I**, *AXON Enterprises, Inc. v. Digital Ally, Inc.*, Case IPR2017-00515, Paper 10 at 9-24 (P.T.A.B. July 6, 2017); *see also* **Ex. P**, *AXON Enterprises, Inc. v. Digital Ally, Inc.*, Case IPR2017-00775, Paper 12 at 9-18 (P.T.A.B. August 3, 2017). That the PTAB rejected all TASER's efforts to invalidate Digital Ally's patents based on ICOP 20/20-W, is strong, dispositive evidence that ICOP is not but-for material.

Because (1) TASER has failed to advance any theory on which a fact finder could conclude that the Patent Office would have refused to allow the Asserted Claims based on the ICOP 20/20-W System and (2) the Patent Office's PTAB recently concluded that all relevant claims *were* patentable over references describing the ICOP 20/20-W System, no reasonable fact finder could conclude that the ICOP 20/20-W System was but-for material to the Asserted Claims. Accordingly, TASER's inequitable conduct claims must be dismissed.

### C. No Reasonable Fact-finder Could Conclude that there is Clear and Convincing Evidence of Specific Intent to Deceive the Patent Office.

TASER has not offered *any* facts tending to show that anyone with a duty to disclose (Stan Ross, Troy Bowlin, Matt Andrews, or any of Digital Ally's patent prosecutors) acted with a specific intent to deceive the Patent Office by not disclosing the ICOP 20/20-W System. To show intent, "the accused infringer must prove by clear and convincing evidence that the applicant (1) knew of the reference, (2) knew that it was material, and (3) made a deliberate decision to withhold it." *Therasense, Inc.*, 649 F.3d at 1290. In this case, there is no evidence, direct or indirect, that

could satisfy this standard. Therefore, even if TASER could show but-for materiality, inequitable conduct cannot survive summary judgment.

> 1.   There is no direct evidence of intent to deceive.

There are no facts in the record that could show by clear and convincing evidence that anyone with a duty of candor specifically intended to deceive the Patent Office. The only individuals having a duty of candor to the PTO included the three inventors—Mr. Bowlin, Mr. Andrews, and Mr. Ross—and Digital's prosecuting attorneys. But there is nothing in the record that suggests, let alone that could prove, any of these individuals acted with intent to deceive. In fact, TASER never asked any of these individuals if they were aware of the ICOP references describing ICOP 20/20-W System during prosecution of the '452 Patent.

With respect to Mr. Bowlin and Mr. Andrews, TASER has not obtained any evidence that they knew any pertinent details of the ICOP 20/20-W System, let alone that they knew the ICOP 20/20-W System was but-for material and made a deliberate decision to withhold it from the Patent Office. *See* **Ex. J**, *Bowlin Tr.* at 56:15-59:1 ("Are you aware of a company called ICOP Digital? A. I am. Q. How are you aware of ICOP Digital? A. By name only. They were a competitor to Digital Ally. I don't know the specifics on the product range or the features."); **Ex. K**, *Andrews Tr.* at 78:13-80:25 ("Q. Are you aware of a company called ICOP Digital, Incorporated? A. I have heard of it, but that's about it.").

With respect to Mr. Ross, the evidence, at best, demonstrates that he generally knew ICOP sold a system that competed with Digital Ally's own products based on outdated technology:

> Q. How did you know that your Digital Ally product was superior to the ICOP product?
> A. Well, as I stated earlier, we were the very first ones to come out with the total solid-state system. Not only total solid-state to where there were no moving parts, but also encapsulated in a rearview mirror. The uniqueness on that is not only can I put this in a Crown Victoria, which was the car of choice 20 years ago for law enforcement, but I can put it in a Dodge Charger, F150 pickup, numerous vehicles, because we are encapsulated in the rearview mirror. **Their product was designed**

27

> **on a hard drive; not only on a hard drive, but was to be installed in the console. And the industry was just getting away from that. He had outdated equipment.**
> Q. What else about their equipment made it inferior to your all's?
> A. **I just don't know enough about it.** Honestly, the hard drive is enough to turn, not only turn the industry away from them, you know, that and the difficulties in installing it, which devalues the car quite a bit itself. There was just nothing that excited me about it.

**Ex. L**, *Ross Tr. 09/12/18 Tr.* at 93:19-94:19 (emphasis added). But TASER has developed no facts that could support the conclusion that Mr. Ross knew of the pertinent details that would give rise to a duty to disclose. Indeed, TASER did not even ask Mr. Ross whether he was familiar with specific ICOP 20/20-W references Dr. Schonfeld relies upon during the '452 Patent prosecution.

Finally, TASER did not take any discovery of Digital's prosecuting attorneys and, accordingly, has no evidence that they knew of the ICOP 20/20-W System, let alone that they knew it was but-for material and withheld it with specific intent to deceive the Patent Office.

Interpreting the direct evidence in a light most favorable to TASER, TASER can at best show that one inventor generally knew of the ICOP's product offerings. Even assuming Mr. Ross knew of specific references that disclosed relevant details of the ICOP 20/20-W System, an assumption for which there is no direct evidence, knowledge of a reference is not enough to survive summary judgment. *Sunoco Partners Marketing & Terminals L.P. v. U.S. Venture, Inc.*, 339 F. Supp.3d 803 (N.D. Ill. 2018) (granting summary judgment of no inequitable conduct, where the only evidence of intent supported the "unremarkable proposition that the inventors knew" of certain prior art systems). Thus, viewing the direct evidence most favorably to TASER, inequitable conduct cannot survive summary judgment on this record.

2.   Interpreting indirect evidence in a light most favorable to TASER, no reasonable fact finder could conclude that specific intent to deceive is the "single most reasonable inference."

TASER's inequitable conduct theories also fail as a matter of law even considering the indirect evidence of record. Where the record supports a reasonable inference *other than* intent to

deceive, "the *Therasense* intent standard [can] not be met" and summary judgment is appropriate. *See Intercontinental Great Brands LLC v. Kellogg North America Company*, 869 F.3d 1336, 1351-52 (Fed. Cir. 2017) (affirming summary judgment of no inequitable conduct, finding the record support a reasonable inference that the patentee made an honest mistake). Put another way, "specific intent to deceive must be 'the **single most reasonable inference** able to be drawn from the evidence' and the evidence '**must be sufficient to *require* a finding of deceitful intent** in the light of all the circumstances.'" *Therasense*, 649 F.3d at 1290 (Fed. Cir. 2011) (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) and *Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988)) (emphasis added).

TASER cannot meet this exacting standard on the current record. Here, the record supports concluding that the inventors did not know of the relevant features of the ICOP 20/20-W System and thus a duty to disclose never attached during prosecution. The testimony cited in the previous section demonstrates those individuals with a duty to disclose knew little or nothing about the ICOP systems. They certainly did not know the pertinent details of the ICOP 20/20-W specifically that TASER believes support but-for materiality. Because TASER cannot point to indirect evidence so compelling to override this reasonable conclusion such that specific intent to deceive is *required* from the record, inequitable conduct cannot survive summary judgment.

## V.     CONCLUSION

For the reasons stated above, Digital respectfully requests that the Court grant summary judgment of (1) no invalidity based on ICOP and (1) no inequitable conduct.


 DATE:  January 31, 2019                      Respectfully submitted,

ERISE IP, P.A.

/s/   *Adam P. Seitz*
Adam P. Seitz, KS Bar #21059
Eric A. Buresh, KS Bar #19895
Michelle L. Marriott, KS Bar #21784
Clifford T. Brazen, KS Bar #27408
Jason R. Mudd, KS Bar #25749
Erise IP, P.A.
7015 College Boulevard, Suite 700
Overland Park, Kansas 66211
Telephone: (913) 777-5600
adam.seitz@eriseip.com
eric.buresh@eriseip.com
michelle.marriott@eriseip.com
cliff.brazen@eriseip.com
jason.mudd@eriseip.com

Paul R. Hart, admitted *pro hac vice*
CO Bar No 45697
Erise IP, P.A.
5600 Greenwood Plaza Blvd., Suite 200
Greenwood Village, CO 80111
Telephone: (913) 777-5600
paul.hart@eriseip.com

James F.B. Daniels, KS Fed. #70468
Michael J. Gorman
McDOWELL, RICE, SMITH & BUCHANAN
605 W. 47th Street, Suite 350
Kansas City, MO 64112
(816) 753-5400 telephone
(816) 753-9996 fax
jdaniels@mcdowellrice.com
mgorman@mcdowellrice.com

*Counsel for Plaintiff Digital Ally, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of January, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System which will send a notice of electronic filing to all attorneys of record linked to this case.

*/s/ Adam P. Seitz*
Adam P. Seitz

*Counsel for Plaintiff Digital Ally, Inc.*